# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

---

## Case No. 5: 16-cv-384-F

---

**(1)  JEFFREY SNYDER, D.O., an individual,**

**Plaintiff,**

**vs.**

**(1)  BOARD OF REGENTS FOR THE OKLAHOMA
AGRICULCURAL & MECHANICAL COLLEGES,
*ex rel.,* OKLAHOMA STATE UNIVERSITY
CENTER FOR HEALTH SCIENCES; *et al.,***

**Defendants.**

---

## MOTION OF THE DEFENDANT, LESLIE BARNES, PhD, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

---

### The Honorable Stephen P. Friot, Presiding

---

JAMES K. SECREST, II, OBA No. 8049
EDWARD J. MAIN, OBA No. 11912
**SECREST, HILL, BUTLER & SECREST**
7134 S. Yale Ave., Ste. 900
Tulsa, OK  74136
(918) 494-5905
(918) 494-2847 Facsimile
jsecrest@secresthill.com
emain@secresthill.com
***Attorneys for Defendant,
Leslie Barnes, PhD***

Dated this 13th day of July, 2016.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. i-iv

I.     INTRODUCTION................................................................................ 1

II.    ARGUMENTS AND AUTHORITIES ............................................... 4

    A.     The Standard For Notice Pleading ........................................... 4

    B.     Dr. Barnes Did Not Act In An Official Capacity...................... 6

    C.     Plaintiff Has Failed To State A Claim For Conspiracy ......................... 11

    D.     Plaintiff Has Failed To State A Claim For
          Intentional Infliction Of Emotional Distress .......................... 16

    E.     Plaintiff Fails To State A Claim For
          Interference With Contract & Business Relations................... 19

    F.     Plaintiff Fails To State A Claim For
          Breach Of Professional Duty .................................................. 21

    G.     Plaintiff Has Failed To State A Claim
          For Release Of Confidential Information ............................... 23

    H.     Plaintiff Has Failed To State A Claim For
          Wrongful Denial Of Personal Health Information ................. 24

    I.     Plaintiff Failed to Attach an Affidavit of Expert Consultation............ 26

III.    CONCLUSION .................................................................................. 30

CERTIFICATE OF SERVICE ................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Anaya v. Crossroads Managed Care Systems,*
195 F.3d 584 (10th Cir., 1999) ..................................................................... 9-10

*Ashcroft v. Iqbal,*
556 U.S. 677, 129 S.Ct. 1949 ................................................. 5-6, 11-12, 16, 21

*Bell v. Twombly,*
550 U.S. 444, 127 S.Ct. 1964 ..................................... 4-6, 11-12, 16, 21, 24, 25

*Boyer v. State Board Examiners of Psychologists,*
1992 OK CIV APP 80, 834 P.2d 450 .............................................................. 16

*Breeden v. League Services Corp.,*
1978 OK 27, 575 P.2d 1374 ...................................................................... 17-18

*Collyer v. Darling,*
98 F.3d 211 (6th Circ., 1997) .................................................................... 14-15

*Collyer v. Darling,*
520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997) ......................... 14-15

*Douglas v. Cox Retirement Properties,*
2013 OK 37, 302 P.3d 789 ............................................................................ 29

*Douglas v. Miller,*
864 F.Supp.2d 1205 (W.D. Okla., 2012).......................................................... 2

*Eddy v. Brown,*
1986 OK 3, 715 P.2d 74 ...........................................................................17, 18

*Gaddy v. Oklahoma State Board of Osteopathy,*
1976 OK 125, 554 P.2d 1375 .................................................................... 15-16

*Jennings v. Badgett,*
2010 OK 7, 230 P.3d 861 ......................................................................... 22-23

*Norman v. United states, ex rel., Veteran's Administration Medical Center,*
2013 WL 425032 (W.D. Okla., Feb. 4, 2013).................................................28

*Pace v. Swerdlow*,
519 F.3d 1067 (10th Cir., 2008) ....................................................................2

*Ray v. American National Bank & Trust Co.*,
1994 OK 100, 894 P.2d 1056 ................................................................. 20-21

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir., 2008) ..............................................................12, 24

*Sigmon v. Community HMO*,
234 F.3d 1121 (10th Cir., 2000) ............................................................. 8-10

*Strubhart v. Perry Memorial Hospital Trust Authority*,
1995 OK 10, 903 P.2d 263 ........................................................................28

*Thomas-Ateba v. SAMHSA of the United States Government*,
2014 WL 1414577 (E.D. N.Y., April 10, 2014)...........................................15

*Van Dyke v. United States*,
457 Fed.Appx. 721 (10th Cir., 2012) ........................................................28

*Voiles v. Santa Fe Minerals*,
1993 OK 13, 911 P.2d 1205 ......................................................................20

*Wall v. Marouk*,
2013 OK 36, 302 P.3d 775 ........................................................................29

*White v. Burton*,
1937 OK 381, 180 Okla. 499, 71 P.2d 694 ................................................28

*Zeier v. Zimmer*,
2006 OK 98, 152 P.3d 861 ........................................................................29

## CONSTITUTIONAL PROVISIONS

Okla.Const., Art. V, §46................................................................................29

Okla.Const., Art. V, §57................................................................................29

## OKLAHOMA STATUTES

Title 12 O.S.Supp. 2015 § 19.1 ................................................................. 26-30

Title 12 O.S.Supp. 2009 § 192 (repealed, 2013) ............................................29

Title 12 O.S.Supp. 2015 § 192.1 .................................................................29

Title 59 O.S. 2011 § 630.............................................................................1

Title 59 O.S. 2011 § 1351 - 1376 ...............................................................27

Okla.Sess.Laws, 1st Ex.Sess., Ch. 12..........................................................29

## STATUTES

15 U.S.C. § 1 ...........................................................................................5

28 U.S.C. § 1331 .....................................................................................11

28 U.S.C. § 1332 .....................................................................................11

28 U.S.C. § 1343 .....................................................................................11

28 U.S.C. § 1367 .....................................................................................11

42 U.S.C. § 1983 ....................................................................................6, 9

42 U.S.C. § 1985(3)........................................................................11, 14, 16

## RULES

Fed.R.Civ.P. 8(a) ....................................................................................4, 6

Fed.R.Civ.P. 12(b)...................................1, 4, 5, 6, 8, 11, 16, 19, 21, 23, 24, 25, 26, 28, 30

Fed.R.Evid. 702(a)................................................................................ 27-28

## TABLE OF EXHIBITS

Exhibit 1:    Plaintiff's Informed Consent, June 12, 2014

## MOTION OF THE DEFENDANT, LESLIE BARNES, PhD, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT

COMES NOW, the Defendant, Leslie Barnes, PhD (hereinafter "Dr. Barnes"), and moves the Court to dismiss Plaintiff's Amended Complaint [Doc. 6] for failure to state claims upon which relief may be granted and for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1, 6).

