## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY SNYDER, D.O., an Individual,     ) <br>     ) <br>     ) <br>          Plaintiff,     ) <br> v.     ) <br>     ) <br> Board of Regents for the Oklahoma     ) <br> Agricultural & Mechanical Colleges, *ex*     ) <br> *rel.,* Oklahoma State University Center     ) <br> for Health Sciences, *et al*,     ) <br>     ) <br>          Defendants.     ) | Case No.  CIV-16-384-F |

---

## DEFENDANTS', LORA COTTON, D.O., AND JENNY ALEXOPULOS, D.O., MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT, WITH BRIEF IN SUPPORT

---

Adam W. Childers, OBA #18673
Allen Hutson, OBA #30118
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
adam.childers@crowedunlevy.com
allen.hutson@crowedunlevy.com
ATTORNEYS FOR DEFENDANTS LORA
COTTON, D.O., AND JENNY ALEXOPULOS,
D.O.

Stephen R. Stephens
Board of Regents for the Oklahoma A&M Colleges
5th Floor, Student Union
Stillwater, OK  74078

(405) 744-6494
(405) 744-7998 (Facsimile)
steve.stephens@okstate.edu
ADDITIONAL ATTORNEY OF RECORD FOR
DEFENDANTS LORA COTTON, D.O., AND
JENNY ALEXOPULOS, D.O.

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................... 1

FACTUAL BACKGROUND .................................................................... 3

ARGUMENT AND AUTHORITY ........................................................... 7

STANDARD ............................................................................................. 7

I.      DEFENDANTS' EMPLOYER OSU-CHS HAS ELEVENTH
        AMENDMENT IMMUNITY AS TO CERTAIN CAUSES OF
        ACTION ASSERTED BY THE PLAINTIFF ............................................. 9

II.     THE PLAINTIFF'S CAUSES OF ACTION FOR VIOLATION OF
        THE ADA AND FMLA AS TO DEFENDANTS IN THEIR
        "OFFICIAL" CAPACITIES SHOULD BE DISMISSED BECAUSE
        THE PLAINTIFF HAS ALSO SUED DEFENDANTS OSU-CHS AND
        OSU MEDICAL CENTER FOR INJUNCTIVE RELIEF ........................ 11

III.    THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR A
        NUMBER OF HIS 42 U.S.C. § 1983 CAUSES OF ACTION AS TO
        DEFENDANTS COTTON AND ALEXOPULOS IN THEIR
        "OFFICIAL" AND "INDIVIDUAL" CAPACITIES ................................. 12

        A.      Violation of 42. U.S.C. § 1983 - First Amendment (Count
                Seven) ............................................................................................. 13

        B.      Violation of 42 U.S.C. §  1983 - Denial of Procedural Due
                Process (Liberty Interest) (Counts Nine and Ten) ........................... 15

        C.      Violations of 42 U.S.C. § 1983 - Denial of Equal Protection
                (Count Eleven) ................................................................................ 19

IV.     THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR
        CONSPIRACY UNDER 42 U.S.C. § 1985(3) AS TO DEFENDANTS
        COTTON AND ALEXOPULOS IN THEIR "OFFICIAL" AND
        "INDIVIDUAL" CAPACITIES ................................................................. 20

V.      THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR
        INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO
        DEFENDANTS COTTON AND ALEXOPULOS IN THEIR
        "INDIVIDUAL" CAPACITY .................................................................... 22

VI.     THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR
        WRONGFUL DENIAL OF PERSONAL HEALTH INFORMATION/
        IMPROPER WITHHOLDING OF PERSONAL HEALTH
        INFORMATION AS TO DEFENDANTS COTTON AND
        ALEXOPULOS IN THEIR "INDIVIDUAL" CAPACITY ....................... 25

VII.    THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR
        VIOLATION OF ARTICLE 2, SECTION 22 OF THE
        CONSTITUTION OF OKLAHOMA AS TO DEFENDANTS COTTON
        AND ALEXOPULOS IN THEIR "OFFICIAL" AND "INDIVIDUAL"
        CAPACITIES ........................................................................................... 26

CONCLUSION ................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alden v. Maine,*
   527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)..........................................9, 10

*Ashcroft v. Iqbal,*
   556 U.S. 662, 678 (2009)............................................................................................9

*Ashford v. Edmond Pub. Sch. Dist.,*
   822 F.Supp.2d 1189 (W.D. Okla. 2011)................................................................11, 12

*Bell Atl. Corp. v. Twombly,*
   127 S. Ct. 1955 (2007).............................................................7, 8, 16, 21, 25

*Brammer-Hoelter v. Twin Peaks Charter Acad.,*
   492 F.3d 1192 (10th Cir. 2007)................................................................................14

*Burgess v. City of Okla. City,*
   No. CIV-07-269-D, 2009 WL 2922942 (W.D. Okla. Sept. 8, 2009)...........................8

*Butler v. City of Prairie Vill., Kan.,*
   172 F.3d 736 (10th Cir. 1999)..................................................................................12

*Conaway v. Smith,*
   853 F.2d 789 (10th Cir. 1988)..............................................................14, 15, 16, 17

*Connick v. Meyers,*
   461 U.S. 138 (1983)..................................................................................................14

*David v. City & County of Denver,*
   101 F.3d 1344 (10th Cir.1997)................................................................................14

*Edelman v. Jordan,*
   415 U.S. 651 (1974)...................................................................................................9

*Fifer v. City of Tulsa,*
   12-CV-0408-CVE-FHM, 2012 WL 4758127 (N.D. Okla. Oct. 5, 2012)...................23

*Fitzpatrick v. Bitzer,*
   427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)................................................10

*Hafer v. Melo*,
    502 U.S. 21 (1991) ........................................................................... 10

*Herrmann v. Moore*,
    576 F.2d 453 (2d. Cir. 1978) ...................................................... 21, 22

*Isham v. Wilcox*,
    10 Fed.Appx. 729 (10th Cir. 2001) ............................................. 17, 18

*Janzen v. Watonga Hosp. Trust Auth.*,
    No. CIV-11-70-D, 2012 WL 3921524 (W.D. Okla. Sept. 7, 2012) ............ 24

*Kentucky v. Graham*,
    473 U.S. 159, 165, 105 St. Ct. 3099, 87 L.Ed.2d 114 (1985) .................... 11

*Kimel v. Florida Bd. of Regents*,
    528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) .................................... 9

*Lacher v. Bd. of Cnty. Comm'r for Okla. Cnty.*,
    No. CIV-11-1038-M, 2013 WL 268983 (W.D. Okla. Jan. 24, 2013) ........................ 24

*Lee v. Nicholl*,
    197 F.3d 1291 (10th Cir. 1999) ................................................. 14

*Leverington v. City of Colorado Springs*,
    643 F.3d 719 (10th Cir. 2011) .............................................. 14, 15

