## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JEFFREY SNYDER, D.O.,  )
an individual,  )
)
      Plaintiff,  )
)
v.  )    Case No.: CIV-16-384-F
)
BOARD OF REGENTS FOR THE  )
OKLAHOMA AGRICULTURAL &  )
MECHANICAL COLLEGES, *ex rel.*,  )
OKLAHOMA STATE UNIVERSITY  )
CENTER FOR HEALTH SCIENCES,  )
*et al.*,  )
)
      Defendants.  )

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS, OKLAHOMA STATE UNIVERSITY MEDICAL CENTER, HEALTH OKLAHOMA COMMUNITIES, INC., MERCY HEALTH, OKLAHOMA STATE UNIVERSITY MEDICAL TRUST AND OSUMC PROFESSIONAL SERVICES, LLC, MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. 94]

---

### RESPECTFULLY SUBMITTED THIS 9TH DAY OF JANUARY, 2016.

s/ Amber L. Hurst
Mark Hammons, OBA No. 3784
Amber L. Hurst, OBA No. 21231
Hammons, Gowens, Hurst & Associates
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile: (405) 236-6111
Email: amber@hammonslaw.com

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-vi

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS', OKLAHOMA
STATE UNIVERSITY MEDICAL CENTER, HEALTH OKLAHOMA
COMMUNITIES, INC., MERCY HEALTH, OKLAHOMA STATE UNIVERSITY
MEDICAL TRUST AND OSUMC PROFESSIONAL SERVICES, LLC, MOTION TO
DISMISS SECOND AMENDED COMPLAINT [DKT. 94] . . . . . . . . . . . . . . . . . . . 1

I.      THE ATTACHMENTS TO THE MOTION SHOULD BE
        DISREGARDED OR THE MOTION CONVERTED INTO
        ONE FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE INDISPENSABLE PARTY CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    JOINT EMPLOYER/SINGLE EMPLOYER
        TESTS ARE PLAUSIBLY PLED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.     PLAINTIFF'S ADA CLAIMS ARE PROPER . . . . . . . . . . . . . . . . . . . . . . 12

V.      THE ADA/REHABILITATION ACT IS PLAUSIBLY PLED . . . . . . . . . . . 16

VI.     THE RETALIATION CLAIM PLAUSIBLY PLED . . . . . . . . . . . . . . . . . . 19

VII.    THE BREACH OF CONTRACT CLAIM IS PLAUSIBLY PLED . . . . . . . 20

VIII.   THE CONSPIRACY CLAIM IS PLAUSIBLY PLED . . . . . . . . . . . . . . . . 22

IX.     THE DENIAL OF PERSONAL HEALTH INFORMATION
        CLAIM IS PLAUSIBLY STATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

X.      IF FURTHER AMENDMENT IS REQUIRED IT
        SHOULD BY ALLOWED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT

*Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (U.S. 2001) . . . . . . . . . . 13

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (U.S. 2002) . . . . . . . . . . . . . . . . . . . 11

*Tennessee v. Lane*,
    541 U.S. 509, 533 n.20, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) . . . . . . . 13, 14


## UNITED STATES COURTS OF APPEAL

*Archuleta v. Wagner*, 523 F.3d 1278 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blazer v. Black*, 196 F.2d 139, 144 (10th Cir. 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bristol v. Bd. of Cnty Comm'rs*, 312 F.3d 1213, 1218 (10th Cir 2002) . . . . . . . . . . . 10

*Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1316 n.11 (10th Cir. 1999) . . . . . 18

*Chavez v. Huerfano County*, 195 Fed. Appx. 728, 729-730 (10th Cir. 2006) . . . . . . . 11

*Citizen Band Potawatomi Indian Tribe v. Collier*,
    17 F.3d 1292, 1293 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cornforth v. Univ. of Okla. Bd. of Regents*,
    263 F.3d 1129, 1133 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Curley v. Perry*, 246 F.3d 1278 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Davis v. United States*, 343 F.3d 1282, 1293-94 (10th Cir. 2003) . . . . . . . . . . . . . . . . . 8

*EEOC v. Concentra Health Servs.*, 496 F.3d 773 (7th Cir. 2007) . . . . . . . . . . . . . . . . . 25

*Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*,
    693 F.3d 1303, 1310 (10th Cir. Okla. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*,
    883 F.2d 890, 894 n.4 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ezekwo v. New York City Health & Hospitals Corporation*,
940 F.2d 775, 785 (2nd Cir.), cert. denied, 502 U.S. 1013 (1991) . . . . . . . . . . . 12

*Garcia-Celestino v. Ruiz Harvesting, Inc.*, No. 16-10790,
2016 U.S. App. LEXIS 22302, at *18-19 (11th Cir. Dec. 15, 2016) . . . . . . . . . 20

*Garrison v. Baker Hughes Oilfield Operations, Inc.*,
287 F.3d 955, 960 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Griess v. Colorado*, 841 F.2d 1042, 1045-46 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 7

*Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 770 (10th Cir. 2001) . . . . . . . . . . . 23

*Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Knitter v. Corvias Military Living, LLC*,
758 F.3d 1214, 1226 (10th Cir. Kan. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988) . . . . . . . . . . . 12

*McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . 18

*McKinney v. Oklahoma*, 925 F.2d 363 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 25

*McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*N. Arapaho Tribe v. Harnsberger*,
697 F.3d 1272, 1278-79 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7

*Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010) . . . . . . . . . . . . . . 17

*Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*,
435 F.2d 850, 852 (10th Cir.1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.*,
94 F.3d 1407, 1413 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 n. 6 (10th Cir. 2001) . . . . . . . . . . . . . . . . 9

*Romero v. Union P. Railroad*, 615 F.2d 1303, 1311-1312 (10th Cir. Wyo. 1980) . . . . 19

*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 11

*Sac & Fox Nation*, 240 F.3d at 1260 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sanchez v. Vilsack*, 695 F.3d 1174, 1178 n. 2 (10th Cir. 2012) . . . . . . . . . . . . . . . . . 18

*Sandoval v. Boulder Reg'l Communs. Ctr.*, 388 F.3d 1312, 1322 (10th Cir., 2004) . . . 10

*Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir. Utah 1984) . . . . . . . . . . . . . . . . . . . 23

*Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1330 (10th Cir. 2002) . . . 10

*Tate v. Farmland Indus., Inc.*, 268 F.3d 989 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . 25

*Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1254 (10th Cir. 2005) . . 2

*Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . 18

*Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999) . . . . . . . . . . . . . . 12

## DISTRICT COURTS

*Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 205 (M.D. Pa. 2016) . . . . . . . . . . 12

*Bishop v. Oklahoma ex rel. Dep't of Human Servs.*,
  2013 U.S. Dist. LEXIS 167930 (W.D. Okla. Nov. 26, 2013) . . . . . . . . . . . . . . 25

*BPS v. Bd. of Trs. for Colo. Sch. for the Deaf & Blind*,
  2013 U.S. Dist. LEXIS 142141, *61-62 (D. Colo. 2013) . . . . . . . . . . . . . . . . . . 15

*Cassidy v. Millers Cas. Ins. Co.*, 1 F. Supp. 2d 1200, 1212 (D. Colo. 1998) . . . . . . . . . 2

*Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*,
  51 F. Supp. 3d 828, 843 (S.D. Ind. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cunningham v. Univ. of N.M. Bd. of Regents*,
  779 F. Supp. 2d 1273, 1279 (D.N.M. 2011)
  *aff'd* 531 Fed. Appx. 909 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co.*,
  158 F. Supp. 3d 1183, 1195 (D.N.M. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Henson v. AmeriGas Propane, Inc.*,
    No. CIV-15-163-RAW, 2016 U.S. Dist. LEXIS 73869, at *9
    (E.D. Okla. June 7, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hicks v. Podolak*, 2014 U.S. Dist. LEXIS 59977, *12-13 (D. Colo. Apr. 29, 2014) . . . 23

*Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1228-1229 (D.N.M. 2013) . . 22