### I.  INTRODUCTION

Dr. Barnes, a licensed psychologist, evaluated Plaintiff for purposes of an Employee Assistance Program (EAP) in which he was participating.  Plaintiff signed an Informed Consent identifying to whom the evaluation would be disclosed.  Plaintiff's claims are based upon allegations regarding actions not taken by Dr. Barnes and for which Dr. Barnes may not be held responsible.

Plaintiff graduated from the Oklahoma State University College of Osteopathic Medicine in May, 2013, and he participated in the OSU Family Medicine Residency Program at the OSU Medical Center beginning in July, 2013.  Amended Complaint, ¶¶22-24, p. 8.  Both a degree and successful completion of a one year internship is required to practice as an osteopathic physician in Oklahoma.  59 O.S. 2011, §630.

Plaintiff alleges that a verification of his participation in the residence program was not submitted to the State Board of Osteopathic Examiners and that, as a result, Plaintiff did not obtain a license to practice as an osteopathic physician.  Amended Complaint [Doc. 6], ¶¶30-36, pp. 10-11.  Dr. Barnes played no part in any decision regarding verification of Plaintiff's participation in the residency program.

In April, 2014, Plaintiff was placed on academic probation and required to "undergo neuropsychiatric testing" to ascertain his "ability to attain the level of competence required for progression in residency training."  Later that same month, Plaintiff's participation in the OSU Medical Center EAP was substituted for the neuropsychiatric testing requirement.  Amended Complaint [Doc. 6], ¶¶37-40, 43, p. 11-13.  Dr. Barnes played no part in these decisions.

Plaintiff alleges that the Defendant, Community Care HMO, Inc., d/b/a Community Care of Oklahoma [hereinafter "Community Care"] was the EAP provider, that the EAP "recommended a fitness for duty exam" and that "[t]he EAP referred [Plaintiff] to Dr. Barnes, a licensed psychologist, to perform the Fitness for Duty Examination."  Amended Complaint [Doc. 6], ¶¶13, 46, 50, pp. 6, 14, 15.

Among Plaintiff's myriad of claims is one alleging Dr. Barnes, and others, exceeded the scope of Plaintiff's authorizations.  Amended Complaint [Doc. 6], ¶¶264-271, pp. 62-63.  Plaintiff's authorizations are therefore central to his claims, and may be submitted as exhibits to support a Motion to Dismiss without transforming it to a Motion for Summary Judgment.  *Pace v. Swerdlow*, 519 F.3d 1067, 1072-1073, (10th Cir., 2008); *Douglas v. Miller*, 864 F.Supp.2d 1205, 1212 (W.D. Okla., 2012).

Upon his referral to Dr. Barnes, Plaintiff executed the following authorization:

INFORMED CONSENT

I understand that Dr. Leslie Barnes has been retained to conduct a psychological evaluation of myself at the request of the OSU medical school and human resources department.  This evaluation will consist of a clinical interview and written psychological testing.  I understand that the results of this evaluation will be released in the form of a

written report to the designated individual in the human resources department of the OSU medical school.  I understand that the information obtained in this evaluation is under the primary control of the OSU medical school and that this psychologist is contracted with the medical school to provide the evaluation.  The information obtained during the evaluation will be used to identify any recommendations  that may be indicated and related to the issues of concerns which prompted this evaluation.  Although recommendations based upon the evaluation may be made by Dr. Barnes, any decisions based upon evaluation data will be made by personnel of the OSU medical school.

Exhibit 1, Plaintiff's Informed Consent, June 12, 2014, p. 1, Barnes' Chart 021.  At the same time, Plaintiff executed an authorization specifically acknowledging that his evaluation results and report would be released to Debby Knottingham at the OSU Medical Center, who was also authorized to provide information to and receive information from Dr. Barnes regarding Plaintiff.  Exhibit 1, Informed Consent, p. 2, Barnes' Chart 022.

Plaintiff concedes he "concluded all of his visits to Dr. Barnes" adding that Dr. Barnes submitted a written report and two addenda to the EAP.  Plaintiff complains that additional information was provided to Dr. Barnes which exceeded the scope of his authorization.  Amended Complaint [Doc. 6], ¶¶53-62, pp. 16-19.

Plaintiff alleges that subsequently, Defendants associated with the OSU Medical Center placed Plaintiff on a paid leave of absence from the residency program.  Plaintiff then received counseling from a clinical psychologist other than Dr. Barnes; Plaintiff alleges that "the information provided from the licensed psychologist was ignored." Amended Complaint [Doc. 6], ¶¶64, 64 79, 82-83, pp. 19, 24, 25.  Plaintiff ultimately alleges that he was "dismissed from the residency program" effective August 5, 2015.

Amended Complaint [Doc. 6], ¶¶87-88, p. 26.  Dr. Barnes had no involvement in these events and Plaintiff does not allege she did.

Plaintiff's claims are based upon actions taken by others prior to any contact by him with Dr. Barnes, and subsequent to any contact by him with Dr. Barnes.  Plaintiff specifically agreed that "any decisions based upon evaluation data [provided by Dr. Barnes] will be made by personnel of the OSU Medical School" which would have "primary control" of the evaluation.  Exhibit 1, Informed Consent, Barnes' Chart 021. Dr. Barnes takes no position regarding Plaintiff's claims against any other Defendant.  Nevertheless, Plaintiff's allegations fail to state a claim against Dr. Barnes, requiring the dismissal of his Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## II. ARGUMENTS & AUTHORITIES

### A. The Standard For Notice Pleading

"A pleading that states a claim for relief must contain: . . . a short and plain statement of a claim *showing* that the pleader is entitled to relief; . . . ."  Fed.R.Civ.P. 8(a)(2) (emphasis added).  Interpreting this Rule, the United States Supreme Court has stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . ."  *Bell v. Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-1965 (citation, internal quotation marks and bracketing omitted).  In *Bell v. Twombly*, one of the issues was whether there had been a conspiracy.  The Court stated:

> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w]

that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting that the agreement necessary to make out a [15 U.S.C.] § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a Defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

*Bell v. Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966 (citation omitted). In that case, the Plaintiff's allegations were sufficient to suggest that there had possibly been a conspiracy agreement, but that was not enough to state a cause of action and the United States Supreme Court held that the district court had properly dismissed the action.

The United States Supreme Court emphasized the "practical significance of the Rule 8 entitlement requirement" observing that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell v. Twombly*, 550 U.S. at 557, 558, 127 S.Ct. at 1966 (citation, internal quotation marks, and ellipsis deleted).

The United States Supreme Court later summarized its *Bell v. Twombly* holdings:

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more

than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. at 677-679, 129 S.Ct. at 1949-1950, quoting *Bell v. Twombly*, 550 U.S. at 555-557, 570, 127 S.Ct. at 1964-1967, 1974 (brackets and internal quotation marks omitted by Court; parentheses and other citations omitted).