*Levy v. Ohl*,
    477 F.3d 988 (8th Cir. 2006) .................................................. 9

*Montgomery v. City of Ardmore*,
    365 F.3d 926 (10th Cir. 2004) .................................................. 22

*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977) .......................................................... 13

*Nevada Dept. of Human Resources v. Hibbs*,
    538 U.S. 721 (2003) .......................................................... 10

*O'Connor v. St. John's College*,
    290 Fed.Appx. 137 (10th Cir. 2008) (attached as Exhibit 5) .................. 20, 21

*Pennhurst State Sch. and Hosp. v. Halderman*,
    465 U.S. 89 (1984) ........................................................... 27

*Phelps v. Wichita Eagle-Beacon*,
   886 F.2d 1262 (10th Cir. 1989) .......................................................... 18, 19

*Richter v. Advance Auto Parts*,
   686 F.3d 847 (8th Cir. 2012) ...................................................................... 9

*Robbins v. Okla.*,
   519 F.3d 1242 (10th Cir. 2008) ............................................................... 7, 8

*Steadfast Insurance Co. v. Agricultural Insurance Co.*,
   507 F.3d 1250 (10th Cir. 2007) .................................................................. 9

*Stevenson v. Indep. Sch. Dist. No. I-038 of Garvin Cnty., Okla.*,
   393 F.Supp.2d 1148 (W.D. Okla. 2005) .................................................... 19

*Stipes v. United States*,
   744 F.2d 1418 (10th Cir. 1984) ................................................................ 17

*Stritzl v. U.S. Postal Serv.*,
   602 F.2d 249 (10th Cir. 1979) .................................................................. 17

*Sullivan v. Stark*,
   808 F.2d 737, 739 (10th Cir. 1987) .......................................................... 17

*Underwood v. Bd. of Cnty. Com'rs of Cnty. of Jefferson*,
   611 F.Supp.2d 1223 (W.D. Okla. 2009) .................................................... 26

*VanZandt v. Okla. Dept. of Human Servs.*,
   276 Fed. Appx. 843 (10th Cir. 2008)........................................................... 8

*West v. Atkins*,
   487 U.S. 42 (1988)................................................................................... 13

*Wheeler v. Spirit Aerosystems, Inc.*,
   No. 13-CV-0421-CVE-TLW, 2013 WL 5520012 (N.D. Okla. Oct. 1, 2013)............. 24

*Will v. Michigan Dept. of State Police*,
   491 U.S. 58 (1989)................................................................................... 10

*Williams v. Figueroa*,
   Case No. CIV-08-748-R, 2008 WL 4525527 (W.D. Okla. Oct. 2, 2008) .................... 8

STATE CASES

*Anderson v. Okla. Temporary Servs., Inc.*,
   1996 OK CIV APP 90, 925 P.2d 574 ......................................................... 23

*Breeden v. League Servs. Corp.*,
   1978 OK 27, 575 P.2d 1374 .................................................................................... 22

*Computer Publ'ns, Inc. v. Welton*,
   2002 OK 50, 49 P.3d 732 ................................................................................ 22, 23

*Eddy v. Brown*,
   1986 OK 3, 715 P.2d 74 .......................................................................................... 23

*Gabler v. Holder & Smith, Inc.*,
   2000 OK CIV APP 107, 11 P.3d 1269 ....................................................................... 23

*Miner v. Mid-America Door Co.*,
   2003 OK CIV APP 32, 68 P.3d 212 .......................................................................... 23

*Mirzaie v. Smith Congeneration, Inc.*,
   1998 OK CIV APP 123, 962 P.2d 678 ....................................................................... 23

*Smith v. Farmers Coop. Assoc. of Butler*,
   1992 OK 11, 825 P.2d 1323 .................................................................................... 23

*Zahorsky v. Cmty. Nat'l Bank of Alva*,
   883 P.2d. 198 (Okla. Civ. App. 1994) ...................................................................... 23

## FEDERAL STATUTES

42 U.S.C. § 1983 ......................................................................... 1, 12, 13, 15, 19, 26, 27

42 U.S.C. § 1985(3) ............................................................................... 1, 20, 21, 22

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 25, 27

Defendants, Lora Cotton, D.O. ("Cotton"), and Jenny Alexopulos, D.O. ("Alexopulos") (collectively "Defendants"), in their official and individual capacities, hereby move the Court to dismiss the plaintiff's following causes of action against them pursuant to Fed. R. Civ. P. 12(b)(6).

1. **Count Two**:  Violation of the American with Disabilities Act ("ADA");

2. **Count Three**:  Violation of the Family Medical Leave Act ("FMLA");

3. **Count Seven**:  Violation of 42 U.S.C. § 1983 – First Amendment;

4. **Count Nine**:  Violation of 42 U.S.C. § 1983 – Liberty Interest;

5. **Count Ten**:  Violation of 42 U.S.C. § 1983 – Liberty Interest;

6. **Count Eleven**:  Violation of 42 U.S.C. § 1983 – Equal Protection;

7. **Count Fifteen**:  Conspiracy under 42 U.S.C. § 1985(3);

8. **Count Sixteen**:  Conspiracy under 42 U.S.C. § 1985 (3);

9. **Count Seventeen**:  Intentional Infliction of Emotional Distress ("IIED");

10. **Count Twenty-One**:  Wrongful Denial of Personal Health Information/Improper Withholding of Personal Health Information; and

11. **Count Twenty-Two**:  Violation of Article 2, Section 22 of the Constitution of Oklahoma.

The reasons for this motion are as follows:

## BRIEF IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT

## INTRODUCTION

The plaintiff's voluminous Amended Complaint asserts twenty-two (22) distinct causes of action against fifteen (15) separate defendants.  All but eight (8) of the

1

plaintiff's twenty-two causes of action have been asserted against Defendants Cotton and Alexopulos.  Despite the sheer breadth (and audacity) of the Amended Complaint, the plaintiff has failed to allege facts sufficient to entitle him to relief as to the above-identified causes of action brought against Cotton and Alexopulos.

One might infer from the plaintiff's bloated seventy-nine (79) page Amended Complaint that this is a complicated case.  It is not.  Each of the plaintiff's causes of action against Defendants Cotton and Alexopulos arise from Defendants' alleged mistreatment of the plaintiff as a student and/or employee[1] in his residency program.  All actions taken by Defendants Cotton and Alexopulos as to the plaintiff were based on their reasoned and professional judgment.  The plaintiff simply does not agree with their professional judgment.

At bottom, this lawsuit represents a naked attempt to have this Court second-guess the professional judgement of Defendants Cotton and Alexopulos.  In other words, the plaintiff would have this Court substitute its own professional judgement over that of Defendants Cotton and Alexopulos.  Courts have consistently refused to engage in this type of guesswork.