*MAP v. Bd. of Trs.*, 2013 U.S. Dist. LEXIS 142321, 62-63 (D. Colo. 2013) . . . . . . . 15

*Massari v. Potter*, 2006 U.S. Dist. LEXIS 17228, *59 (D. Colo. Feb. 8, 2006) . . . . . . 20

*Miles v. Cushing Pub. Schs. Indep. Dist. No. 67*,
    No. CIV-06-1431-D, 2008 U.S. Dist. LEXIS 82202,
    at *6-7 n.5 (W.D. Okla. Oct. 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Newman v. Gagan LLC*, 939 F. Supp. 2d 883, 897 (N.D. Ind. 2013) . . . . . . . . . . . . . 16

*NLRB v. Resistflame Acquisition Co.*,
    2012 U.S. Dist. LEXIS 128809, *9 (S.D. Ohio Sept. 11, 2012) . . . . . . . . . . . . . 19

*Oltremari by McDaniel v. Kan. Soc. & Rehabilitative Serv.*,
    871 F. Supp. 1331, 1338 (D. Kan. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Quinn v. AMTRAK*,
    1997 U.S. Dist. LEXIS 20532, No. 97- C-3520,
    1997 WL 790738, at *5 (N.D. Ill. Dec. 18, 1997) . . . . . . . . . . . . . . . . . . . . . . . 19

*Schmidt v. Safeway, Inc.*, 864 F.Supp 991 (D. Ore. 1994) . . . . . . . . . . . . . . . . . . . . . . . 21

*Sims v. Unified Gov't of Wyandotte County/Kansas City*,
    120 F. Supp. 2d 938, 954-955 (D. Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wilderness Soc'y v. Kane Cnty.*, 470 F. Supp. 2d 1300, 1307 (D. Utah 2006) . . . . . . . . 4

*Women's Health Care Servs., P.A. v. Operation Rescue-National*,
    773 F. Supp. 258, 264 (D. Kan. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Wyandotte Nation v. City of Kan. City*,
    200 F. Supp. 2d 1279, 1293 (D. Kan. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Youssef v. Jam. Hosp. Med. Ctr.*,
    No. 04 CV 3389, 2006 U.S. Dist. LEXIS 80672,
    at *8 n.3 (E.D.N.Y. Nov. 5, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## OKLAHOMA CASES

*Russell v. Board of County Comm'rs*, 1997 OK 80, P23 (Okla. 1997) . . . . . . . . . . . . . 20

## FEDERAL STATUTES

29 U.S.C. § 791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

42 U.S.C. 12102(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

42 U.S.C. § 12102(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 12112(d)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. § 12132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## OTHER AUTHORITY

Fed. Rule Civ. Proc. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. Rule Civ. Proc. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. Rule Civ. Proc. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 19(a)(1)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 19(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JEFFREY SNYDER, D.O.,      )
an individual,      )
     )
        Plaintiff,      )
     )
v.      )    Case No.: CIV-16-384-F
     )
BOARD OF REGENTS FOR THE      )
OKLAHOMA AGRICULTURAL &      )
MECHANICAL COLLEGES, *ex rel.*,      )
OKLAHOMA STATE UNIVERSITY      )
CENTER FOR HEALTH SCIENCES,      )
*et al.*,      )
     )
        Defendants.      )

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS', OKLAHOMA STATE UNIVERSITY MEDICAL CENTER, HEALTH OKLAHOMA COMMUNITIES, INC., MERCY HEALTH, OKLAHOMA STATE UNIVERSITY MEDICAL TRUST AND OSUMC PROFESSIONAL SERVICES, LLC, MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT. 94]

**COMES NOW THE PLAINTIFF** and, in response to the Motion to Dismiss of Defendants, Oklahoma State University Medical Center, Health Oklahoma Communities, Inc., Mercy Health, Oklahoma State University Medical Trust and OSUMC Professional Services, LLC [Dkt. 94], hereby shows this Court as follows:

### I - THE ATTACHMENTS TO THE MOTION SHOULD BE DISREGARDED OR THE MOTION CONVERTED INTO ONE FOR SUMMARY JUDGMENT

This Court should disregard, Defendant's exhibits affixed to its Motion to Dismiss to the extent they are offered other than for the indispensable party argument:[1]

> It is well-established. . . that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *See, e.g., Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993) (in reviewing an order granting a motion to dismiss, court of appeals 'confines [its] review to the allegations of the complaint').

*Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

---

[1] To determine if Rule 19 requires joinder of additional parties, the court may consider evidence outside the pleading. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

Thus,

> Pursuant to Fed.R.Civ.P. 12(b), courts must either exclude evidence presented outside the pleadings or treat a motion to dismiss referencing extrinsic evidence as a motion for summary judgment pursuant to Fed.R.Civ.P. 56, which of course mandates notice and application of a different standard.

***Cassidy v. Millers Cas. Ins. Co.***, 1 F. Supp. 2d 1200, 1212 (D. Colo. 1998).

Notice of conversion is required if materials are to be considered:

> Generally, a district court must convert a motion to dismiss into a motion for summary judgment when matters outside the pleadings are relied upon. Fed. R. Civ. P. 12(b); ***Miller v. Glanz***, 948 F.2d 1562, 1565 (10th Cir. 1991). A motion to dismiss considers the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence (or lack thereof) upon which the allegations are based. ***Bell v. Fur Breeders Agric. Coop.***, 348 F.3d 1224, 1230 (10th Cir. 2003)...
>
> The district court declined to convert the motion to dismiss into one for summary judgment, so of course no notice issue is presented. ***Utah Gospel Mission***, 316 F. Supp. 2d at 1205 n.5, 1246 n.52. It declined a motion to strike other evidentiary material in support of the motion to dismiss after stating that it did not rely on such material. ***Id.*** at 1246. The court then stated that Plaintiffs could not have claimed surprise had it converted the motion to one for summary judgment without notice. ***Id.*** at 1246 n.52. This was because (1) Plaintiffs were allowed discovery in connection with their request for a preliminary injunction, and (2) Plaintiffs argued in a supplemental authority letter that the City's motivation to sell the easement was 'uniquely factual" and could not be dismissed under Rule 12(b)(6) or Rule 56. ***Id.*** The court then observed that consideration of extrinsic evidence 'bolsters the court's conclusion that Plaintiffs' claims must be dismissed because Plaintiffs have failed to demonstrate that a material disputed fact existed about any genuine issue.' ***Id.***
>
> We reject this *dicta*. It is true that constructive notice or a non-movant's reliance upon evidentiary materials in response to a motion to dismiss may obviate the need for formal notice by the court of conversion. ***Alexander v. Oklahoma***, 382 F.3d 1206, 1214 (10th Cir. 2004). But neither exception seems applicable here, and the non-movant should not have to guess about the court's intention. Not having provided such notice, it is at best premature for the district court to express such an opinion. We treat the district court's disposition as a ruling on a motion to dismiss.

**Utah Gospel Mission v. Salt Lake City Corp.**, 425 F.3d 1249, 1254 (10th Cir. 2005).

The Motion to Dismiss does not meet the requirements of a summary judgment motion in that, inter alia, there is no statement of undisputed facts. Plaintiff must guess at the factual interplay and should not be required to do this, especially at the motion to dismiss stage.

**WHEREFORE,** the evidentiary exhibits should be disregarded.

## II - THE INDISPENSABLE PARTY CLAIM

In the motion, Prop. II(C), p. 9-14, these Defendants move that the case be dismissed due to lack of an indispensable party, to wit: the State of Oklahoma via the "OSU Defendants", pg. 9, are indispensable and cannot be joined due to sovereign immunity. This motion arises under Fed.R.Civ. 19(b)(2).

> A finding of indispensability under Fed. R. Civ. P. 19(b) has three parts. *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001). First, the court must find that a prospective party is 'required to be joined' under Rule 19(a). Second, the court must determine that the required party cannot feasibly be joined. Then the court must determine, under Rule 19(b), whether the required-but-not-feasibly-joined party is so important to the action that the action cannot 'in equity and good conscience' proceed in that person's absence. Fed. R. Civ. P. 19(b). If that is the case, then the action 'should be dismissed.' *Id.*

*N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278-79 (10th Cir. 2012).