Under these standards, Plaintiff fails to state claims upon which relief may be granted against Dr. Barnes, requiring their dismissal pursuant to Fed.R.Civ.P 12 (b)(6).

## B. Dr. Barnes Did Not Act In An Official Capacity

Dr. Barnes performed an evaluation of Plaintiff pursuant to an agreement with OSU Medical Center and subject to an Informed Consent executed by Plaintiff. Dr. Barnes acted as an independent licensed psychologist, and not in any "official capacity" with the OSU Medical Center, or any other agency of the State of Oklahoma. Similarly, and for the same reasons, Dr. Barnes is not a "state actor" for purposes of any claim Plaintiff might assert alleging a violation of his civil rights pursuant to 42 U.S.C. §1983.

Plaintiff was participating in a residency program at the OSU Medical Center, a prerequisite to obtaining a license as an osteopathic physician, when he was placed on academic probation and referred to the EAP (CommunityCare) which recommended a fitness for duty exam of Plaintiff. Amended Complaint, [Doc. 6], ¶¶23, 30, 37, 43, & 46, pp. 8, 10-12, 14. These events occurred prior to any involvement by Dr. Barnes.

Plaintiff further alleges that "a fitness for duty exam . . . was outside the services the EAP provided" and that Plaintiff was then referred to Dr. Barnes for the examination. Amended Complaint, [Doc. 6], ¶¶46 & 50, pp. 14-15. Plaintiff signed an Informed Consent acknowledging that the evaluation by Dr. Barnes had been requested by the OSU Medical Center which had "primary control" of the evaluation which would be provided to its Human Resources Department and that decisions based upon the evaluation would not be made by Dr. Barnes. Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021. Plaintiff met with Dr. Barnes, who issued a report to the EAP. Plaintiff alleges that additional information was improperly provided to Dr. Barnes and that two addenda to her report were issued. Amended Complaint, [Doc. 6], ¶¶53-61, pp. 16-18. This is the extent of the role played by Dr. Barnes: she was contacted by the EAP; she obtained Plaintiff's Informed Consent and met with him; she submitted her report, considered information and submitted addenda. None of these actions by Dr. Barnes were taken in an "official capacity" or under "color of law"; they were pursuant to an agreement with the EAP and Plaintiff's written Informed Consent.

Plaintiff named Dr. Barnes as a Defendant "in her individual and official capacity" but states only that "Dr. Barnes served as the referral provided by the EAP." Amended

Complaint [Doc. 6], ¶16, p. 6.  Plaintiff fails to state a claim upon which relief may be granted against Dr. Barnes in any "official capacity" or as a "state actor", requiring the dismissal of such claims pursuant to Fed.R.Civ.P. 12(b)(6).

A good analogy is presented a case in which a City of Tulsa employee (Sigmon) tested positive for marijuana and was referred to the city's EAP provider (CommunityCare).  The EAP, in turn, referred the employee to a psychiatric clinic for participation in a "12-step" recovery program.  Although the employee completed the program, the EAP and its counselor (Godi) referred him for an additional "12-step" follow-up program, to which the employee objected on religious grounds.  The employee then sued the city, the EAP, and its counselor.  A consent judgment was entered against the city, and the court entered judgment against the employee and in favor of the EAP and its counselor.  On appeal, the Tenth Circuit affirmed stating:

> Unlike the usual case in which the plaintiff attempts to hold a public official or entity responsible for the acts of a private party, Sigmon here seeks to impose liability against private parties for the harmful actions of a public entity – that is, for Tulsa's threat to terminate him for not participating in CommunityCare's recommended treatment.

*Sigmon v. Community HMO*, 234 F.3d 1121, 1125 (10th Cir., 2000) (citation omitted).

The Tenth Circuit described the employee's claim:

> Sigmon alleges that the appellees acted under color of state law because they conspired with Tulsa to violate his constitutional rights by referring him to the objectionable treatment program, and then recommending that Tulsa fire him for failing to participate.

*Sigmon*, 234 F.3d at 1126.  The Tenth Circuit held:

> These facts fail to justify the joint action test for state action.  . . . Tulsa retained complete authority to enforce its drug policy, while the

> appellees merely acted as an independent contractor in identifying and referring employees to treatment services. It is true that the appellees could have reasonably foreseen that their actions might trigger Tulsa to begin termination proceedings against Sigmon. This fact does not, however, demonstrate that they perform their contract obligations with the objective of utilizing Tulsa's employment authority over Sigmon to force Sigmon unconstitutionally to engage in unacceptable religious practices.

*Sigmon*, 234 F.3d at 1127 (footnote omitted). The Tenth Circuit drew a contrast with a prior case, *Anaya v. Crossroads Managed Care Systems*, 195 F.3d 584 (10th Cir., 1999), in which the private entity influenced the decisions and practices of a state agency:

> *Anaya* provides a helpful example of this circuit's application of the joint action or conspiracy test. In *Anaya*, we reversed a lower court's order of summary judgment for the defendant because of evidence that Crossroads Managed Care Systems, an HMO interested in establishing a detoxification center in the city of Trinidad, Colorado, persuaded local law enforcement agencies to increase dramatically their alcohol-related arrests, even to the extent of utilizing unconstitutional arrests by the city police, and then to refer arrestees to the detox center run by Crossroads. The plaintiffs in *Anaya* presented evidence that Crossroads had appointed city law enforcement officials to serve on an advisory panel created to help establish the center, and that a Crossroads executive helped the city officers formulate police department policies causing arrests for public intoxication and similar offenses nearly to double. In remanding the case for trial, we emphasized:

> ... Crossroads' mere lack of concern or even recklessness for causing the violation of others' constitutional rights would not seem to rise to the level of establishing Crossroads' liability under section 1983. What might establish liability, however, is Crossroads' role in creating the unconstitutional detention policy that led to the allegedly illegal unconstitutional seizures.

*Sigmon*, 234 F.3d at 1126, citing *Anaya*, 195 F.3d at 587-589, 596-597. The court then distinguished that situation from the case before it, and exonerated the EAP and its counselor from liability:

9

> Godi's [counselor's] admission that he may have advised Tulsa to terminate Sigmon rather than deviate from its established drug policies does not change this analysis.  At most, the record permits an inference that Tulsa might have considered Godi's advice as a factor in its ultimate decision to discipline Sigmon.  But it is clear that Tulsa acted independently in making its final decision, and therefore no meeting of minds occurred on this point.  At most, Godi's advice was simply one component leading to Tulsa's ultimate decision.

*Sigmon*, 234 F.3d at 1127.  These holdings, as contrasted with *Anaya v. Crossroads*, establishe that Dr. Barnes did not act in an official capacity and or under "color of law."