---

[1] As will be explained *infra*, Defendants Cotton and Alexopulos strenuously deny the existence of an employer/employee relationship with the plaintiff.  Defendants Cotton and Alexopulos are employees of the Oklahoma State University Center for Health Sciences ("OSU-CHS"). OSU-CHS was the sponsor of the Family Medicine Residency Program at the hospital. In addition to being OSU-CHS employees, Drs. Cotton and Alexopulos had dual roles at the hospital. Dr. Cotton was the Residency Program Director, and Dr. Alexopulos was the Director of Medical Education for Graduate Medical Education Programs. In those roles, they acted as clinic academic supervisors, not as employers. The plaintiff only enjoyed an academic relationship with OSU-CHS and Drs. Cotton and Alexopulos. No employment relationship was established between the plaintiff and Defendants Cotton, Alexopulos and/or OSU-CHS.

2

More importantly, the plaintiff's "everything but the kitchen sink" approach to this case results in nothing more than a series of confusing, incoherent and conclusory allegations rendered against numerous defendants. The plaintiff's allegations have left Defendants Cotton and Alexopulos—and likely the other defendants—in the unenviable position of sifting through the tea leaves to determine which allegations support the causes of action ostensibly asserted against them. And, the allegations that can be gleaned from the plaintiff's Amended Complaint make clear that the above-identified causes of action are not supported (nor can they be) by the "facts" necessary to state a claim for relief.

For these reasons, as outlined more fully below, Defendants Cotton and Alexopulos respectfully request that the Court grant their Motion and dismiss the above-identified claims asserted by the plaintiff with prejudice.

## FACTUAL BACKGROUND

The large number of causes of action and defendants in this case make it procedurally and substantively confusing. Adding to this confusion are the relationships (or lack thereof) between the defendants. To mitigate this confusion, Defendants Cotton and Alexopulos, as an aid to the Court, provide the following "background" information -- omitted from the plaintiff's Amended Complaint -- regarding the relationships between the various defendants:

- Oklahoma State University Medical Authority ("OSUMA") is a state agency that owns the real property and related assets associated with the hospital. OSUMA has a governing board but no actual employees.

- Oklahoma State University Medical Trust ("OSUMT") is a state beneficiary public trust.  Its governing board is identical to OSUMA's governing board.

- OSUMA leases the hospital to OSUMT for OSUMT to operate the hospital.

- OSUMT has, in turn, subcontracted with Mercy Health Oklahoma Communities, Inc. ("Mercy") for certain executive management functions and for Mercy to oversee the day-to-day operations of the hospital.

- OSUMA is not the employer of any employees working at the hospital.  Instead, employees are employed by either OSUMT or Mercy, depending on whether they are executive management or not.

- Oklahoma State University Medical Center ("OSUMC") is a trade name that is commonly used to refer to the hospital.  However, OSUMC is not a recognized legal entity.

- In most instances, employees of the hospital or OSUMC are, in actuality, employees of OSUMT.

- Plaintiff's Resident/Fellow Staff Agreement was entered into with OSUMC, which was referred to in that Agreement as the "hospital."  As set forth above, OSUMT is the legal entity that was plaintiff's actual employer.

- Oklahoma State University Center for Health Sciences ("OSU-CHS") is the name of the medical school located in Tulsa, Oklahoma, from which Plaintiff graduated.

- OSU-CHS is one of the colleges and universities governed by the Board of Regents for the Oklahoma Agricultural & Mechanical Colleges ("Board of Regents").  Defendants Cotton and Alexopulos are employees of OSU-CHS.

The following factual allegations are set forth in the plaintiff's Amended Complaint.  By referring to these allegations hereinafter, Defendants Cotton and Alexopulos do not confirm or deny any of the allegations.  In fact, many of the allegations are incorrect or so incomplete as to be misleading.  However, Defendants Cotton and Alexopulos concede that for purposes of their Motion, the Court must view

4

the plaintiff's allegations as true.   Even with this assumption, however, Defendants Cotton and Alexopulos are entitled to the requested relief.

The plaintiff alleges that Defendants Cotton and Alexopulos are employees of both OSU-CHS and OSUMC (i.e., OSUMT).  ([Dkt. 6], ¶¶ 9 and 10).[2] Defendant Cotton has been sued in her official and individual capacity as the Program Director of the OSU Family Medicine Residency Program.   Defendant Alexopulos has been sued in her official and individual capacity as the Director of Medical Education of all the Graduate Medical Education programs at OSU Medical Center.   *Id.*   The plaintiff alleges that Defendants Cotton and Alexopulos were acting under color of state law in these roles. *Id*. at ¶ 18.

Upon graduating from Oklahoma State University, College of Osteopathic Medicine, the plaintiff was "matched" with the OSU Family Medicine Residency Program at OSU Medical Center.   *Id*. at ¶¶ 22-3.   The plaintiff executed an Osteopathic Graduate Medical Education Resident/Fellow Staff Agreement with OSU Medical Center (i.e., OSUMT).   *Id.*   at ¶ 25.   The plaintiff further received a Residency Program Handbook from OSU-CHS as part of the academic component of the residency program. *Id*. at ¶ 26.   As described above, Defendants Cotton and Alexopulos were charged with overseeing the educational component of the residency program.

---

[2] Throughout the Brief, Defendants will continue to refer to "OSUUMC", as doing so is consistent with Plaintiff's ***allegations.***  As explained earlier, OSUMC is actually a tradename for the hospital. The hospital is actually owned by OSUMA, but is leased to OSUMT. In most instances, "employees of the hospital" or "employees of OSUMC" are really employees of OSUMT.

The plaintiff's alleged problems with Defendants Cotton and Alexopulos commenced in March 2014, at which time the plaintiff was applying for his medical license. *Id*. at ¶¶ 29-36. The genesis of this conflict was Defendant Cotton's decision to not report to the Oklahoma State Board of Osteopathic Examiners (the "Board") that the plaintiff had successfully completed his postgraduate training (residency) or was "in progress" of completing such training. *Id*. The plaintiff alleges Defendant Cotton's decision in this regard was without merit. *Id*.

The plaintiff was subsequently placed on three (3) months of academic probation. *Id*. at ¶ 37. The plaintiff alleges the purported reasons for the probation occurred three months prior to him being placed on probation. *Id*. at ¶ 39. Importantly, the plaintiff does not allege that the purported reasons for his probation were unfounded, and instead focuses on Defendant Cotton's alleged requirement that he receive neuropsychiatric testing as part of his probation, which ultimately resulted in a fitness for duty examination through the Employee Assistance Program ("EAP") administered by OSU Medical Center. *Id*. at 40-49. During the plaintiff's probationary period, he was permitted to continue in the residency program. *Id*. at ¶ 49.

The plaintiff generally alleges Defendants Cotton and Alexopulos (among others) intentionally interfered with his fitness for duty examination in an effort to have him removed from the residency program -- the plaintiff was placed on paid leave during this period of time. *Id*. at ¶¶ 50-62. The plaintiff was ultimately determined to be unfit for duty by Defendant Leslie Barnes (a physician). *Id*. at ¶¶ 63-64. The plaintiff alleges that this determination was the result of Defendants Cotton's and Alexopulos' (among others)

interference with the EAP process. *Id*. at ¶¶ 63-72. The plaintiff further alleges that Defendants Cotton and Alexopulos (among others) refused to provide him with the medical information used during the EAP process. *Id*.