Although citing the correct case, Defendants do not properly apply the factors necessary to dismiss a case in this case. The factors which must be assessed are set out in Defendants' Motion, p. 11-12, but are discussed in only a conclusory way with no evidence that any of the factors will actually apply. "The proponent of a motion to dismiss under 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). "The proponent's burden can be satisfied by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.* (Quotation omitted).

Here, Defendant has attached some exhibits to its motion but it does not relate any exhibit to any of the arguments made. There simply is no evidentiary showing, in support of any of the factors relevant to showing, that the absent parties are indispensable.

While Plaintiff agrees that the OSU Defendants would be proper parties, however that

3

by no means suggests they are indispensable.  To be indispensable, the OSU Defendants must be "so situated that disposing of the action in [their] absence may . . . leave an existing part[ies] . . . subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii) (alterations by *N. Arapaho Tribe*, 697 F.3d, at 1279). Defendants do not explain (Mtn., p. 10) how a judgment against them would have any risk of "double, multiple, or otherwise inconsistent obligations".  Defendants state in a conclusory fashion that the "statutory and contractual obligations will necessarily impact how OSUMC Trust and the Mercy Defendants resolve Plaintiff's claims", Defs' Mtn., p. 10, but they do offer evidence as to how, in what manner or to what degree, there will be an impact.  Nor do Defendants' explain how a judgment leaves open the possibility of "double, multiple, or. . . inconsistent obligations".  As Defendants have presented this case, their position and interests are essentially the same as the State entities which, if true, eliminates any significant risk of conflicting decisions:

> *See, e.g., Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001)(finding potential for prejudice 'largely nonexistent' where interests of parties to litigation were 'substantially similar, if not identical' to those of absent party, and therefore rejecting absentee's case that it was necessary and indispensable party); *Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001)(rejecting contention that absentee was indispensable party where existing party's 'interest in defending his determinations [was] "virtually identical" to the interests of the [absentee]').

*Wilderness Soc'y v. Kane Cnty.*, 470 F. Supp. 2d 1300, 1307 (D. Utah 2006).

Accordingly, there is no true risk of prejudice or- at most- the risk is so remote and speculative that it cannot be a basis for dismissal.

> [I]n other cases we have declined to find a person to be an indispensable party where the possibility of inconsistent obligations was simply speculative. *See Sac & Fox Nation of Mo.*, 240 F.3d at 1259 ('As noted above, nothing in the record indicates the possibility of additional lawsuits involving this same subject matter. . . "The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.'" (citation omitted) (quoting 7 Wright, Miller & Kane, **Federal Practice & Procedure** § 1604, at 62 (2d ed. 1986))); *Air-Exec, Inc. v. Two Jacks, Inc.*, 584 F.2d 942, 945 (10th Cir. 1978) ('[W]e are to look at the practical probabilities more than the theoretical possibilities.

The practical probabilities here seem rather remote.' (citation omitted)). . . .
*N. Arapaho*, 697 F.3d, at 1280.

Defendants argue that a "judgment against Mercy could also have a compelling effect on OSUMC Trust and its statutory obligations," but offer no evidence that this is true and do not explain how, in what way or to what degree an absent party might feel compelled to act.

Defendants seem to hint that the immune entities might feel an obligation to either indemnify the non-immune Defendants or to comply with ADA requirements. This argument, if accepted, would essentially seek to extend the umbrella of Eleventh Amendment immunity to any private citizen acting in concert with the State because the State's risk of indemnifying the individual or changing its policies could be *indirectly* "compelled" by the judgment against the individual. This Court may take notice that individual capacity suits under Sec. 1983 are routinely allowed without any impediment arising from the State's separate immunity. These considerations were considered and rejected by the Tenth Circuit in the analogous setting of an FMLA claim. *See Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001):

> '[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally.' *Alden v. Maine*, 527 U.S. 706, 757 (1999). The Eleventh Amendment is not implicated in such suits because any award of damages will be satisfied from the individual's personal assets and will not be paid from the state treasury. If the sovereign is obligated to pay any damage award entered against the state official, however, the Eleventh Amendment bars the suit. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).
> *Barringer initially argued that the State of Oklahoma is obligated under state law to indemnify him for any FMLA violations* and, consequently, Cornforth's claims against him for damages are barred by the Eleventh Amendment because any damage award Cornforth obtains would be satisfied from the state treasury. In his reply brief, Barringer *concedes, as he must, that his position is unconditionally foreclosed by Circuit precedent. See Griess v. Colorado*, 841 F.2d 1042, 1045-46 (10th Cir. 1988). *Although state monies may ultimately be used to satisfy a judgment obtained against a state official sued in his individual capacity, a state cannot extend its sovereign immunity to its employees by voluntarily assuming an obligation to indemnify them. See id. Barringer next contends that an award of damages to Cornforth would effectively compel the University to comply with FMLA. Thus, he argues, the*

University is the real party in interest and the Eleventh Amendment bars federal courts from hearing Cornforth's FMLA claims against him for damages. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) ('suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."). Presumably, Barringer believes that an award of damages against him will prompt the University to comply with FMLA either to protect its employees from personal liability or to avoid any obligation it may have to indemnify its employees.

Barringer's argument, however, is based purely on conjecture and he has failed to demonstrate or even argue that a judgment against him individually for damages would legally require the University to comply with FMLA. The University may choose to comply with FMLA for any number of reasons, and *Barringer has not demonstrated that a decision by the University to comply with FMLA in the wake of a damage award against him is any less a voluntary act than a state's choice to indemnify its employees. The compliance and any attendant costs would, in no way, be forced upon the University by the outcome of the federal suit, but would constitute a purely voluntary choice on the part of the University.* Thus, Barringer's argument that the University is the real party in interest is essentially no different than the argument rejected by this court in *Griess*.

As with ***Cornforth***, these Defendants have failed to show that any acts of payment or compliance by the OSU Defendants would be other than voluntary.

There is nothing in the record to suggest that the OSU Defendants would chose to submit themselves to the jurisdiction of the Court to litigate these issues. Nor is there any claim that the OSU Defendants compelled the actions in question. Indeed, if it were claimed that the OSU Defendants had compelled the actions, Eleventh Amendment immunity would be waived:

> ***Under Ex parte Young***, 209 U.S. at 159-60, an exception to state sovereign immunity exists 'for suits against state officials seeking to enjoin alleged ongoing violations of federal law.' ***Crowe & Dunlevy, P.C. v. Stidham***, 640 F.3d 1140, 1154 (10th Cir. 2011).

*N. Arapaho*, 697 F.3d, at 1281.

For that exception to apply, the Defendants would have to argue that the state officials were the ones who actually directed a violation of the law, *id.*, 697 F.3d, at 1282. If that were the case, Defendants could compel joinder of the State under Rule 19 which is the remedy rather than dismissal. Even if this hurdle could be overcome and the OSU Defendants be

viewed as indispensable, the other elements for dismissal are not present.

The first factor is whether the judgment would prejudice the absent party. (See Defs' Mtn., p. 11). This is very similar to the indispensable party inquiry and focuses on "whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit." *N. Arapaho*, 697 F.3d, at 1282 (Quoting *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989)). As explained in *Cornforth*, there is no such risk as any compliance with a judgment would be, as a matter of law, purely voluntary. *Cornforth*, 263 F.3d, at 1133 and *Griess v. Colorado*, 841 F.2d 1042, 1045-46 (10th Cir. 1988).

As to the second element (mitigation of prejudice), Defendants argue that "how Mercy Defendants respond to any judgment will likely require the involvement of- and prejudice to- OSUMC Trust and other [unnamed] immune defendants." Defs' Mtn., p. 12. The problem is that the only prejudice cited is an unspecified "involvement" with no description of what that "involvement" may be or the extent of the involvement. Defendants have simply not met their burden of describing the harm in a way that would enable this Court or Plaintiff to consider the extent to which it can be mitigated.