In *Sigmon*, the city referred the employee to the EAP, which in turn referred the employee to a psychiatric clinic; by direct analogy in the present case, OSU Medical Center referred Plaintiff to its EAP, which in turn referred Plaintiff to Dr. Barnes.  The Tenth Circuit held that the EAP in *Sigmon* was an independent contractor of the city; in the present case as well, Dr. Barnes was, at most, the independent contractor of the EAP, itself the independent contractor of OSU Medical Center.  Moreover, in *Sigmon* the employee participated in "an intensive 6-week substance abuse treatment program", whereas Dr. Barnes only provided an evaluation of Plaintiff and Plaintiff received psychological counseling from someone other than Dr. Barnes.  *Compare, Sigmon*, 234 F.3d at 1123, with Amended Complaint, [Doc. 6], ¶¶50-61, 64, 79, & 82, pp. 15-19, 24-25.  Additionally, Plaintiff agreed that others, not Dr. Barnes, would make any decisions based upon her evaluation, an agreement entirely consistent with the Tenth Circuit holding.  Exhibit 1, Informed Consent, p. 1, Barnes Chart 021; *Sigmon*, 234 F.3d at 1127.

Accordingly, Dr. Barnes did not act in an "official capacity" or "under color of law"; she was not a "state actor" when she performed an evaluation of Plaintiff.

Plaintiff's claims against Dr. Barnes in an "official capacity", as well as any claims alleging a violation of Plaintiff's civil or Constitutional rights, must be dismissed for failure to state claims pursuant to Fed.R.Civ.P. 12(b)(6).

### C.  Plaintiff Has Failed To State A Claim For Conspiracy

Plaintiff's Count XV alleges that Dr. Barnes and Defendants conspired to deprive Plaintiff "of equal protection and/or equal privileges and immunities."   Amended Complaint [Doc. 6], ¶276, p. 64.   Plaintiff's allegations are too conclusory to state a claim against Dr. Barnes and must be dismissed.  *Bell v. Twombly, supra,* and *Ashcroft v. Iqbal, supra*; Fed.R.Civ.P. 12(b)(6).

Plaintiff invokes the jurisdiction of this Court under 28 U.S. §§1331, 1343 & 1367.   No diversity exists between Plaintiffs and Defendants; jurisdiction cannot be supported under 28 U.S.C. §1332.  Amended Complaint, [Doc. 6], ¶¶3-16, pp. 3-6.  As this is the only claim against Dr. Barnes asserted under a federal statute, 42 U.S.C. §1985(3), its dismissal deprives this Court of subject matter jurisdiction of Plaintiff's claims against Dr. Barnes, which should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

To support his conspiracy claim under 42 U.S.C. §1985(3), Plaintiff alleges:

> In furtherance of the conspiracy, Drs. Cotton and Alexopulos, Nottingham, Benjamin, OSU-CHS, OSU Medical Center, the EAP, Heavin, Stewart, and Dr. Barnes took the following overt acts to deprive Dr. Snyder of equal protection and/or equal privileges and immunities, including, but not limited to: refusing to complete and submit the Verification to the Board; subjecting Dr. Snyder to increased scrutiny unlike similarly situated residents; placing Dr. Snyder on probation and the probation plan improperly; forcing Dr. Snyder into an EAP program; mandating that Dr. Snyder undergo unnecessary medical evaluations and fitness for duty examinations; interfering and manipulating the EAP referral assessment; violating the probation and suspension procedures

set forth in the Residency Program Handbook; failing to provide copies of Dr. Snyder's own personal health information, including the reports and assessments with regard to his fitness for duty, to him; regarding Dr. Snyder as disabled; forcing Dr. Snyder to take a leave of absence for a perceived disability; causing Dr. Snyder to be removed from his duties; causing Dr. Snyder to have his benefits and pay terminated; and causing Dr. Snyder to be terminated from both the Residency Program and from OSU Medical Center.

Amended Complaint [Doc. 6], ¶277, pp. 64-65.   Plaintiff does not identify which Defendant is alleged to have committed which "over acts."   Discussing the pleading requirements of *Bell v. Twombly, supra*, and *Ashcroft v. Iqbal*, the Tenth Circuit stated:

> Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10 Cir., 2008), *quoting, Bell v. Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.   The Tenth Circuit held that the "complaint fails to isolate the allegedly unconstitutional acts of each defendant, and therefore does not provide adequate notice as to the nature of the claims against each" and that "the complaint fails to differentiate among individual defendants and specify which defendants are alleged to have taken which particular actions."   *Robbins,* 519 F.3d at 1250, 1253.   The Tenth Circuit reversed the denial of a motion to dismiss and remanded with directions to dismiss the complaint.   Plaintiff's Amended Complaint in this present action must suffer a similar fate.

Plaintiff does not allege that Dr. Barnes has an official position with OSU Medical Center or has any decision making role in connection with the OSU Family Medicine Residency Program.   Dr. Barnes' only role in the underlying events was to prepare an

evaluation of Plaintiff to be used by the EAP in connection with Plaintiff's participation in a residency program at OSU Medical Center.   Plaintiff acknowledged a "written report" would be provided to the OSU Medical School which would have "primary control" of that report; Plaintiff also acknowledged "any decisions based upon evaluation data will be made by personnel of the OSU Medical School and not by Dr. Barnes." Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021.

Dr. Barnes had no role in completing or submitting a verification of Plaintiff's participation in the residency program to the Osteopathic Board; Dr. Barnes had no role in determining whether Plaintiff would be subject "to increased scrutiny unlike similarly situated residents" in that program; Dr. Barnes had no role in the original decision to place Plaintiff on probation or to refer (or "force") Plaintiff to participate in the EAP. Amended Complaint, [Doc. 6], ¶¶35-44, pp. 11-14.   Plaintiff alleges that the medical and fitness for duty evaluations were unnecessary, but the decisions to have them performed were not made by Dr. Barnes.   Amended Complaint, [Doc. 6], ¶¶45-49, pp. 14-15. Plaintiff concedes that Dr. Barnes was contacted to perform a fitness for duty examination of Plaintiff.  Amended Complaint, [Doc. 6], ¶50, pp. 15.

Dr. Barnes could not interfere with her "referral assessment"; she is the one who wrote it and she cannot interfere with her own work.   Plaintiff's Count XVIII alleges interference but fails to state a claim as more fully addressed below.    Amended Complaint, [Doc. 6], ¶¶297-303, pp. 69-70.   Plaintiff's actual allegations suggest that others "interfered" by providing information to Dr. Barnes, which fails to show interference *by* Dr. Barnes.  Amended Complaint, [Doc. 6], ¶¶55-60, 66, pp. 17-18, 20.

Dr. Barnes did not have a position with the OSU Medical Center; she could not "violat[e] the probation and suspension procedure set forth in the residency program handbook." Plaintiff agreed that the OSU Medical Center, not Dr. Barnes, would make decisions based upon his evaluation.  Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021.