Further, during the EAP process, the plaintiff, a Caucasian <u>male</u>, lodged an internal complaint of discrimination based on his sex and perceived disability. *Id*. at ¶ 73. The plaintiff alleges he was subjected to retaliation shortly thereafter in the form of being removed from an email "listserv." *Id*. at ¶ 75. The plaintiff alleges he later lodged a second complaint of discrimination based on his sex and perceived disability, but, again, received no meaningful response. *Id*. at ¶ 78. The plaintiff also alleges he requested an appeal of his probation and paid suspension, but it was denied. *Id*. at ¶ 76.

The plaintiff was ultimately terminated by OSU Medical Center on or around February 2, 2015. *Id*. at ¶ 84. The plaintiff was subsequently dismissed from the residency program by OSU-CHS as a result of plaintiff having abandoned his residency position. *Id*. at ¶ 87.

The foregoing allegations form the nucleus of the plaintiff's claims against Defendants Cotton and Alexopulos. Even taking these unfounded allegations as true, the above-identified claims are ripe for dismissal.

## ARGUMENT AND AUTHORITY

### STANDARD

The burden is on the plaintiff to "frame a 'complaint with enough factual matter (taken as true) to suggest' that [they are] entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965

(2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965. To survive a motion to dismiss, an initial pleading must present factual allegations that, if true, "raise a right to relief above the speculative level." *Id.* "Thus, 'when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief,' the cause of action should be dismissed." *Williams v. Figueroa*, Case No. CIV-08-748-R, 2008 WL 4525527, at *2 (W.D. Okla. Oct. 2, 2008) (quoting *Twombly*, 127 S. Ct. at 1966) (unpublished) (attached as Exhibit 1).

The requirement of "plausibility serves two purposes: (1) to weed out claims that, absent additional pleadings, do not have a reasonable prospect of success, and (2) to inform the defendants of the actual grounds of the claim against them." *VanZandt v. Okla. Dept. of Human Servs.*, 276 Fed. Appx. 843, 847 (10th Cir. 2008) (unpublished) (attached as Exhibit 2). The Tenth Circuit advises a reviewing court to keep these purposes in mind when deciding a motion to dismiss. *See id.* at 846-47. Further, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 127 S. Ct. at 1965 n.3; *Robbins*, 519 F.3d at 1248.

Accordingly, "under *Twombly*, plaintiffs must now 'do more than generally allege a wide swath of conduct,' and must instead allege sufficient facts to 'nudge[] their claims across the line from conceivable to plausible.'" *Burgess v. City of Okla. City*, No. CIV-07-269-D, 2009 WL 2922942, at *2 (W.D. Okla. Sept. 8, 2009) (citing *Robbins*, 519 F.3d

at 1247 (internal quotations and citations omitted)) (unpublished) (attached as Exhibit 3).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Richter v. Advance Auto Parts*, 686 F.3d 847, 850 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]he complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2006).

## I.   DEFENDANTS' EMPLOYER OSU-CHS[3] HAS ELEVENTH AMENDMENT IMMUNITY AS TO CERTAIN CAUSES OF ACTION ASSERTED BY THE PLAINTIFF[4]

The Eleventh Amendment protects states, or arms of the state, from being sued in federal court by citizens of its own state or citizens of another state.  *Edelman v. Jordan,* 415 U.S. 651, 662-3 (1974); *Steadfast Insurance Co. v. Agricultural Insurance Co.,* 507 F.3d 1250 (10th Cir. 2007).  A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense.  *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72-73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636

---

[3] Defendants incorporate by reference the argument and authority set forth in OSU-CHS's corresponding Motion for Partial Dismissal as if set forth herein.

[4] To the extent the plaintiff alleges OSU Medical Center (i.e., OSUMT) is also Defendants' employer, for the reasons set forth in OSUMT's corresponding motion, which are incorporated by reference herein, OSUMT is also entitled to Eleventh Amendment immunity.

(1999).  As an exception to this principle, Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment.  *See*, e.g., *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).  However, Congress must "mak[e] its intention to abrogate unmistakably clear in the language of the statute."  *Nevada Dept. of Human Resources v. Hibbs,* 538 U.S. 721, 726 (2003).

As a result of this immunity, the plaintiff has asserted certain causes of action against Defendants Cotton and Alexopulos in their official and individual capacities.  In *Ex parte Young*, notwithstanding the Eleventh Amendment immunity of the states, the United States Supreme Court recognized suits against employees of the state may proceed in their "official" capacities to enforce compliance with federal law.  209 U.S. 123 (1908). Similarly, the United States Supreme Court has recognized that Eleventh Amendment immunity of the states does not shield state employees from suit for monetary damages in their individual capacities.  *Alden,* 527 U.S. at 757.

In short, the plaintiff may only be entitled to prospective injunctive relief for causes of action asserted against Defendants Cotton and Alexopulos in their "official" capacities, but may recover monetary damages against Defendants Cotton and Alexopulos in their "individual" capacities when permitted by federal statute.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989); *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  Defendants Cotton and Alexopulos will draw the Court's attention to this important distinction when addressing the plaintiff's myriad of claims below.[5]

---

[5] Defendants Cotton and Alexopulos do not rely on the doctrine of qualified immunity in their Motion because the plaintiff's causes of action fall on their own.  However, to the

II.   **THE PLAINTIFF'S CAUSES OF ACTION FOR VIOLATION OF THE ADA AND FMLA AS TO DEFENDANTS IN THEIR "OFFICIAL" CAPACITIES SHOULD BE DISMISSED BECAUSE THE PLAINTIFF HAS ALSO SUED DEFENDANTS OSU-CHS AND OSU MEDICAL CENTER FOR INJUNCTIVE RELIEF**

"An official capacity suit is 'only another way of pleading an action against an entity of which an officer is an agent.'" *Ashford v. Edmond Pub. Sch. Dist.*, 822 F.Supp.2d 1189, 1200 (W.D. Okla. 2011) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).  "It is, in all respects other than name, to be treated as a suit against the entity ... for the real party in interest is the entity." *Id.* (internal quotation omitted). "In other words, bringing a suit against a public employee in his official capacity is the same as bringing a suit against the [public employer]."  *Id*. (internal quotation omitted).

In *Ashford*, the Honorable Timothy D. DeGiusti recognized this legal certainty in granting a motion to dismiss claims asserted against employees in their "official" capacities that were also asserted against the employees' employer (the school district). *Id*.  Judge DeGiusti appropriately reasoned that "[p]laintiff's action against individual officials simply duplicates their actions against the [d]istrict and serves no purpose that can be identified …" *Id*.