The third factor is whether the judgment would be adequate in the absence of the party. *N. Arapaho*, at 1283. Defendants argue, without evidentiary support, that a judgment "would not be complete or efficient [without] the cooperation and participation of several immune entities." Defs' Mtn., p. 12. Of course, a monetary remedy requires no involvement of any immune entity as explained above. Defendants offer no factual basis to assert that it cannot reinstate Plaintiff's residency. Moreover, Defendants' assertions of patient health interest cannot be weighed against the Plaintiff when that goes to the merits of the claim and would involve assessing whether Plaintiff's conduct impacted patient safety.

As to the final factor, the existence of an alternative remedy, Mt, p. 12, Defendants acknowledge that this weighs against dismissal and essentially argue that there is no other

7

forum for resolution of Plaintiff's claims. ***Wyandotte Nation v. City of Kan. City***, 200 F. Supp. 2d 1279, 1293 (D. Kan. 2002). The Tenth Circuit has found the lack of an alternative forum to be an important factor in determining whether to dismiss an action pursuant to Rule 19(b). ***E.g., Sac & Fox Nation***, 240 F.3d at 1260 (10th Cir. 2001) (noting that a court should be 'extra cautious' before dismissing an action under Rule 19(b) when no alternative forum exists); ***Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.***, 94 F.3d 1407, 1413 (10th Cir. 1996) ('The availability of an alternative forum would weigh heavily, if not conclusively against dismissal . . . .').

Admittedly, however, "the plaintiff's inability to obtain relief in an alternative forum is not as weighty a factor when the source of that inability is a public policy that immunizes the absent person from suit." ***Davis v. United States***, 343 F.3d 1282, 1293-94 (10th Cir. 2003). Nonetheless, this factor, like every other factor set out above, demonstrates that dismissal is not required.

**WHEREFORE,** Defendants' Motion to Dismiss with prejudice[2] on the grounds of lack of an indispensable party must be rejected.

## III - JOINT EMPLOYER/SINGLE EMPLOYER TESTS ARE PLAUSIBLY PLED

In its Prop.II(B), p. 3, Defendants argue that "Plaintiff fails to plead sufficient facts to state a plausible claim that these seven entities are his joint employers. And because he does not specifically state which of these seven defendants did what, his other claims must fail."

The first problem with this argument is the factually false assertion that Plaintiff "does not specifically state which of these seven defendants did what." This is simply not true, as Plaintiff has set out individual acts as to each party at para. 6(A) through (L) of the Second

---

[2] However even if dismissal was appropriate under Rule 19, it would a dismissal without prejudice. ***Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co.***, 158 F. Supp. 3d 1183, 1195 (D.N.M. 2015).

Amended Complaint [Dkt. 82]. As to Defendants, OSU Medical Trust and OSU Medical Center, there is not an issue of being a joint employer or integrated enterprise, as these entities represented themselves as Plaintiffs' *employer* on his employment contract, pay stubs and to the IRS on Plaintiff's W-2 forms. Dkt. 82, ¶ 6(A)-(D). Accordingly, OSU Medical Center and OSU Medical Trust are Plaintiff's employers even without having to maintain joint employer or integrated enterprise status.

Defendants offer no authority that even if the joint/single employer theories were to fail, that would somehow exonerate each Defendant, OSU Medical Center and OSU Medical Trust, for their their own wrongful acts. Similarly, Defendants offer no authority to suggest that if some, but not all, of the Defendants were not joint/single employer, that would immunize any of the others. A "court need not consider. . . arguments [when a party] fails to support them with any authority," ***Rodriguez v. IBP, Inc.***, 243 F.3d 1221, 1230 n. 6 (10th Cir. 2001), because such failure "suggests either that there is no authority to sustain its position or that it expects the court to do its own research." ***Rapid Transit Lines, Inc. v. Wichita Developers, Inc.,*** 435 F.2d 850, 852 (10th Cir.1970).

Because Rule 8 specifically authorizes alternative and inconsistent pleadings, the Plaintiff need not elect at this stage whether a set of employers constitutes a "single employer" or a "joint employer" as such a determination is highly factual and depends on discovery. ***See Blazer v. Black***, 196 F.2d 139, 144 (10th Cir. 1952)(explaining that a party is "at liberty to state as many separate claims as he wishe[s], regardless of consistency, whether based upon legal or equitable grounds or both"). At this stage, it is enough not to show facts making either or both theories plausible. Going to the sufficiency of the pleading:

> Courts have elaborated two other tests that are more applicable to the present context: the joint-employer test and the single-employer test. First, a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment. Second, a plaintiff who is the employee of one entity may seek to hold another entity

liable by arguing that the two entities effectively constitute a single employer. Although these two tests are sometimes confused, they differ in that the single-employer test asks whether two nominally separate entities should in fact be treated as an integrated enterprise, while the joint-employer test assumes that the alleged employers are separate entities.

***Bristol v. Bd. of Cnty Comm'rs***, 312 F.3d 1213, 1218 (10th Cir 2002) (internal citations omitted).  This was refined in ***Sandoval v. Boulder Reg'l Communs. Ctr.***, 388 F.3d 1312, 1324 (10th Cir 2004):

> While the single employer test looks at the overall relationships of the two entities, joint employer status is determined by focusing on the entities' relationships to a given employee or class of employees. The joint employment relationship, in other words, is employee-specific. ***See Sizova v. Nat'l Inst. of Standards & Tech.***, 282 F.3d 1320, 1330 (10th Cir. 2002) ('When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. . . . Thus two entities may both be a worker's employer if they share or co-determine those matters governing the essential terms and conditions of employment.' (internal quotation marks omitted)).

The essential elements for a single employer are:

> Courts applying the single-employer test generally weigh four factors: '(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.'

***Bristol***, 312 F.3d at 1220 (quotation omitted).  ***Accord Knitter v. Corvias Military Living, LLC***, 758 F.3d 1214, 1226-1227 (10th Cir. 2014).  "[T]he ability to terminate an employee is the most important factor indicating an employer is a joint employer[.]" ***Knitter***, 758 F.3d, at 1229.  As to joint employer liability, the

> When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. . . . Thus two entities may both be a worker's employer if they share or co-determine those matters governing the essential terms and conditions of employment.

***Sizova v. Nat'l Inst. of Standards & Tech.***, 282 F.3d 1320, 1330 (10th Cir. 2002) (Quoted in ***Sandoval, supra***, 388 F.3d, at 1324).  Plaintiff has alleged more than sufficient facts that, when taken as true, place Defendants on notice of the basis for this claim:  Plaintiff has alleged "Mercy Health and Mercy Health Oklahoma Communities, Inc. d/b/a Mercy Health

System . . . maintained a written 'public-private partnership' agreement with OSU Medical Center, OSU Medical Trust . . . to manage and operate OSU Medical Center including management of physicians and residents" (*Id.*, ¶6(G)), that "OSUMC Professional Services, LLC . . . employs physicians, including the Plaintiff" (*Id.*, ¶6(I)), that "Sunny Benjamin . . . HR Manager with respect to suspending and terminating Plaintiff's employment, is identified . . . as 'Chief Human Resources Officer' of 'OSU Medical Center – Managed by Mercy'" (*Id.*, ¶6(J)), that these entities "operate from the same principal office and utilize and/or share the same staff" (*Id.* ¶6(K)), and that Defendant Alexopulos is the Director of Medical Education at OSU Medical Center and supervises the Plaintiff (*Id.*, ¶6(L)). Plaintiff alleged these defendants "were responsible for carrying out the educational responsibilities related to Plaintiff's education and training as a student-resident" (*Id.*, ¶8).

In the context of a single employer analysis, the same facts identified above support the integrated enterprise claim – interrelations of operation; common management; centralized control of labor relations; and common ownership and financial control. *Id.*, ¶6-8. Accordingly, Plaintiff's complaint is not a "naked assertion" of joint employer or integrated enterprise liability, but rather provides the ***factual basis*** for such claims.