Plaintiff cannot complain that Dr. Barnes declined to provide copies of her evaluation directly to him because he agreed her contract was with the medical school, which would have "primary control" of the evaluation and that it, not Dr. Barnes, would make "any decisions based upon evaluation data . . . ."  Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021.  This issue is addressed more fully in connection with Plaintiff's Count XXI, as set forth below.

Dr. Barnes could not "forc[e] [Plaintiff] to take a leave of absence", remove him from his duties, terminate his pay and benefits or terminate him from the residency program and from the OSU Medical Center.  Plaintiff agreed that such decisions would not be made by Dr. Barnes.  Amended Complaint, [Doc. 6], ¶¶63-64, ¶¶76-77, 84, 87-88, pp. 19-20, 23-24, 26; Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021.

Regardless of how Plaintiff came to be referred to Dr. Barnes for an evaluation or what actions were taken based upon that evaluation, Plaintiff has failed to state a claim against Dr. Barnes for conspiracy under 42 U.S.C. §1985(3).

> To demonstrate a private conspiracy under § 1985(3) the plaintiff must prove (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. The plaintiff must also show the conspiracy was motived by racial or other class based animus.

*Collyer v. Darling,* 98 F.3d 211, 233 (6th Cir., 1997) (citations omitted) *cert. denied*, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed. 2d 199 (1997). In *Collyer*, the plaintiff was a Therapeutic Program Worker for the Ohio Department of Mental Retardation Development Disabilities. Following several interactions with his employer, the plaintiff was referred on two occasions to separate psychiatrists who each determined the plaintiff "suffered from a paranoid personality disorder." *Collyer v. Darling,* 98 F.3d at 217. The Plaintiff sued various individuals associated with his employer as well as the two psychiatrists. In affirming judgment in favor of the psychiatrists, the appellate court acknowledged "the private status of both doctors" and that "[n]either doctor was to treat Collyer – they were only retained to diagnose Collyer. Although both had access to Collyer's file, . . . simple access to the file is not enough to support a finding that they acted on the basis Collyer's speech." *Collyer v. Darling,* 98 F.3d at 232-233.

Similarly, in the present case, Dr. Barnes was not "to treat" Plaintiff, but was "only retained to diagnose" Plaintiff. Moreover, because only the residency program could submit verification of Plaintiff's participation, and only the Osteopathic Board could issue Plaintiff a license, Plaintiff has failed to allege a factual basis for a "meeting of minds" to support a conspiracy claim. *See, Thomas-Ateba v. SAMHSA of the United States Government*, 2014 WL 1414577, *4 (E.D. N.Y., April 10, 2014) (dismissing plaintiff's complaint with prejudice). Moreover, although Plaintiff may have an interest in obtaining a license, he does not have a vested property right because no license has been issued to him. *See, Gaddy v. Oklahoma State Board of Osteopathy*, 1976 OK 125,

¶9, 554 P.2d 1375, 1378 (vested interest in license lost upon voluntary surrender); *Boyer v. State Board Examiners of Psychologists*, 1992 OK CIV APP 80, ¶¶8-10, 834 P.2d 450, 452-453. (Psychologists licensed in Ohio has a property interest in his profession, but board did not err in refusing to qualify him to take the examination for a license in Oklahoma and psychologist was not entitled to an individual proceeding to review decision). Licensing of osteopathic physicians is "designed to protect the public." *Gaddy*, ¶9, 554 P.2d at 1378.

In summary, Plaintiff's claim against Dr. Barnes for a conspiracy under 42 U.S.C. §1985(3) must fail. Because that is the only claim under a federal statute against Dr. Barnes, this Court lacks subject matter jurisdiction over the claims against her. Plaintiff's claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1, 2).

### D.  Plaintiff Has Failed To State A Claim For Intentional Infliction Of Emotional Distress

Plaintiff's Count XVII, labeled "intentional infliction of emotional distress" is advanced against various Defendants, including Dr. Barnes. Amended Complaint, [Doc. 6], ¶¶291-296, pp. 67-68. The allegations supporting this claim, especially insofar as they relate to Dr. Barnes, are insufficient to state a claim pursuant to the standards in *Bell v. Twombly, supra,* and *Ashcroft v. Iqbal, supra*, requiring the dismissal of this claim against Dr. Barnes pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff's paragraph allegedly setting forth the actions "intentionally and/or recklessly" taken by Defendants is virtually identical to the paragraph by which he alleged Defendants participated in a conspiracy as discussed in the previous

subproposition.  Amended Complaint, [Doc. 6], ¶¶277 & 293, pp. 64-65, 68-69.  There are a few minor differences in wording but the substance of the allegations is unchanged. It remains the case that the majority of these allegations cannot relate to Dr. Barnes because they occurred either before she was requested to perform an evaluation on Plaintiff or after her evaluation was submitted to the OSU Medical Center.  What remains is Plaintiff's allegation that Dr. Barnes provided a fitness for duty evaluation of Plaintiff, pursuant to an agreement with the OSU Medical Center, that Dr. Barnes received information about Plaintiff from the OSU Medical Center, that Dr. Barnes submitted her evaluation and two addenda to OSU Medical Center Plaintiff consented to the evaluation in writing and agreed that OSU Medical Center would have "primary control" over the results of her evaluation and that Dr. Barnes could not be held responsible for any action taken upon it.  Exhibit 1, Informed Consent, Barnes' Chart 021.  When the allegations which relate to Dr. Barnes are identified, it is apparent that Plaintiff has failed to state a claim upon which relief may be granted for intentional infliction of emotional distress.

Intentional infliction of emotional distress is a specific tort "governed by . . . narrow standards" and is "also known as the tort of outrage . . . ." *Eddy v. Brown*, 1986 OK 3, ¶5, 715 P.2d 74, 76.  Plaintiff may consider it an "outrage" that he had to submit to a fitness for duty evaluation, but that is not the sort of "outrage" described by the tort.  Instead, the alleged intentional misconduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerably in a civilized community." *Breeden v. League Services Corp*., 1978 OK 27, ¶15, 575 P.2d 1374, 1378.  Before a claim under this theory may proceed, "[t]he court,

in the first instance, must determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Breeden v. League Services,* ¶12, 575 P.2d at 1377.   In the present case, Plaintiff's claim may not proceed, but must instead be dismissed.

For example, in *Eddy v. Brown, supra*, Eddy's supervisor and foreman "mimicked and ridiculed Eddy behind his back after directing him to read a safety bulletin allowed to his co-workers when they knew Eddy's speech was impaired by post-surgery medication" and also called Eddy "stupid", among numerous actions designed to humiliate Eddy.  *Eddy v. Brown*, ¶4, 715 P.2d at 76.   Nevertheless, the Oklahoma Supreme Court held that these actions were not "so *extreme* and *outrageous*" to allow the claim for intentional infliction of emotional distress to proceed.  *Eddy v. Brown*, ¶8, 715 P.2d at 77 (italics original).