The same logic holds true here.  The plaintiff asserts causes of action for violation of the ADA and violation of the FMLA as to Defendants Cotton and Alexopulos in their

---

extent the plaintiff is seeking monetary damages from Defendants Cotton and Alexopulos, they are shielded from such civil damages based on qualified immunity, and Defendants request a ruling from the Court to that effect in the event that further briefing reveals an attempt by plaintiff to seek such monetary damages.

"official" capacities.  ([Dkt. 6], ¶¶ 107-136).  The plaintiff asserts the very same causes of action against Defendants OSU-CHS and OSU Medical Center respectively -- the alleged joint employers of Defendants Cotton and Alexopulos.  *Id*.  As a result, the causes of action are duplicative on their face.

Based on the reasoning and analysis set forth in *Ashford*, Defendants Cotton and Alexopulos respectfully request that the Court dismiss the plaintiff's causes of action for violation of the ADA (Count Two) and violation of the FMLA (Count Three) in their "official" capacities.[6]

## III. THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR A NUMBER OF HIS 42 U.S.C. § 1983 CAUSES OF ACTION AS TO DEFENDANTS COTTON AND ALEXOPULOS IN THEIR "OFFICIAL" AND "INDIVIDUAL" CAPACITIES

The United States Supreme Court has identified two elements necessary to establish a *prima facie* claim for violation of 42 U.S.C. § 1983:  The plaintiff must allege both: (1) a deprivation of a federal right; and (2) that the person who deprived the

---

[6] A plain reading of the plaintiff's Amended Complaint reveals the plaintiff did not assert a claim for violation of the ADA as to Defendants Cotton and Alexopulos in their "individual" capacities.  However, to the extent the plaintiff argues he did, the plaintiff's ADA claim should be dismissed because the ADA does not permit the recovery of monetary damages against individuals.  *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (holding that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition).

To the extent the plaintiff asserted causes of action for sex discrimination (Count Four) and retaliation (Count Five) as to Defendants Cotton and Alexopulos in their "official" and "individual" capacities, these causes of action should be dismissed for the same reasons as the plaintiff's cause of action for violation of the ADA.  *See Ashford*, 822 F.Supp.2d at 1200; *Butler*, 172 F.3d at 744.

plaintiff of that right acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  With respect to the following causes of action pursuant to 42 U.S.C. § 1983, the plaintiff has failed to allege sufficient facts to demonstrate a deprivation of a federal right.

### A.   Violation of 42 U.S.C. § 1983 – First Amendment (Count Seven).

The plaintiff's first amendment claim is based on his alleged free speech exercised as a public employee of Defendants OSU-CHS and OSU Medical Center.  Specifically, the plaintiff alleges he engaged in free speech "by presenting evidence of wrong-doing and complaining about unlawful discrimination."  ([Dkt. 6], ¶ 167).

The plaintiff further alleges that Defendants Cotton and Alexopulos were motivated to retaliate against him for his exercise of free speech because of: (1) his refusal to withdraw his complaints of discrimination; (2) his refusal to waive his right to appeal of his disciplinary actions; and (3) his decision to seek legal counsel.  *Id*. at ¶ 169.  The plaintiff alleges the retaliatory acts of Defendants Cotton and Alexopulos resulted in his wrongful termination from OSU-CHS and OSU medical center.  *Id*. at ¶ 170.

A public employee -- such as the plaintiff -- who claims to have been retaliated against for the exercise of First Amendment rights must establish two elements to prevail on the claim:  (1) that the conduct at issue was protected speech; and (2) that the speech played a substantial part in the employer's adverse employment action.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977).[7]  To determine if the

---

[7] The Tenth Circuit has recognized a similar five (5) prong test to be implemented in public-employee, free speech cases (*Garcetti/Pickering* test).  The test analyzes: "(1)

speech is protected, the Court must first determine if the speech touched on a matter of public concern. *Conaway v. Smith*, 853 F.2d 789, 795 (10th Cir. 1988).

Whether an employee's speech addresses a matter of public concern must be determined by the "content, form, and context of a given statement ..." *Connick v. Meyers*, 461 U.S. 138, 147-48 (1983). "Matters of public concern are those of interest to the community whether for social, political, or other reasons." *Leverington*, 643 F.3d at 727. "In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen." *David v. City & County of Denver*, 101 F.3d 1344, 1355 (10th Cir.1997).

A review of the allegations in the plaintiff's Amended Complaint makes clear that his alleged protected speech was purely personal to him, and therefore <u>not</u> a matter of public concern. The plaintiff alleges he complained of his wrongful treatment as a resident employee of OSU-CHS and OSU Medical Center, ultimately resulting in his termination from employment. While the plaintiff alleges he complained of discrimination, the alleged discrimination was related solely to him personally as plaintiff has not identified any other resident employee comparators. *See Lee v. Nicholl*, 197 F.3d

---

whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 724 (10th Cir. 2011). Defendants Cotton and Alexopulos do not address the other prongs as the plaintiff has failed to establish the most critical second prong. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007) (noting "[i]f the speech is not a matter of public concern, then the speech is unprotected *and the inquiry ends*") (emphasis added).

1291, 1295 (10th Cir. 1999) (stating "it is insufficient that the speech relates generally to a subject matter of public importance").

Indeed, the plaintiff's alleged protected speech relates solely to personal disputes and grievances he had with Defendants Cotton and Alexopulos as a resident employee and was certainly not calculated to disclose misconduct to the public. According to the plaintiff's own Amended Complaint, the plaintiff was simply airing his internal complaints and grievances as a resident employee of OSU-CHS and OSU Medical Center. Therefore, the plaintiff has failed to allege facts sufficient to establish he engaged in protected speech and dismissal is warranted. *Leverington*, 643 F.3d at 727-28.

**B.     Violation of 42 U.S.C. § 1983 – Denial of Procedural Due Process (Liberty Interest) (Counts Nine and Ten).**

The plaintiff alleges a number of liberty interests that he allegedly enjoyed as a resident employee of Defendants OSU-CHS and OSU Medical Center. However, a majority of these alleged liberty interests form the basis of his other causes of action for violation of 42 U.S.C. § 1983, e.g., right to free speech and right to access his personal health information. These liberty interests are insufficient to support a viable 42 U.S.C. § 1983 claim based on deprivation of a liberty interest.

Indeed, "[t]he concept of liberty recognizes two particular interests of a public employee:  (1) the protection of his good name, reputation, honor, and integrity, and (2) his freedom to take advantage of other employment opportunities." *Conaway*, 853 F.2d at 794. "For an employee to make a successful liberty deprivation claim, in addition to

proving one of the above-recognized interests, he must also show that his dismissal resulted in the *publication* of information which was false and stigmatizing." *Id.*

The plaintiff has alleged that Defendants Cotton and Alexopulos deprived him of these recognized liberty interests. ([Dkt. 6], ¶¶ 201, 209, 211 and 213). However, the plaintiff has failed to allege facts sufficient to demonstrate he was in fact deprived of these liberty interests.