It must be remembered that "[a] Rule 8 pleading is not the proper place for the plaintiff to plead all of the evidence or to fully argue the claims." ***Chavez v. Huerfano County***, 195 Fed. Appx. 728, 729-730 (10th Cir. 2006) (***Swierkiewicz v. Sorema N.A.***, 534 U.S. 506, 512-513 (2002)). "The complaint must [only] plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." ***Archuleta v. Wagner***, 523 F.3d 1278, 1283 (10th Cir. 2008). "The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." ***Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) (Quoted in ***Archuleta, supra,*** 523 F.3d, at 1283).

**WHEREFORE,** Defendants' Motion to Dismiss must be overruled.

## IV - PLAINTIFF'S ADA CLAIMS ARE PROPER

In its Motion, at Prop.II(D)(1), p. 13-14, Defendants argue that Plaintiff has only asserted claims against the Defendants as employers and that under Title II of the ADA, employment claims cannot be maintained. This motion rests on the false premise that Plaintiff has not set out claims for accommodation in the educational part of his relationship.

"While a medical residency program is largely an academic undertaking, it also is an employment relationship." *Ezekwo v. New York City Health & Hospitals Corporation*, 940 F.2d 775, 785 (2nd Cir.), cert. denied, 502 U.S. 1013 (1991). *Accord Lipsett v. University of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988) (Title VII applied because the plaintiff, a medical student, was an employee as well as a student of the residency program); *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 51 F. Supp. 3d 828, 843 (S.D. Ind. 2014) ("[A]s St. Vincent concedes, a medical resident is both an employee and a student."), and *Youssef v. Jam. Hosp. Med. Ctr.*, No. 04 CV 3389, 2006 U.S. Dist. LEXIS 80672, at *8 n.3 (E.D.N.Y. Nov. 5, 2006) ("Medical residents are both employees and students training for employment as doctors.").

A public school is a public entity subject to the ADA under Titles I through III.

The term 'public entity' includes 'any State or local government' and 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.' 42 U. S. C. § 12131(1). Defendants do not dispute that a public school system is a public entity covered by Title II.

*Miles v. Cushing Pub. Schs. Indep. Dist. No. 67*, No. CIV-06-1431-D, 2008 U.S. Dist. LEXIS 82202, at *6-7 n.5 (W.D. Okla. Oct. 16, 2008). *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999) (school of medicine public entity under ADA Title II); *Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 205 (M.D. Pa. 2016) ("The School District is a 'public entity'" within the meaning of 42 U.S.C. § 12132."), inter alia.

Although the Complaint can be more clear, Plaintiff is alleging ADA discrimination (Title I) in employment against the Mercy/private employers, but ADA Title II discrimination

(as a student-resident) against the State entities.

The "Mercy Defendants do not now claim immunity." Defs' Mtn., Prop. II(D)(ii), fn4, p. 14. Thus, this argument has no application to these Defendants. As to the public Defendants, neither the Tenth Circuit nor the U.S. Supreme Court have found sovereign immunity applicable to ADA Title II claims against students of public entities.[3] *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (U.S. 2001):

> We are not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question.

*Garrett*, 531 U.S. at 360.

Prior to *Garrett*, the Supreme Court in *Tennessee v. Lane*, 541 U.S. 509, 533 n.20, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004), emphasized Congress' right to enact prophylactic legislation to remedy unconstitutional discrimination:

> Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment. [*Fitzpatrick v. Bitzer*, 427 U.S.] at 456, 49 L. Ed. 2d 614, 96 S. Ct. 2666. This enforcement power, as we have often acknowledged, is a "broad power indeed." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 732, 73 L. Ed. 2d 1090, 102 S. Ct. 3331 (1982), citing *Ex parte Virginia*, 100 U.S. 339, 346, 25 L. Ed. 676 (1880). It includes "the authority both to remedy and to deter violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel*, 528 U.S., at 81, 145 L. Ed. 2d 522, 120 S. Ct. 631.

Although *Lane* involved Title II of the ADA as applied to access to courts, later cases, including those within this Circuit, have applied the same logic to higher education. *See Cunningham v. Univ. of N.M. Bd. of Regents*, 779 F. Supp. 2d 1273, 1279 (D.N.M. 2011)

---

[3] Plaintiff does not dispute that sovereign immunity bars the ADA Title I claim against state entities and Plaintiff does not assert a Title I claim against the public entities. Because the private Mercy Defendant does not now assert a sovereign immunity argument (see Defs' Mtn., fn4), Plaintiff need not address the matter in his response brief.

*aff'd* 531 Fed. Appx. 909 (10th Cir. 2013):

> [T]he First, Third, Fourth, and Eleventh Circuits interpreted *Lane* to apply to cases involving disability discrimination in a variety of contexts and did extend Title II abrogation to suits concerning disability discrimination in higher education. *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Bowers v. National Collegiate Athletic Ass'n*, 475 F.3d 524, 550-53 (3rd Cir. 2007); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 490 (4th Cir. 2005); *Assoc. for Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005); *see also* Diane Heckman, 'The Impact of the Eleventh Amendment on the Civil Rights of Disabled Educational Employees, Students and Student-Athletes,' 227 Ed. L. Rep. 19, 39 (Feb. 7, 2008) ('the majority position is that public universities may be sued'). The Court will follow the precedent of those Circuits.

In *Cunningham*, the court noted that *Lane* does not limit Title II abrogation to cases in involving fundamental rights. *Cunningham*, 779 F. Supp. 2d at 1279 ("While it is true that *Lane* concerned the fundamental right of access to courts, nowhere in that opinion does the Supreme Court state that Title II abrogation should be limited to cases involving fundamental rights."). In determining whether the Defendant abrogated Eleventh Amendment immunity as to the Plaintiff's ADA Title II claim, the *Cunningham* court compared the similar remedial schemes of the Rehabilitation Act and the ADA, and relied Congress' use of the prophylactic power to correct the long history of unconstitutional discrimination against disabled persons:

> [T]he [*Lane*] Court observed that Congress' use of "prophylactic power" was appropriate "given the sheer volume of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services." *Id.* at 528. "Considering the pattern of unconstitutional disability discrimination described by the Court in Lane, [this Court] cannot say that Title II is 'so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.'" *Constantine*, 411 F.3d at 490 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 518, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997)). Indeed, Title II requires only "reasonable modifications that would not fundamentally alter the nature of the service provided," and so it is self-limiting. *Assoc. for Disabled Americans*, 405 F.3d at 959 (quoting *Lane*, 541 U.S. at 531). With such intrinsic limits in place, Title II is a proportional response to disability discrimination the Supreme Court has found to be extensive in the area of public services. *Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820; *see also Assoc. for Disabled Americans*, 405 F.3d at 959. Moreover, the parties do not dispute that Congress properly abrogated state immunity through the Rehabilitation Act of 1973, which is substantially

14

similar to the ADA. Through comparison, it would seem that if one of the statutes properly abrogated state immunity, then the other would as well. The Court has sufficient legal basis to find that Title II of the ADA is a valid abrogation of states' Eleventh Amendment immunity. *See Toledo*, 454 F.3d at 40; *Bowers*, 475 F.3d at 550-53; *Constantine*, 411 F.3d at 490; *Assoc. for Disabled Americans*, 405 F.3d at 959. Thus, the Court has subject matter jurisdiction over Plaintiff's ADA and Rehabilitation Act claims against UNM Defendants. *Cunningham v. Univ. of N.M. Bd. of Regents*, 779 F. Supp. 2d 1273, 1279-1280 (D.N.M. 2011).

*Cunningham*, 779 F. Supp. 2d at 1279-80.

Other courts in this circuit have reached the same conclusion. *See BPS v. Bd. of Trs. for Colo. Sch. for the Deaf & Blind*, 2013 U.S. Dist. LEXIS 142141, *61-62 (D. Colo. 2013):

> The Court's analysis suggests a persistent pattern of exclusion and irrational treatment of disabled students in public education and a congruent and proportional prophylactic response to this pattern of exclusion and irrational treatment. Accordingly, the Court concludes that, as it applies to discrimination against students at public educational institutions, Title II of the ADA is valid Section 5 legislation. Because Congress clearly expressed its intention to abrogate the States' Eleventh Amendment Immunity, and did so pursuant to a valid exercise of constitutional authority, the Eleventh Amendment poses no bar to Plaintiffs' ADA or RA claims.