The Oklahoma Supreme Court similarly found no "outrageous" conduct in *Breeden v. League Services, supra,* which was based upon attempts by a collection agency to contact Ms. Breeden at work.  At one time, the caller stated:

> You damned deadbeat.  You God damned liar.  And you are a deadbeat.

*Breeden v. League Services*, ¶3, 575 P.2d at 1376.  Nevertheless, the Court concluded:

> We think it clear that appellee's conduct was not so outrageous as to make them liable for any mental anguish suffered by Ms. Breeden.

*Breeden v. League Services*, ¶15, 575 P.2d at 1378.  If Mr. Eddy and Ms. Breeden did not have claims under this tort, certainly Plaintiff in the present case does not have one.

There is nothing "outrageous", "atrocious", "intolerable", or "uncivilized" in performing an evaluation on a person, who has agreed to have that evaluation performed,

who has signed an informed consent to the evaluation and has agreed to the terms by which and to whom the results of the evaluation will be disclosed.  Accordingly, Plaintiff's claim against Dr. Barnes for intentional infliction of emotional distress must be dismissed for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).

### E.  Plaintiff Fails To State A Claim For
### Interference With Contract & Business Relations

Plaintiff's Count XVIII alleges that Dr. Barnes and other Defendants interfered with Plaintiff's contract and business relations but Plaintiff acquiesced in his referral to Dr. Barnes for an evaluation, which was performed by agreement with OSU Medical Center, and Plaintiff agreed both that OSU Medical Center would have primary control of the results of Dr. Barnes' evaluation and that Dr. Barnes would not be responsible for any action taken based upon them.  Exhibit 1, Informed Consent, Barnes' Chart 021.  No claim for tortious interference is possible under these circumstances and this claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff's allegations of "interference" are virtually identical to his allegations of "conspiracy" and "intentional infliction of emotional distress" which were discussed in greater detail under subproposition C, *supra*.  Amended Complaint, [Doc. 6], ¶¶277, 292, 299, pp. 64-65, 67-68, 69-70.  Plaintiff does expand his "fitness for duty" allegations somewhat, but Plaintiff specifically alleges that Dr. Barnes was requested to perform a fitness for duty examination. Amended Complaint, [Doc. 6], ¶50, p. 15.

Essentially, pursuant to the agreement with the EAP and OSU Medical Center, as well as the Informed Consent signed by Plaintiff, Dr. Barnes had a right to perform an

evaluation of Plaintiff and to forward the results of that evaluation to the OSU Medical

Center.  Because the actions of Dr. Barnes are within a set of relationships among Plaintiff,

the EAP and the OSU Medical Center, her actions cannot interfere with a relationship:

> A cause of action for wrongful interference with contract can arise only
> when one who is not a party to a contract interferes with that contract by
> convincing one of the contracting parties to breach its terms.

*Voiles v. Santa Fe Minerals*, 1993 OK 13, ¶18, 911 P.2d 1205, 1210, *quoting, Ray v.*

*American National Bank & Trust Co.*, 1994 OK 100, ¶15, 894 P.2d 1056, 1060.

> [T]o recover in an action for malicious interference with contract or
> business relations a plaintiff must show:  1. That he or she had a business
> or contractual right that was interfered with.  2. That the interference was
> malicious and wrongful, and that such interference was neither justified,
> privileged, nor excusable.  3. That damage was proximately sustained as
> a result of the complaint-of interference.

*Voiles v. Santa Fe*, ¶18, n. 6, 911 P.2d at 1210, n. 6 (citation and internal quotation marks

omitted).  Insofar as the relations among Plaintiff, the OSU Medical Center and the EAP

are concerned, Dr. Barnes is not a "third party".  Dr. Barnes cannot be said to interfere

with a contract by performing the function Plaintiff agreed she was to perform.

In *Voiles*, one corporation secured agreement with the original mineral owners to

pursue claims with respect to expired leases.  The corporation then sued the operators of

certain leases.  The Oklahoma Supreme Court held that the operators who had been sued

did not have an interference claim against the corporation, even if it allegedly acted

beyond the scope of its authority under its agreement with the original mineral owners.

In *Ray*, a dispute arose between the elderly owner of a ranch and a house, and a person

who had been living in the house and working on the ranch.  The bank became the

conservator of the elderly owner and the other party alleged that it interfered with that relationship.  However, the court held that the bank was acting as the representative of the owner and therefore was not a stranger to the contractual relationship.

In the present case, Dr. Barnes was not a stranger to the relations pursuant to which Plaintiff was evaluated and the results provided to OSU Medical Center.  Plaintiff consented to Dr. Barnes' role in those events; his allegations do not state a claim for interference and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### F.  Plaintiff Fails To State A Claim For Breach Of Professional Duty

Contrary to Plaintiff's allegations, Dr. Barnes did not breach any professional duty owed to Plaintiff, as alleged in Count XX.  The relation between Plaintiff and Dr. Barnes was for a specific purpose as described in the Informed Consent executed by Plaintiff. Dr. Barnes did not agree to provide services other than to perform an evaluation of Plaintiff which would be delivered to the party designated to receive it.  Dr. Barnes performed pursuant to that agreement.  Plaintiff alleges that "[a] therapist/doctor-patient relationship existed between Dr. Barnes and [Plaintiff]."  Amended Complaint, [Doc. 6], ¶315, p. 73.  This is merely a "[t]hreadbare recital[]" and "mere conclusory statement[]" which will not "suffice" to defeat a Motion to Dismiss.  *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949, *citing, Bell v. Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-1965. Plaintiff's factual allegations establish that he was referred to Dr. Barnes for an evaluation and that Plaintiff received counseling from a psychologist other than Dr. Barnes.  Amended Complaint, [Doc. 6], ¶¶50-61, 64, 79 & 82, pp. 15-19, 24-25.

Plaintiff's "breach of duty" allegations recapitulate those advanced in support of his "conspiracy", "emotional distress", and "interference" claims, as discussed in subproposition C, *supra*.  Amended Complaint, [Doc. 6], ¶¶277, 292, 299, 317, pp. 64-65, 67-68, 69-70, 73-74.  The decision to have a fitness for duty examination performed was made before Plaintiff was referred to Dr. Barnes; she did not make that decision.  Amended Complaint, [Doc. 6], ¶¶45-49, pp. 14-15.  Plaintiff acknowledges that Dr. Barnes was to perform a fitness for duty examination.  Amended Complaint, [Doc. 6], ¶50, p. 15.  Plaintiff agreed that the OSU Medical School would have "primary control" of his evaluation, and that Dr. Barnes would not be responsible for decisions based upon the evaluation.  Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021.

Plaintiff's relationship with Dr. Barnes is governed by the Informed Consent he executed.  The relationship between any professional and a client is grounded in contract, and the professional's obligation extends no further than the performance of those tasks the professional agreed to perform.