At the outset, the plaintiff has failed to allege facts to demonstrate that his termination as a resident employee was publicized. Indeed, the only allegation contained in the plaintiff's voluminous Amended Complaint regarding publication is the single, self-serving and conculsory allegation that "[t]he statements and actions taken by Drs. Cotton and Alexopulos were published and/or publicly disclosed." *Id.* at ¶ 214. The plaintiff alleges <u>no</u> <u>facts</u> to establish how the actions of Defendants Cotton and Alexopulos were published and/or publicly disclosed. The plaintiff cannot rely on conclusory allegations to avoid dismissal.[8] *Twombly*, 127 S. Ct. at 1965.

Moreover, the plaintiff has failed to demonstrate that he was deprived of his good name, reputation, honor, and integrity as a result of the acts and omissions of Defendants Cotton and Alexopulos. "[A] liberty interest might be implicated by charges of 'dishonesty or immorality' because such charge might seriously damage his standing and

---

[8] The plaintiff's failure to allege facts sufficient to suggest a publication occurred proves fatal to his causes of action for deprivation of his liberty interests and the Court's inquiry should end here. However, Defendants will further highlight the other substantive deficiencies in the plaintiff's causes of action.

associations in the community." *Conaway*, 853 F.2d at 794. No such allegations are present here.

Indeed, the alleged facts supporting plaintiff's claim that Defendants Cotton and Alexopulos deprived him of his good name, reputation, honor, and integrity relate to Defendants Cotton's and Alexopulos's perceived mistreatment of him as an employee resident and his ultimate termination from employment. However, the only allegations the Court need consider are the alleged reasons communicated to him (and to others, if any) for his termination. *See Isham v. Wilcox*, 10 Fed.Appx. 729, 732 (10th Cir. 2001) (unpublished) (attached as Exhibit 4). The plaintiff here alleges he was terminated for job abandonment, which he claims is the result of his refusal to withdraw his complaints of discrimination and appeal rights and his forced leave of absence. ([Dkt. 6], ¶ 84, 87).

Even if Defendants Cotton and Alexopulos "falsely" informed the public the plaintiff was terminated for job abandonment, which they did not, this is not the type of allegation that would impugn an individual's good name. *See Conaway*, 853 F.2d at 794 (holding that the reasons for the plaintiff discharge, neglect of duties and insubordination, even if false, do not call into question his good name, reputation, honor or integrity); *Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987) (holding that charge the plaintiff was negligent or derelict in performing his duties did not implicate liberty interest); *Stipes v. United States*, 744 F.2d 1418, 1422 (10th Cir. 1984) (holding that discharge for tardiness, unreliable behavior, and horseplay not a liberty interest infraction); *Stritzl v. U.S. Postal Serv.*, 602 F.2d 249, 252 (10th Cir. 1979) (holding that allegations of plaintiff's poor work habits and low productivity do not implicate a liberty interest).

17

Finally, the plaintiff cannot rely on his self-serving and conclusory allegation that the actions of Defendants Cotton and Alexopulos have foreclosed other employment opportunities to establish a deprivation of a liberty interest. *Isham*, 10 Fed.Appx. at 732 (stating "potential damage to prospective employment opportunities is too intangible to constitute a deprivation of liberty interest); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989) (recognizing "that damage to prospective employment opportunities is too intangible to constitute a deprivation of a liberty … interest"). Rather, the plaintiff must demonstrate his existing status as a medical doctor has been significantly altered. *Id*. at 1269. He has not (and cannot) met this threshold.

The plaintiff does not allege (nor can he) that the acts and omissions of Defendants Cotton and Alexopulos have prevented him from: (1) being a doctor, (2) applying for other residency programs, or (3) receiving his medical license. It is undeniable that while plaintiff's opportunity to practice medicine may have been delayed, it has not been significantly altered.

The plaintiff's allegations are analogous to the allegations in *Phelps*. In *Phelps*, a lawyer alleged the defendant newspaper had wrongfully published articles which made him less attractive to prospective clients. *Id*. at 1268-9. The Tenth Circuit held that this allegation was insufficient to state a deprivation of liberty interest, reasoning the plaintiff had not been foreclosed from practicing law. *Id*. at 1269.

The same is true here. The plaintiff has not been foreclosed from the practice of medicine. The plaintiff remains free to apply to other residency programs in pursuit of the post-graduate requirements necessary to receive a medical license. The fact that his

removal from the residency program may make him less attractive to other residency programs (which has no factual support) is insufficient to establish the deprivation of a liberty interest. *Id.*

Therefore, Defendants Cotton and Alexopulos respectfully request that the Court dismiss the plaintiff's causes of action for deprivation of his liberty interests (Count Nine and Count Ten) for failure to state a claim upon which relief may be granted.

C.   **Violations of 42 U.S.C. § 1983 – Denial of Equal Protection (Count Eleven).**

The plaintiff's equal protection claim is based on Defendants Cotton's and Alexopulos's alleged discriminatory treatment of him based on his sex and perceived disability.  ([Dkt. 6], ¶¶ 223-225).  To be sure, the plaintiff's equal protection is nothing more than a trussed-up reiteration of his previously addressed causes of action for violations of the ADA (Count Two) and Title VII (Counts Four and Five).  The plaintiff is simply using his equal protection claim as a vehicle to (duplicatively) enforce his rights under these statutes and regulations.

However, "[s]ection 1983 cannot be used to vindicate a violation of federal law where Congress has otherwise created an incompatible and comprehensive enforcement scheme."  *Stevenson v. Indep. Sch. Dist. No. I-038 of Garvin Cnty., Okla.*,  393 F.Supp.2d. 1148, 1152 (W.D. Okla. 2005).  More specifically, the plaintiff cannot use his section 1983 equal protection claim to remedy Defendants Cotton's and Alexopulos's alleged violations of the ADA and Title VII. *Id.*

It is clear the plaintiff is attempting to use his section 1983 claim to do what he cannot do directly under the ADA and Title VII -- establish individual liability. *See supra*, n. 5. The plaintiff is simply using section 1983 to circumvent the strictures of the ADA and Title VII. This type of artful pleading is prohibited.

Therefore, the plaintiff's cause of action for violation of his equal protection rights (Count Eleven) should be dismissed as to Defendants Cotton and Alexopulos.

**IV.    THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR CONSPIRACY UNDER 42 U.S.C. § 1985(3) AS TO DEFENDANTS COTTON AND ALEXOPULOS IN THEIR "OFFICIAL" AND "INDIVIDUAL" CAPACITIES**

The plaintiff asserts two causes of action for conspiracy under 42 U.S.C. § 1985(3) as to Defendants Cotton and Alexopulos (Counts Fifteen and Sixteen). The foundation of each of the plaintiff's causes of action as to Defendants Cotton and Alexopulos is their alleged wrongful and/or unlawful conduct as employees of OSU-CHS and OSU Medical Center. ([Dkt. 6], ¶¶ 276-77, 285-86). Both of the plaintiff's causes of action fail.