*See also MAP v. Bd. of Trs.*, 2013 U.S. Dist. LEXIS 142321, 62-63 (D. Colo. 2013) (same). Although not reaching this issue, the Tenth Circuit agreed with its logic in *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012):

> We pause to note one exception to [the trend of finding no waiver of sovereign immunity]: discrimination against students in public education. Several circuit courts have found Title II validly abrogates state sovereign immunity in this context, even though education does not involve a fundamental right. *See, e.g., Toledo [v. Sanchez]*, 454 F.3d [24] at 39-40; *Constantine [v. Rectors & Visitors of George Mason Univ.]*, 411 F.3d [474] at 490; *Assoc. for Disabled Ams., Inc. [v. Florida Int'l Univ.]*, 405 F.3d [954] at 959. In reaching this conclusion, these courts have been persuaded by (1) the persistent pattern of exclusion and irrational treatment of disabled students in public education, (2) the gravity of the harm worked by such discrimination, and (3) the limited nature of the compliance costs imposed on states. *See Toledo*, 454 F.3d at 39-40. While the Supreme Court has yet to test the logic of these cases, the cases suggest the exceptionally well-documented history of irrational discrimination in schools is sufficient to compensate for the right's limited value in the constitutional scheme. *See id.* at 36-39. Discrimination against students in public education is an exception that proves the rule.

Citing ***Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.***, 693 F.3d 1303,

1310 (10th Cir. Okla. 2012), Defendants argue that the "Tenth Circuit has strongly stated (but

not held) that immunity also likely applies to employment-based claims under Title II"").

Defs' Mtn, pg. 16 (at top).  But Defendants misunderstand the court's position.  In ***Elwell***,

the Court held that Title II does not provide a claim for discrimination against an employee

(as opposed to student).  ***Id***. at 1310-11.  Plaintiff does not disagree.

Defendants cite to several cases holding that immunity applies to retaliation claims

under Title V (Defs' Mtn., p. 16).  However, none of these case address retaliation against

*students* bringing Title II ADA claims.

**WHEREFORE,** Defendants' arguments at Prop. II(D)(1) must be rejected.

## V - THE ADA/REHABILITATION ACT IS PLAUSIBLY STATED

In the Motion to Dismiss, Prop. II(D)(2), p. 16-20, Defendants argue Plaintiff has

failed to state a claim under the ADA or Rehabilitation Act. p. 16-20.  Defendants do not

challenge the sufficiency of the pleadings[4] but rather the legal theory.

Defendants start out by arguing that it did not view Plaintiff as impaired by "requiring

an EAP test or other counseling".  Defs' Mtn., p.17-19.  *Defendants cite exclusively to the*

*pre-Amendments version of the ADA.* ***Id.***  The ADA Amendments Act of 2008 dramatically

changed the definition of disability including, specifically, the definition of "regarded as"

such that these pre-Amendments cases are not even of persuasive value.  ***Newman v. Gagan***

***LLC***, 939 F. Supp. 2d 883, 897 (N.D. Ind. 2013), ***inter alia***.

Under the ADAAA,

> [T]he scope of a 'regarded as' claim is modified by 42 U.S.C. §12102(3)(A)
> in that a claim may be stated 'whether or not the impairment limits or is
> perceived to limit a major life activity.'
> Thus, '[u]nlike an impairment as defined in subsections (A) or (B), an
> impairment under §12102(1)(C) need not limit or even be perceived as limiting

---

[4] In referencing Exhibits 2 and 3, Defendants impermissibly rely on extrinsic
evidence which cannot be considered. See Prop. I, above.

a major life activity — the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity. Under the ADAAA, the only qualification for an impairment in a "regarded as" claim is that the impairment not be "transitory and minor."' *Adair*, 2016 U.S. App. LEXIS 9636 [WL] at *6. A transitory impairment is an impairment with an actual or expected duration of 6 months or less. *Id.* (citing 42 U.S.C. §12102(3)(B)).

*Henson v. AmeriGas Propane, Inc.*, No. CIV-15-163-RAW, 2016 U.S. Dist. LEXIS 73869, at *9-10 (E.D. Okla. June 7, 2016).

Thus, unlike the law in Defendants' citations, a Plaintiff now need only be regarded as having an 'impairment' to be regarded as disabled.   Plaintiff has found no post-Amendment cases, but even cases arising before the Amendments indicated that requiring testing was evidence supporting a "regarded as" determination under the prior, higher standard. *Cf. Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010) ("Union Pacific mistakenly regarded Norman as mentally ill. She sought medical treatment exclusively for physical ailments, underwent a psychiatric evaluation only because Union Pacific demanded it[.]")

However, Defendants miss the main issue.   The ADA limits the kinds of medical evaluations which an employer can require. 42 U.S.C. § 12112(d)(4)(A) (emphasis added):

> (A) Prohibited examinations and inquiries. A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, **unless such examination or inquiry is shown to be job-related <u>and</u> consistent with business necessity.**

In *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 960 (10th Cir. 2002) the Tenth Circuit found that a violation of this provision would give rise to an action for damages.   *Garrison* adopted the EEOC interpretation as follows:

> The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform the essential functions of a job, either with or without an accommodation, because of fear or speculation that a disability may indicate a greater risk of future injury, or absenteeism, or may cause future workers' compensation or insurance costs.

17

Quoting Equal Employment Opportunity Commission, Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act § 6.4 (1992).

Although not required, Plaintiff has pled a prima facie case of wrongful discharge from the residency program. "To make out a prima facie case for discrimination in violation of the Rehabilitation Act, [plaintiff] must establish: '(1) that [he] is disabled under the Act; (2) that he would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance (or is a federal agency . . .); and (4) that the program has discriminated against the plaintiff.'" *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010)(quoting *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004)).

Plaintiff alleges, at paras. ¶¶ 25-26 that he was disabled as defined by the ADA[5] to include being perceived as having an impairment[6], and at ¶¶ 25-26 that Dr. Cotton made comments indicating she perceived Plaintiff as being disabled.

Plaintiff pled at para. 23 "qualified to perform as a resident and performed satisfactorily during all times." This is sufficient. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n.11 (10th Cir. 1999) (Plaintiff's assertion of being qualified enough).

Plaintiff properly alleged receipt of federal financial assistance at para. 5 of the Second Amended Complaint. *Id.*, ¶5. *See Sims v. Unified Gov't of Wyandotte County/Kansas City,* 120 F. Supp. 2d 938, 954-955 (D. Kan. 2000)("[W]here complaint simply alleged that defendant was 'a recipient of federal financial assistance,' allegations

---

[5] The Rehabilitation Act applies the same definition of "disability" as the ADA. 29 U.S.C. § 791; *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 n. 2 (10th Cir. 2012)("Regardless of whether suit is filed under the Rehabilitation Act or under the ADA, the substantive standards for determining whether an individual is disabled are the same.").

[6] The ADA defines "disability" to include being perceived as having a disability. 42 U.S.C. 12102(1)(C): "As used in this Act: (1) Disability. The term "disability" means, with respect to an individual . . . (C) being regarded as having such an impairment".

were sufficient to state a claim under Title VI.")(quoting *Quinn v. AMTRAK.*, 1997 U.S. Dist. LEXIS 20532, No. 97- C-3520, 1997 WL 790738, at *5 (N.D. Ill. Dec. 18, 1997)).[7]

Finally, Plaintiff alleged he was discriminated against at paras. 66 (suspended), 67 (terminated), and 77 (motivating factors include perception of Plaintiff being disabled). he third prong of the prima facie case is that OSUMA discriminated against the Plaintiff. *See* 42 U.S.C. § 12102(3)(A)("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

Of course, knowledge is imputed to these Defendants by virtue (as pled) of the employment relation as an integrated enterprise employer. *See Romero v. Union P. Railroad*, 615 F.2d 1303, 1311-1312 (10th Cir. Wyo. 1980)(Notice of entity of EEOC charges imputes notice to integrated enterprise); *NLRB v. Resistflame Acquisition Co.*, 2012 U.S. Dist. LEXIS 128809, *9 (S.D. Ohio Sept. 11, 2012)("[S]hould the Court determine that Whitestone and Resistflame constitute a single employer for liability purposes, there is no due process violation as Resistflame's knowledge and participation in the initial NLRB proceedings is, essentially, imputed to Whitestone.").