> An action for malpractice is based on an employment contract.  To receive the professional services, the patient agrees to be treated, and if the patient is unable to give consent, the consent may be implied.  Otherwise, a physician may be liable for assault and battery.  Because in Oklahoma a physician is not under a general duty to provide professional services to others, the physician must consent to provide the services.  The agreement of the physician to treat and the patient to receive treatment is the basis of the employment contract.

*Jennings v. Badgett*, 2010 OK 7, ¶13, 230 P.3d 861, 865 (citations omitted).  The Oklahoma Supreme Court noted that "[m]ost courts addressing the issue have likewise required a physician-patient relationship as a prerequisite to medical malpractice

liability" from which it concluded that "the element of duty in a medical malpractice action requires a physician-patient relationship, . . . ."  *Jennings v. Badgett*, ¶¶15-17, 230 P.3d at 866 (citations omitted).  However, Plaintiff's own allegations demonstrate that he was not a psychotherapy patient of Dr. Barnes, and that Dr. Barnes did not consent to render psychotherapy to Plaintiff.  The extent of the agreement was that she would evaluate Plaintiff and report the results to the OSU Medical School.  Exhibit 1, Informed Consent, Barnes' Chart 021.  Therefore, Plaintiff's claim against Dr. Barnes for Breach of Professional Duty must be dismissed for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).

### G. Plaintiff Has Failed To State A Claim For Release Of Confidential Information

Plaintiff's Count XIV alleges that Dr. Barnes and other Defendants associated with the EAP improperly released confidential information.  Amended Complaint, [Doc. 6], ¶¶263-274, pp. 62-63.  Plaintiff does not identify the acts or omissions alleged of Dr. Barnes as distinct from those of the other EAP related Defendants.  Apart from his insufficient conclusory allegations, Plaintiff fails to show any departure from the terms of the Informed Consent he executed.  Exhibit 1, Informed Consent, Barnes' Chart 021-022.

The majority of Plaintiff's allegations in Count XIV refer indifferently to "the EAP, Heavin, Stewart, and Dr. Barnes."  Amended Complaint, [Doc. 6], ¶¶266-272, pp. 62-63.  Plaintiff's relation to Dr. Barnes is much more limited in scope than his relation to the other Defendants.  Plaintiff was referred to the EAP by the OSU Medical Center.  Whatever information was transferred, received or disclosed in that connection is

irrelevant to any claim Plaintiff may have against Dr. Barnes.  Upon referral to the EAP, a decision was made to seek an evaluation of Plaintiff.  Dr. Barnes did not participate in that original decision.   Dr. Barnes was then contacted for the specific purpose of performing an evaluation of Plaintiff and returning the results of that evaluation to the OSU Medical School.  In his Count XIV, Plaintiff "fails to differentiate among individual Defendants and specify which Defendants are alleged to have taken which particular actions" constituting an improper release of confidential information, from which it follows that Plaintiff has not properly pled a claim against Dr. Barnes, individually.  *See, Robbins v. Oklahoma*, 519 F.3d at 1253.  Plaintiff's allegations are conclusory and do not "nudge" into the critical area of the plausible.  *See, Bell v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *Robbins v. Oklahoma*, 519 F.3d at 1247.  Plaintiff executed an Informed Consent acknowledging "that the information obtained in [Dr. Barnes'] evaluation is under the primary control of the OSU Medical School" and that a "written report" would be provided for a specific person.   Plaintiff also authorized Dr. Barnes to receive information and to release information.  Exhibit 1, Informed Consent, pp. 1-2, Barnes' Chart 021-022.  Plaintiff has failed to show a plausible claim that Dr. Barnes violated this authorization.   Therefore, Plaintiff's claim for an allegedly improper release of confidential information must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### H. Plaintiff Has Failed To State A Claim For Wrongful Denial Of Personal Health Information

Plaintiff's Count XXI alleges that Dr. Barnes and numerous other Defendants declined to provide Plaintiff copies of his personal health information.   Amended

Complaint, [Doc. 6], ¶¶321-330, pp. 74-76.  Plaintiff again fails to distinguish the role of Dr. Barnes from that of the other Defendants.  The information known to Dr. Barnes, the circumstances under which she obtained it, and Plaintiff's written Informed Consent governing its use, all establish that the broad allegations of Plaintiff cannot state a claim.

Plaintiff refers to "Defendants OSU-CHS, OSU Medical Center, Drs. Cotton and Alexopulous, Benjamin, Knottingham, EAP, Heavin, Stewart, and Barnes" without distinguishing the nature of the information which might be held by Dr. Barnes, but not by others, or which might be held by the others, but not by Dr. Barnes.   Amended Complaint, [Doc. 6], ¶¶322-325, 327, pp. 74-76.  The only information in the possession of Dr. Barnes would be that provided to her for purposes of the evaluation and that she obtained from Plaintiff in performance of the evaluation.  Other parties may have other information unknown to Dr. Barnes, but certainly obtained under circumstances in which Dr. Barnes was not involved.  Plaintiff's allegations, which do not acknowledge the circumstances of the information available to Dr. Barnes as compared to the information available to other Defendants, establishes that Plaintiff's allegations "are so general that they encompass a wide swath of conduct" and that Plaintiff has not "nudged" his claim to the plausibility necessary to state a claim.  *Robbins v. Oklahoma*, 519 F.3d at 1247, *citing, Bell v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

Moreover, the Informed Consent Plaintiff executed controls and bars this claim against Dr. Barnes.  Plaintiff agreed "that the information obtained in this evaluation is under the primary control of the OSU Medical School" from which it follows that Dr. Barnes would not be the primary source from which Plaintiff must seek to obtain that

information.  *See*, Exhibit 1, Informed Consent, p. 1, Barnes' Chart 021.  Plaintiff may not pursue a claim against Dr. Barnes for failure to release information when he agreed that someone other than Dr. Barnes would have "primary control" of that information.

Accordingly, Plaintiff's claim against Dr. Barnes for failure to release his personal information must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## I. Plaintiff Failed to Attach an Affidavit of Expert Consultation

Plaintiff's Count XX alleges he had a "therapist/doctor-patient relationship" with Dr. Barnes and asserts a claim for Breach of Professional Duty against her.  Amended Complaint [Doc. 6], ¶¶314-320, pp.73-74.  Therefore, Plaintiff was obligated to secure a written opinion from a qualified expert before commencing his action, as attested by affidavit attached to his Complaint or Amended Complaint.  12 O.S.Supp. 2015, §19.1. Plaintiff failed to satisfy this requirement; his action has not been properly commenced against Dr. Barnes, and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1, 6).