First, a "[s]ection 1985(3) conspiracy claim cannot stand on vague and conclusory allegations, but rather, must be pled with some degree of specificity." *O'Connor v. St. John's College*, 290 Fed.Appx. 137, 141 (10th Cir. 2008) (internal quotation omitted) (unpublished) (attached as Exhibit 5). The plaintiff has failed to meet this heightened threshold with respect to his first cause of action for conspiracy under section 1985(3) (Count Fifteen).

An impartial review of the plaintiff's Amended Complaint reveals his allegations provide little notice as to which allegations of conspiratorial conduct are directed at

Defendants Cotton and Alexopulos.   ([Dkt. 6], ¶ 277).   Indeed, the plaintiff identifies approximately ten (10) separate defendants that allegedly engaged in the conspiracy, and then lists a large number of acts allegedly committed in furtherance of the conspiracy. However, the plaintiff does not attribute the acts to specific defendants.

As a result, Defendants Cotton and Alexopulos—along with the other defendants included in this cause of action—are left to guess which acts the plaintiff attributes to them.   This type of "guessing game" prohibits Defendants Cotton and Alexopulos from fully and adequately responding to and defending against the plaintiff's claim for conspiracy.   The pleading standards articulated in *Twombly* and *O'Connor* are designed to shield defendants from this type of tactical advantage.

Second, each of the plaintiff's causes of action for conspiracy under 42 U.S.C. § 1985(3) fail to state a claim because they are based on the actions of a single employer. *See Herrmann v. Moore*, 576 F.2d 453, 459 (2d. Cir. 1978) (stating a conspiracy "does not exist if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.") (internal quotation omitted).

Here, the plaintiff alleges that Defendants OSU-CHS and OSU Medical Center are the joint employer (single employer) of Defendants Cotton and Alexopulos.   Moreover, the acts the plaintiff alleges were in furtherance of the conspiracy -- to the extent the acts can be attributed to a specific defendant -- were in the scope and course of Defendants Cotton's and Alexopulos's employment.   As a result, the alleged acts of Defendants

Cotton and Alexopulos cannot form the basis of the plaintiff's conspiracy claim because the acts were allegedly committed by them as employees of a single employer.  *Id.*

The plaintiff's causes of action for conspiracy under 42 U.S.C. § 1985(3) should be dismissed.

## V.    THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANTS COTTON AND ALEXOPULOS IN THEIR "INDIVIDUAL" CAPACITY

The plaintiff's cause of action for IIED (Count Seventeen) is based on the alleged wrongful and unlawful conduct he was subjected to during his employment with Defendants OSU-CHS and OSU Medical Center.  ([Dkt. 6], ¶ 292).  Put simply, the plaintiff's IIED claim is based on his alleged mistreatment by his supervisors, Defendants Cotton and Alexopulos.  These allegations, without more, are inadequate to raise the plaintiff's asserted right to relief beyond the speculative level.

The tort of intentional infliction of emotional distress is governed by the narrow standards of the Restatement (Second) of Torts § 46.  *Breeden v. League Servs. Corp.*, 1978 OK 27, 575 P.2d 1374, 1376.  "To [state a claim] for intentional infliction of emotional distress, [the] plaintiff must [allege facts, that if true, establish]:   (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."  *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735.  "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  *Montgomery v. City of Ardmore*, 365 F.3d 926,

942 (10th Cir. 2004).  "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress."  *Welton*, 2002 OK at ¶ 7, 49 P.3d at 735.

Oklahoma courts have "consistently found employment related facts . . . do not meet the . . . criteria [for outrageous conduct]," as a matter of law.  *Miner v. Mid-America Door Co.*, 2003 OK CIV APP 32, ¶ 42, 68 P.3d 212, 223; *see also Eddy v. Brown*, 1986 OK 3, 715 P.2d 74 (no outrageous conduct where supervisor and foreman ridiculed plaintiff in the workplace); *Anderson v. Okla. Temporary Servs., Inc.*, 1996 OK CIV APP 90, 925 P.2d 574 (no outrageous conduct where plaintiff alleged six events over a two year period including a supervisor making lewd remarks about the plaintiff and embarrassing her in front of co-workers); *Mirzaie v. Smith Congeneration, Inc.*, 1998 OK CIV APP 123, 962 P.2d 678 (no outrageous conduct where evidence included employer calling the plaintiff in the middle of the night, berating the plaintiff for hours, mandating unnecessary work, and making derogatory sexual comments about the plaintiff's fiancée); *Smith v. Farmers Coop. Assoc. of Butler*, 1992 OK 11, 825 P.2d 1323 (the distress an employee suffered following termination was not sufficiently extreme or outrageous); *Zahorsky v. Cmty. Nat'l Bank of Alva*, 883 P.2d. 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct); *Gabler v. Holder & Smith, Inc.*, 2000 OK CIV APP 107, 11 P.3d 1269 (noting workplace harassment rarely rises to the level of extreme and outrageous conduct); *Fifer v. City of Tulsa*, 12-CV-0408-CVE-

FHM, 2012 WL 4758127, at *3 (N.D. Okla. Oct. 5, 2012) (granting the defendant's motion to dismiss and noting that **"[p]laintiff's allegations that defendant discriminated against him by treating him differently based on his disability, placing him on administrative leave without pay for the entirety of the year 2010, requiring him to make monthly visits to City Medical during the year 2010, and thereafter terminating his employment, <u>do</u> <u>not</u> constitute extreme and outrageous conduct"**) (emphasis added); *Janzen v. Watonga Hosp. Trust Auth.*, No. CIV-11-70-D, 2012 WL 3921524, at *6-7 (W.D. Okla. Sept. 7, 2012) (stating the plaintiff's allegations that she was terminated and discriminated against because of her disability were insufficient to demonstrate extreme and outrageous conduct); *Wheeler v. Spirit Aerosystems, Inc.*, No. 13-CV-0421-CVE-TLW, 2013 WL 5520012, at *6 (N.D. Okla. Oct. 1, 2013) (finding that allegations of harassment based on a disability and other protected classes, coupled with far more egregious conduct, were insufficient to establish a claim for IIED in the workplace setting); *Lacher v. Bd. of Cnty. Comm'r for Okla. Cnty.*, No. CIV-11-1038-M, 2013 WL 268983, at *7 (W.D. Okla. Jan. 24, 2013) (finding that allegations of unlawful conduct (disability discrimination) do not rise to the level of actionable conduct required for an IIED claim).

The bottom-line is that the facts alleged in the plaintiff's Amended Complaint, if true, do not meet the level of "outrageous conduct" necessary to state a claim for IIED. It appears from the plaintiff's Amended Complaint that the gist of his argument is that he was treated unfairly as a result of his sex and perceived disability. As demonstrated above, this is not the stuff of IIED.