**WHEREFORE**, the ADA and Rehabilitation Act claims are sufficient.

## VI - THE RETALIATION CLAIM IS PLAUSIBLY STATED

In the Motion to Dismiss, Prop. II(D)(3), p. 20-21, Defendants rest its motion on a set of facts which ignores the critical retaliatory action set out and pled: Plaintiff alleged

---

[7] Notably, Defendant is not arguing that it does not receive federal financial assistance and such an argument could not be accepted without allowing for limited discovery in the matter. *See Sims v. Unified Gov't of Wyandotte County/Kansas City*, 120 F. Supp. 2d 938, 955 (D. Kan. 2000)(collecting cases allowing for discovery into whether entity receives federal financial assistance).

protected activity in the form of his complaints of gender and disability discrimination around July 22, 2014 (Dkt. 82, ¶53), and September 5, 2014 (*Id*, ¶59), as well as his protected opposition to discrimination exercised in his refusal to withdraw his complaints of discrimination (*Id.*, ¶61-62). Plaintiff alleged that around February 2, 2015, he was placed on inactive status with his wages and health insurance benefits terminated. *Id.*, ¶65. Thus, Plaintiff has alleged that within a three-month period he refused to withdraw his complaint of discrimination and was effectively terminated. *See Massari v. Potter*, 2006 U.S. Dist. LEXIS 17228, *59 (D. Colo. Feb. 8, 2006)("[A] period of time shorter than three months separates the opposition and the adverse employment action. Thus, proximity in time supports Plaintiff's claim, and Plaintiff has satisfied his burden to establish a prima facie case.").

     **WHEREFORE,** Defendants' Prop. II(D)(3) arguments must be overruled.

## VII - THE BREACH OF CONTRACT CLAIM IS PLAUSIBLY STATED

     Defendants challenge the beach of contract claim at Prop. II(D)(4), p. 22 of the Motion to Dismiss. Defendant OSU Medical Center concedes it is a proper party to claims for breach of contract (both express and implied).[8] Plaintiff agrees that Defendants Mercy Oklahoma Communities, Inc, Mercy Health, OSU Medical Trust and OSUMC Professional Services, LLC are not parties to the express or implied contracts and Plaintiff withdraws the breach of contract claims as to these Defendants.[9]

---

[8] Oklahoma recognizes handbooks can give rise to implied contracts under certain conditions, which Defendants do not challenge here. *Russell v. Board of County Comm'rs*, 1997 OK 80, P23 (Okla. 1997).

[9] Although Plaintiff has found some legal authority supporting application of the joint employer and/or integrated enterprise doctrines to breach of contract claims, he agrees to focus his breach of contract claims on the party named in the contract: OSU Medical Center. *See, e.g., Garcia-Celestino v. Ruiz Harvesting, Inc.*, No. 16-10790, 2016 U.S. App. LEXIS 22302, at *18-19 (11th Cir. Dec. 15, 2016)("To be liable for breach of these H-2A contracts, Consolidated Citrus must qualify as an employer, or at

Defendants do not cite a single case showing Plaintiff's pleadings of breach of contract would be dismissed based on the face of Plaintiff's complaint.  Nor do Defendants cite authority requiring Plaintiff to plead all elements (or even any elements) of a breach of contract claim.

Of course, Plaintiff alleged the existence of a contract that created an employment relationship with an annual stipend and other benefits (Dkt. 82, ¶17), that the contract prohibited "termination . . . without cause unless Plaintiff is given at least sixty days prior written notice" (*Id.*, ¶18) and that "termination without cause can only be carried out under certain circumstances **which did not apply in this case**" (*Id.*) (bold supplied).  Plaintiff alleged that the contract "prohibited discriminating against the Plaintiff" (*Id.*, ¶113) and that Defendants breached the contract by terminating Plaintiff from the residency program without good cause (as defined in the contract) and by from discriminating and retaliating against the Plaintiff.  *Id.*, ¶¶ 66-67, 71, 109, 113.  Finally, Plaintiff alleges damages as a result of the breach.  *Id.* ¶¶ 70, 114.

Similarly, Plaintiff pled the following facts supporting the breach of implied contract claim: Existence of an implied contract in the handbook (Dkt. 82, ¶21), procedural limitations on placing Plaintiff on probation or terminating his employment, including Plaintiff's right to an appeal and investigation (*Id.*, ¶21(A)-(C)), Plaintiff's exercise of his contractual rights asking for an appeal and investigation (*Id.*, ¶¶56-57), denial of appeal and investigation (*Id.*, ¶58), breach of the implied contract (*Id.*, ¶¶65-69), and damages resulting from the breach (*Id.*, ¶¶70, 114).

Thus, Plaintiff has adequately pled the breach of an express contract claim.

---

least a joint employer, of the plaintiffs.").

## VIII - THE CONSPIRACY CLAIM IS PLAUSIBLY STATED

In the Motion to Dismiss, Prop. II(E)(5), p. 22-23, Defendants argue the Sec. 1985(3) conspiracy claim fails.   First, Defendants argue that the conspiracy claim fails because (according to Defendants) the underlying claims of discrimination fail.   However, it is error to condition success of a Sec. 1985(3) claim on the underlying success of Plaintiff's substantive claims of discrimination. *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1228-1229 (D.N.M. 2013):

> The Tenth Circuit has held that it is error to "precondition consideration of a plaintiff's § 1985(3) claim upon the finding of § 1983 liability." Dixon v. City of Lawton, Okla., 898 F.2d at 1447 (10th Cir. 1990).Although neither § 1983 nor § 1985(3) create any substantive rights, a § 1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws. *Dixon v. City of Lawton, Okla.*, 898 F.2d at 1447.

Second, Plaintiff identified the "specific rights of which Defendants conspired to violate". See Second Amended Complaint, para. 118 (pleading a "conspiracy to intentionally injure the Plaintiff and deprive him of his rights under the Equal Protection Clause . . . and in retaliation for his complaints of gender . . . discrimination".   Courts have recognized Sec. 1985(3) claims premised on gender discrimination. *Oltremari by McDaniel v. Kan. Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1338 (D. Kan. 1994)("To engage federal jurisdiction, therefore, the alleged conspiracy must have some racial or other class-based, invidiously discriminatory animus for its motivation. Plaintiff has not asserted racial discrimination. Liberally construed, however, the complaint alleges that defendants SRS, Owens, Fletcher, and Ronald Oltremari, Sr. conspired to discriminatorily deny constitutional rights to plaintiff because of her gender. At least one decision in the District of Kansas has "concluded that a conspiracy motivated by gender-based animus is actionable under § 1985(3)." *Women's Health Care Servs., P.A. v. Operation Rescue-National*, 773 F. Supp. 258, 264 (D. Kan. 1991), rev'd on other grounds, 24 F.3d 107 (10th Cir. 1994).").