When Plaintiff commenced this action, the following statute was in effect:

> 1. In any civil action for negligence wherein the plaintiff shall be required to present the testimony of an expert witness to establish breach of the relevant standard of care and that such breach of duty resulted in harm to the plaintiff, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:
>
>    a. The plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
>
>    b. The plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the determination of the expert that, based upon a review of the available material including, but not limited to, applicable records, facts or other relevant material, a reasonable interpretation of the facts supports a

finding that the acts or omissions of the defendant against whom the action is brought constituted negligence, and

   c. On the basis of the review and consultation of the qualified expert, the plaintiff has concluded that the claim is meritorious and based on good cause.

  2. If the civil action for negligence is filed:

   a. Without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

   b. No extension of time is subsequently granted by the court, pursuant to subsection B of this section, the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

  3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted negligence and shall include reasons explaining why the acts or omissions constituted negligence.  The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

12 O.S. Supp. 2015, §19.1(A).  Plaintiff's claims against Dr. Barnes clearly fall within the provisions of §19.1. Plaintiff acknowledges that Dr. Barnes is "a licensed psychologist"; he alleges that "[a] therapist/doctor-patient relationship existed between [them]" and that "[a] breach of the duty arising from . . . the relationships occurred from . . . actions by . . . Dr. Barnes . . . ."  Amended Complaint [Doc. 6], ¶¶50, 315 & 317, pp.15, 73.  Thus, Plaintiff's claims against Dr. Barnes are based upon an alleged failure to render highly specialized psychological services.

A licensed psychologist must have specialized education, training and knowledge. *See*, Psychologists Licensing Act, 59 O.S. & Supp. 2015, §§1351 – 1376.  Therefore, an ordinary lay person, as the "trier of fact" will need the "help" of an "expert's scientific,

technical, or other specialized knowledge . . . to understand the evidence or to determine"

whether, in this case, Dr. Barnes owed or breached any duty to Plaintiff.   Fed.R.Evid.

702(a).  Moreover, expert testimony is essential to prove a claim based upon an error in a

physician's diagnosis or other healthcare matters:

> Where a patient sues a physician for damages alleged to have been
> suffered as a result of the failure of the physician to properly diagnose
> the patient's injury and of the failure of the physician to treat the injury
> with the care and skill commensurate with his responsibility, the issue of
> fact is one of science and must necessarily be established and determined
> upon the testimony of skilled, professional witnesses; . . . .

*White v. Burton*, 1937 OK 381, 180 Okla. 499, 71 P.2d 694, First Syllabus by the Court.

> Expert testimony is required where the fact in issue is not within the
> realm of ordinary experience of mankind.

*Strubhart v. Perry Memorial Hospital Trust Authority*, 1995 OK 10, ¶33, 903 P.2d 263,

274 (citations omitted).  Accordingly, in the present case "plaintiff shall be required to

present the testimony of an expert witness to establish breach of the . . . standard of care"

by Dr. Barnes; by statute, Plaintiff was further required to obtain a written report from a

qualified expert and to attach an affidavit attesting to such consultation to his Complaint.

12 O.S. Supp. 2015, §19.1(A)(1).

This Court has recognized that the requirement of expert consultation before

commencing an action is substantive, and that a Plaintiff's failure to comply warrants the

dismissal of an action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P.

12(b)(1).   *See, Norman v. United States, ex rel., Veteran's Administration Medical*

*Center*, 2013 WL 425032, *2 (W.D. Okla., Feb. 4, 2013); *citing, Van Dyke v. United*

*States,* 457 Fed.Appx. 721, 725-726 (10th Cir., 2012).   Although the earlier statute

addressed in these cases was later held to be unconstitutional, the current statute suffers from none of the infirmities which caused earlier statutes to be stricken.

The current statute became law as part of a single Act specifically directed to affidavits of merit; it does not violate the "single-subject" rule in Okla.Const., Art. V, §57; Okla.Sess.Laws, 1ˢᵗ Exec.Sess., Ch. 12; *see, Douglas v. Cox Retirement Properties*, 2013 OK 37, 302 P.3d 789.   The current statute is not unconstitutional "special legislation"; instead, it is a general statute applicable to all cases in which expert testimony will be required to prove a deviation from the applicable standard of care.   12 O.S. 2015, §19.1(A)(1).   *See,* Okla.Const., Art. V, §46.   One earlier statute was stricken as "special legislation" because it was limited solely to "medical liability" actions.   *See, Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861.   A later statute was also stricken because the court concluded that the phrase "professional negligence" was not defined in that Act, and either referred to a "medical liability action" or was vague and meaningless.   *Wall v. Marouk*, 2013 OK 36, ¶¶9-16, 302 P.3d 775, 780-784.   In contrast, §19.1 does not use the phrases "professional negligence" or "medical records"  and does not require reference to the Affordable Access to Health Care Act to determine its meaning.

Lastly, a plaintiff may obtain an indigency exemption from the requirement for an affidavit of merit; no fee is charged for such an application in the current statute, unlike an earlier statute.   12 O.S.Supp. 2015, §19.1(D); §192.1; *compare* 12 O.S.Supp. 2009, §192 (repealed, 2013); *see, Wall v. Marouk*, ¶23, 302 P.3d at 786.   Thus, the current statutes requiring an affidavit of merit are constitutional and enforceable.

In summary, Plaintiff's claims against Dr. Barnes are based upon services allegedly rendered in her capacity as "a licensed psychologist."  Plaintiff will need expert testimony to establish a breach of the appropriate standard of care, and was required to attach to his Complaint an affidavit stating he had obtained a written report from a qualified expert.  Plaintiff's failure to attach such an affidavit requires the dismissal of his claims against Dr. Barnes.  Fed.R.Civ.P. 12(b)(1, 6); 12 O.S. Supp. 2015§ 19.1.

### III.  CONCLUSION

WHEREFORE, premises considered, the Defendant, Leslie Barnes, PhD., prays the Court to grant her motion and to dismiss Plaintiff's Amended Complaint [Doc. 6] for failure to state claims upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).  Additionally, because Plaintiff has failed to state a claim under federal law and because Plaintiff has failed to attach an affidavit of expert consultation, the Defendant, Leslie Barnes, PhD., alternatively requests this Court to dismiss Plaintiff's claims against her for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Respectfully submitted,

SECREST, HILL, BUTLER & SECREST

By:   s/ Edward J. Main
JAMES K. SECREST, II, OBA No. 8049
EDWARD J. MAIN, OBA No. 11912
7134 S. Yale Ave., Ste. 900
Tulsa, OK  74136
(918) 494-5905
(918) 494-2847 Facsimile
jsecrest@secresthill.com
emain@secresthill.com
ATTORNEYS FOR DEFENDANT,
LESLIE BARNES, PhD

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2016, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

Mark@Hammonslaw.com
amber@hammonslaw.com
steve.stephens@okstate.edu
kturner@newtonoconnor.com
rcrawford@newtonoconnor.com
jcrawford@newtonoconnor.com
mikelauderdale@mcafeetaft.com
nwhatley@mcafeetaft.com
philipbruce@mcafeetaft.com

s/ Edward J. Main

034\16001\p\MTD