Moreover, the plaintiff's allegations against Defendants Cotton and Alexopulos are devoid of any facts supporting his contention that he suffered extreme emotional distress.  The plaintiff baldly states that "[his] emotional distress was severe as a result of the conduct of Drs. Alexopulos and Cotton."  ([Dkt. 6], ¶ 294).  The plaintiff, however, fails to provide examples or symptoms of the emotional distress he allegedly suffered.  The plaintiff's conclusory statement, without more, does not raise the plaintiff's right to relief beyond the speculative level. Thus, plaintiff's IIED claim fails to meet the pleading requirements set forth in *Twombly*.

Defendants Cotton and Alexopulos respectfully request the Court dismiss the plaintiff's cause of action for IIED (Count Seventeen) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## VI.   THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR WRONGFUL DENIAL OF PERSONAL HEALTH INFORMATION/IMPROPER WITHHOLDING OF PERSONAL HEALTH INFORMATION AS TO DEFENDANTS COTTON AND ALEXOPULOS IN THEIR "INDIVIDUAL" CAPACITY

After a diligent search, the undersigned counsel for Defendants Cotton and Alexopulos were unable to find a single Oklahoma court (state or federal) recognizing a cause of action for wrongful denial or improper withholding of personal health information as a cognizable cause of action.  Defendant Cotton and Alexopulos welcome any direction the plaintiff may provide in illuminating the source of this cause of action.

In the absence of such direction, Defendants Cotton and Alexopulos would ask the Court to dismiss the plaintiff's cause of action for wrongful denial or improper

withholding of personal health information (Count Twenty-One) for failure to allege a cognizable cause of action.

## VII.   THE PLAINTIFF FAILS TO ESTABLISH A CLAIM FOR VIOLATION OF ARTICLE 2, SECTION 22 OF THE CONSTITUTION OF OKLAHOMA AS TO DEFENDANTS COTTON AND ALEXOPULOS IN THEIR "OFFICIAL" AND "INDIVIDUAL" CAPACITIES

The plaintiff's last cause of action, much like his others, is duplicative of his previously addressed cause of action for violation of 42 U.S.C. § 1983 based on alleged violations of the First Amendment.  *See Underwood v. Bd. of Cnty. Com'rs of Cnty. of Jefferson*, 611 F.Supp.2d 1223, 1232 (W.D. Okla. 2009) (recognizing that Article 2, Section 22 of the Oklahoma Constitution, like the First Amendment, "prohibits infringements upon the freedom of speech or expression").  Therefore, the last of the plaintiff's twenty-two causes of action should be dismissed to prevent a potential double recovery for the plaintiff.

In *Underwood*, like here, the plaintiff asserted a section 1983 claim based on alleged violations of his First Amendment rights and also asserted a claim for violation of Article 2, Section 22 of the Oklahoma Constitution.  *Id*.  The Court disposed of the state law claim, reasoning that if both claims were permitted to proceed, the defendant may be subjected to a double recovery.  *Id*. at 1233-4.

The same reasoning applies to this case.  To the extent the Court determines the plaintiff has sufficiently pled his section 1983 First Amendment claim, which he has not, the Court should dismiss his cause of action for violation of the Oklahoma Constitution.

The causes of action are duplicative and may result in a double recovery against Defendants Cotton and Alexopulos.  Such a result is patently unfair.[9]  *Id.*

Finally, the plaintiff's cause of action for violation of the Oklahoma Constitution is asserted against Defendants Cotton and Alexopulos in their "official" and "individual" capacities.  Defendants Cotton and Alexopulos cannot be sued in their "official" capacities in <u>federal</u> court for alleged violations of <u>state</u> law.  *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106, 121 (1984).  Therefore, notwithstanding the Court's dismissal of the plaintiff's cause of action as duplicative, the Court must dismiss the plaintiff's cause of action for violation of the Oklahoma Constitution as to Defendants Cotton and Alexopulos in their "official" capacities.

## <u>CONCLUSION</u>

For the reasons set forth in detail above, Defendants Cotton and Alexopulos respectfully requests an order dismissing Counts 2, 3, 7, 9, 10, 11, 15, 16, 17, 21 and 22 of the plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

---

[9] The same reasoning and analysis is equally applicable to the plaintiff's phantom cause of action for wrongful denial or improper withholding of personal health information (Count Twenty-One).  A comparison of that claim with the plaintiff's cause of action for violation of 42 U.S.C. § 1983 – Violation of Constitutionally Protected Right of Privacy (Count 12), which is not the subject of this Motion, reveals the causes of action are very similar.  To the extent the Court agrees, the plaintiff's state law cause of action should also be dismissed as duplicative.

Respectfully submitted,

s/Adam W. Childers
Adam W. Childers, OBA #18673
Allen Hutson, OBA #30118
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
adam.childers@crowedunlevy.com
allen.hutson@crowedunlevy.com

ATTORNEYS FOR DEFENDANTS LORA
COTTON, D.O., AND JENNY
ALEXOPULOS, D.O.

Stephen R. Stephens
Board of Regents for the Oklahoma A&M
Colleges
5th Floor, Student Union
Stillwater, OK  74078
(405) 744-6494
(405) 744-7998 (Facsimile)
steve.stephens@okstate.edu

ADDITIONAL ATTORNEY OF RECORD
FOR DEFENDANTS LORA COTTON,
D.O., AND JENNY ALEXOPULOS, D.O.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2016, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark E. Hammons
Amber L. Hurst
ATTORNEYS FOR PLAINTIFF

M. Daniel Weitman
Lauren J. Ray
ATTORNEYS FOR OKLAHOMA STATE
UNIVERSITY MEDICAL AUTHORITY

W. Kirk Turner
Rachel B. Crawford
Jacob S. Crawford
ATTORNEYS FOR COMMUNITY
CARE, JESSICA HEAVIN, STEVE
STEWART

James K. Secrest
Edward J. Main
ATTORNEYS FOR LESLIE BARNES, PHD

Stephen R. Stevens
ATTORNEY FOR BOARD OF
REGENTS FOR THE OKLAHOMA
AGRICULTURAL COLLEGES, EX
REL., OKLAHOMA STATE
UNIVERSITY CENTER FOR HEALTH
SCIENCES

Michael F. Lauderdale
Nathan L. Whatley
Philip R. Bruce
ATTORNEYS FOR OKLAHOMA STATE
UNIVERSITY MEDICAL CENTER,
DEBORAH NOTTINGHAM, SUNNY
BENJAMIN, MERCY HEALTH
OKLAHOMA COMMUNITIES, INC.,
MERCY HEALTH, OKLAHOMA STATE
UNIVERSITY MEDICAL TRUST AND
OSUMC PROFESSIONAL SERVICES, LLC

s/ Adam W. Childers
ADAM W. CHILDERS

29

3069774.2