Third, Defendants argue that Plaintiff "pleads insufficient facts to make a conspiracy claim", but this is simply not true.   Plaintiff pleads facts showing multiple people, acting in concert, to deprive Plaintiff's of his rights by engaging in gender discrimination. *See Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir. Utah 1984) ("A civil conspiracy is the combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means."). Plaintiff agrees that a conspiracy "requires a 'meeting of the minds or agreement among the defendants and concerted action.' *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 770 (10th Cir. 2001)". *Hicks v. Podolak*, 2014 U.S. Dist. LEXIS 59977, *12-13 (D. Colo. Apr. 29, 2014). But Plaintiff has also sufficiently alleged a "meeting of the minds". See Second Amended Complaint, Dkt. 82, ¶¶ 29-31 (Community Care, through Jessica Heavin, agreed with OSU Medical Center to coordinate counseling services), ¶ 31 (Heavin assigned Plaintiff to Dr. Barnes), ¶46 (Community Care, along with Dr. Barnes, Dr. Cotton and others, refused Plaintiff's request for his medical records), ¶49(A)(that the conduct discussed above indicated a conspiracy to manipulate Plaintiff's medical evaluation); ¶50 (that Defendant communicated with Dr. Barnes, Dr. Cotton and others to violate the scope of the scope of the medical releases), ¶118 (allegation that Defendant, Dr. Barnes and Dr. Cotton acted in agreement to intentionally deprive Plaintiff of his equal rights because of gender and disability).   As Dr. Cotton was employed by OSU Medical Center (*Id.*, ¶6(E)), she is acting on behalf of her employer.

Plaintiff alleged the agreement was for the purpose of engaging in unlawful conduct – to deprive Plaintiff of his rights under the Equal Protection Clause and by engaging in gender and disability discrimination and retaliation. *Id.*, ¶118.  In this regard, Plaintiff has adequately pled that Defendant acted "to deprive plaintiff of equal protection or equal privileges and immunities" by discriminating against him on the basis of gender. *Id.*, ¶118. As to the third element of a Sec. 1985(3) claim, Plaintiff alleged Defendant took action "in furtherance of the conspiracy" by facilitating communications between Dr. Barnes, Dr.

Cotton and others for the specific purpose of depriving Plaintiff of his equal protection through Defendant's discriminatory and retaliatory conduct. *Id.*, ¶ 30 (communication with Dr. Barnes, Dr. Cotton), ¶¶ 45(C) and 47 (refusing to obtain Plaintiff a counselor so Plaintiff could return to the residency program), and ¶49 (facilitating the manipulation of the evaluation used to dismiss Plaintiff from the residency program).

Further, the Second Amended Complaint specifically alleges the persons involved – Dr. Cotton, Dr. Alexopulos coordinating with Dr. Barnes to manipulate Plaintiff's medical evaluation to satisfy Dr. Cotton (*Id.* ¶¶41, 43-46) and Dr. Barnes' admission that she was not conducting an independent evaluation, but rather modifying the evaluation to Dr. Cotton's specifications, which Dr. Cotton then used to justify suspending (and ultimately terminating) the Plaintiff. *Id.*, ¶¶ 44-45, 48-49.

**WHEREFORE**, the Sec. 1985(3) claim is adequately pled.

## IX - THE DENIAL OF PERSONAL HEALTH INFORMATION CLAIM IS PLAUSIBLY STATED

Plaintiff erroneously asserted the claim of Wrongful Denial of Personal Health Information (Count X) against OSU Medical Center.[10]  This claim is withdrawn.

## X - IF FURTHER AMENDMENT IS REQUIRED IT SHOULD BE ALLOWED

Plaintiff emphasizes that the Court has **never** previously held that any of Plaintiff's claims were deficient. Plaintiff initially filed an amended complaint (the second complaint) to correct a deficiency observed by Plaintiff. Thereafter, Plaintiff retained other counsel[11] and voluntarily agreed to streamline his complaint. Even if it had previously filed a motion to dismiss, however, the Court never ruled on the motion and it would be fundamental unfair

---

[10] Plaintiff did not assert this claim against Mercy Health Oklahoma Communities, Mercy Health, Oklahoma State University Medical Trust or OSUMC Professional Services, LLC.

[11] The change of counsel did not involve the adequacy of pleadings.

to deny Plaintiff leave to amend "if it is at all possible that [Plaintiff] can correct the defect in the pleading or state a claim for relief." ***Bishop v. Oklahoma ex rel. Dep't of Human Servs.***, 2013 U.S. Dist. LEXIS 167930, 15-16 (W.D. Okla. Nov. 26, 2013) (DeGuisti, J)(internal citations omitted).  "Failure to provide fair notice should not normally warrant a dismissal with prejudice. Rule 8(a)(2) does not seek detail that a plaintiff cannot provide, so a plaintiff should be able to re-plead successfully." ***EEOC v. Concentra Health Servs.***, 496 F.3d 773, 782 (7th Cir. 2007) (internal citations omitted).  Therefore "the preferred practice is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim[.]" ***McKinney v. Oklahoma***, 925 F.2d 363, 365 (10th Cir. 1991).  *See* ***Curley v. Perry***, 246 F.3d 1278, 1281-82 (10th Cir. 2001) ("Dismissal under Rule 12(b)(6) without affording the plaintiff notice or an opportunity to amend is proper only when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."). *Accord Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (quoting ***Curley***).

**WHEREFORE**, Defendant's Motion to Dismiss must be denied and, in the alternative, Plaintiff should be given leave to supplement the pleadings.

**RESPECTFULLY SUBMITTED THIS  9th  DAY OF JANUARY, 2017**.

HAMMONS, GOWENS, HURST
& ASSOCIATES

s/ Amber L. Hurst
Mark Hammons, OBA #3784
Amber L. Hurst, OBA # 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
amber@hammonslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 9th day of January, 2017.

Daniel Weitman, OBA # 17412
Lauren J. Ray, OBA # 22694
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-4274
Facsimile: (405) 521-4518
Email: dan.weitman@oag.ok.gov
       lauren.ray@oag.ok.gov
*ATTORNEY FOR DEFENDANT,*
Oklahoma State University
Medical Authority

Nathan Whatley, OBA No. 14601
Philip R. Bruce, OBA No. 30504
Mike Lauderdale, OBA No. 14265
McAFEE & TAFT
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
Email: nwhatley@mcafeetaft.com
       Philip.bruce@mcafeetaft.com
       Mike.lauderdale@mcafeetaft.com
*ATTORNEYS FOR DEFENDANTS,*
Oklahoma State University Medical
Center, Deborah Nottingham, Sunny
Benjamin, Mercy Health Oklahoma
Communities, Inc., Mercy Health,
Oklahoma State University Medical
Trust and OSUMC Professional
Services, LLC

W. Kirk Turner, OBA No. 13791
Jacob S. Crawford, OBA No. 31031
Robert T. Redwine
Newton O'Connor Turner & Ketchum
15 West 6th Street, Suite 2700
Tulsa, Oklahoma 74119
Telephone: (918) 587-0101
Facsimile: (918) 587-0102
Email: kturner@newtonoconnor.com
       jcrawford@newtonoconnor.com
       rredwine@newtonoconnor.com
*ATTORNEYS FOR DEFENDANT*

Stephen R. Stephens, OBA # 10479
Michael Scott Fern
Clinton W. Pratt
Board of Regents for the Oklahoma
Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Oklahoma State University
Stillwater, OK 74078-7044
(405) 744-6494; Fax: (405) 744-7998
steve.stephens@okstate.edu
msfern@okstate.edu
clint.pratt@okstate.edu
*ATTORNEYS FOR DEFENDANTS*
Board of Regents for the Oklahoma
Agricultural & Mechanical Colleges, *ex rel.,* Oklahoma State University Center
for Health Sciences, Lora Cotton, D.O.,
and Jenny Alexopulos, D.O.

26

James K. Secrest, OBA No. 8049
Edward J. Main, OBA No. 11912
Secrest Hill Butler & Secrest
7134 S. Yale Ave., Suite 900
Tulsa, Oklahoma 74136
Email: jsecrest@secresthill.com
      emain@secresthill.com
Telephone: (918) 494-5905
Facsimile: (918) 494-2847
*ATTORNEYS FOR DEFENDANT,*
Leslie Barnes, PhD.

Adam W. Childers, OBA No. 18673
Allen Hutson, OBA No. 30118
Crowe & Dunlevy
Braniff Building
324 N. Robinson Ave., Ste. 100
Oklahoma City, OK 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
Email: adam.childers@crowedunlevy.com
      allen.hutson@crowedunlevy.com
*ATTORNEYS FOR DEFENDANTS*
JENNY ALEXOPULOS AND LORA
COTTON

s/Amber L. Hurst