**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JEFFREY SNYDER, D.O., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>(1) BOARD OF REGENTS FOR THE AGRICULTURAL & MECHANICAL COLLEGES, *ex rel.*, OKLAHOMA STATE UNIVERSITY CENTER FOR HEALTH, *et al.*,<br><br>Defendants. | ) | Case No. CIV-16-384-F |

**DEFENDANTS, OKLAHOMA STATE UNIVERSITY MEDICAL CENTER, HEALTH OKLAHOMA COMMUNITIES, INC., MERCY HEALTH, OKLAHOMA STATE UNIVERSITY MEDICAL TRUST AND OSUMC PROFESSIONAL SERVICES, LLC'S, MOTION TO CLARIFY OR, ALTERNATIVELY, RECONSIDER**

June 9, 2017

Nathan L. Whatley, OBA No. 14601
Michael F. Lauderdale, OBA No. 14265
Philip R. Bruce, OBA No. 30504
McAFEE & TAFT
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
nwhatley@mcafeetaft.com
mikelauderdale@mcafeetaft.com
philipbruce@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**
Oklahoma State University Medical Center, Health Oklahoma Communities, Inc., Mercy Health, Oklahoma State University Medical Trust and OSUMC Professional Services, LLC

## TABLE OF CONTENTS

**I. ARGUMENTS & AUTHORITY** ..... 1

**1. Standard of Decision.** ..... 1

**2. Plaintiffs' Claims of Alleged Disability Discrimination Predominantly Involve Employment.** ..... 3

**3. Plaintiff alleges a right to a medical license through the residency program from which the OSU Defendants have immunity even under Title II of the ADA.** ..... 9

**i. The Conduct that Allegedly Violates Title II.** ..... 11

**ii. The Basis of Plaintiff's Constitutional Claims and Alleged Violations.** ..... 12

**iii. The Sovereign Immunity Analysis.** ..... 12

**a. The Nature of the Constitutional Rights at Issue.** ..... 13

**b. The (Lack of) a Documented History.** ..... 14

**c. The (Lack of) Congruence and Proportionality.** ..... 15

**II. CONCLUSION** ..... 18

**CERTIFICATE OF SERVICE** ..... 20

# TABLE OF AUTHORITIES

## Cases

*Ass'n for Disabled Americans, Inc. v. Florida Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005) .......... 17

*Bearden v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, No. CIV-16-1293-HE, 2017 WL 564112 .......... passim

*Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001) .......... 4, 11, 14

*Bylsma v. Hawaii Public Housing Authority*, 951 F. Supp. 2d 1116 (D. Haw. 2013) .......... 9

*Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 51 F. Supp. 3d 828 (S.D. Ind. 2014).... 7

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) .......... 17

*Elwell v. Oklahoma ex rel. Board of Regents of University of Oklahoma*, 693 F.3d 1301 (10th Cir. 2012) .......... passim

*Ezekwo v. New York City Health & Hospitals Corporation*, 940 F .2d 775, 785 (2nd Cir.) .......... 7

*Gizewski v. New York State Department of Corrections and Community Supervision*, No. 914CV0124GTSDJS, 2016 WL 3661434 (N.D.N.Y. July 5, 2016) .......... 9

*Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) .......... passim

*Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995) .......... 2

*Lanman v. Johnson Cty., Kansas*, 393 F.3d 1151 (10th Cir. 2004) .......... 16

*Lipsett v. University of Puerto Rico*, 864 F .2d 881 (1st Cir. 1988) .......... 7

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) .......... 2

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993) .......... 2

*Servants of Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000) .......... 2

*Slatten v. Jim Glover Chevrolet Lawton, LLC*, No. CIV-15-1180-D, 2016 WL 4690416 (W.D. Okla. Sept. 7, 2016) .......... 1

*Tennessee v. Lane*, 541 U.S. 509 (2004) .......... 14

*Timpanogos Tribe v. Conway*, 286 F.3d 1195 (10th Cir. 2002) .......... 3

*United States v. Georgia*, 546 U.S. 151 (2006) .......... 11, 13

*Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239 (10th Cir. 2007) .......... 1

*Youssefv. Jam. Hosp. Med. Ctr.*, No. 04 CV 3389,2006 U.S. Dist. LEXIS 80672 (E.D.N.Y. Nov. 5, 2006) .......... 7

## Statutes

29 U.S.C. § 794 .......... 6

42 U.S.C. § 12112 .......... 14

42 U.S.C. § 12133 .......... 6

42 U.S.C. § 12134 ........ 6
42 U.S.C. § 12181 ........ 14
42 U.S.C. § 12189 ........ 15

**Rules**

Rule 12(b)(1) ........ 2
Rule 12(b)(7) ........ 3, 9

Defendants, Oklahoma State University Medical Center ("OSUMC"), Oklahoma State University Medical Trust ("OSUMC Trust"), OSUMC Professional Services, LLC, (referred to as the "OSU Defendants"), Mercy Health Oklahoma Communities, Inc., and Mercy Health (both referred to as the "Mercy Defendants"), (all five collectively referred to as "Defendants") request that this Court clarify and, if necessary, reconsider a portion of the Court's ruling denying Defendants' Motion to Dismiss [*See* ECF No. 125 denying ECF No. 94]. Specifically, Defendants seek clarification on which of Plaintiff's alleged claims the Court finds are made under Title II of the Americans with Disabilities Act ("ADA") and not subject to sovereign immunity.

## I. ARGUMENTS & AUTHORITY

### 1. Standard of Decision.

While motions to clarify and motions to reconsider are not recognized in the Federal Rules of Civil Procedure, the Tenth Circuit has stated that "a district court always has the inherent power to reconsider its interlocutory rulings, and we encourage a court to do so where error is apparent." *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243 (10th Cir. 2007).[1] Generally, "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice" and "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's

[1] Since the Court's order denying a motion to dismiss is an interlocutory order and not a final judgment, Rule 59 is inapplicable. The standard, however, is the same. *See Slatten v. Jim Glover Chevrolet Lawton, LLC*, No. CIV-15-1180-D, 2016 WL 4690416, at *1 n.1 (W.D. Okla. Sept. 7, 2016).

position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). And, as a reminder, Defendants' motion to dismiss the OSU Defendants was under Rule 12(b)(1). The Tenth Circuit has stated that "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Indeed, the Court may challenge the facts in the complaint and even hold an evidentiary hearing. *Id.*

Here, the Defendants believe that an order clarifying the Court's order and potentially reconsidering part of its ruling will have two primary benefits. First, as the Court is aware, this is a complex case with many claims and defendants. Providing more clarity on which claims or conduct the Court believes Plaintiff makes under Title II of the ADA as opposed to Title I will materially assist the parties in conducting discovery and with briefing summary judgment. Second, the OSU Defendants' Eleventh Amendment sovereign immunity is absolute: it is a constitutional right to be free from suit, not just liability. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The Supreme Court has mandated that "A federal court must examine *each claim* in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (emphasis added). And, because preserving this absolute immunity is so critical,

interlocutory rulings denying dismissal on sovereign immunity grounds are immediately appealable. *See Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1200 (10th Cir. 2002).[2]

In short, clarification from the Court can prevent the potential manifest injustice of claims proceeding against the OSU Defendants of which they have absolute immunity. Conversely, if the Court clarifies that the claims and alleged conduct are proper only under Title II of the ADA, then the Mercy Defendants request that the Court reconsider its order and dismiss the claims made against Mercy purportedly under Title I of the ADA.

**2. Plaintiffs' Claims of Alleged Disability Discrimination Predominantly Involve Employment.**

The Court ruled from the bench at the May 12, 2017 hearing on the motions to dismiss. It found Plaintiff stated a claim under Title II of the ADA. It further ruled, citing *Bearden v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, No. CIV-16-1293-HE,

---

[2] Defendants only seek clarification on which claims or conduct are made under Title II. Depending on the Court's clarification, Defendants believe the Court may reconsider its ruling on the OSU Defendants' immunity. The Mercy Defendants' argument that it should be dismissed from certain claims because Plaintiff cannot join indispensable parties under Rule 12(b)(7) may also be implicated because the Court denied that reasoning since it found the OSU Defendants had no immunity. Defendants do not seek clarification or reconsideration on the other arguments in its motions to dismiss, such as Plaintiff's failure to state a Title VII claim or a Rehabilitation Act violation. As the Court noted, those issues may be brought up at the summary judgment stage. And while the OSU Defendants could properly appeal the interlocutory denial of immunity as a matter of right, these other claims could only be brought by pendant appellate jurisdiction. *See Timpanogos*, 286 F.3d at 1200 (10th Cir. 2002). Such appeal, at this time, would involve complicated issues of whether the Tenth Circuit would accept pendant jurisdiction, whether this Court retains any jurisdiction, and an appeal could potentially stay all or part of this entire case or, if not stayed, result in intertwined claims pending in both the appellate court and this Court. Thus, the OSU Defendants believes that the best use of judicial resources is to ask for clarification on the immunity-related issues with this Court and proceed with the other issues to summary judgment and a final judgment.

2017 WL 564112, that the OSU Defendants did not have sovereign immunity. The Court did not offer a description or discussion of what specific claims or conduct it believes were made under Title II and whether (or which) claims were made under Title I. It thus denied Defendants' motion to dismiss with the exception of minor limitations not relevant here. *See* ECF No. 125. To be sure, Defendants appreciate the Court's timely rulings from the bench and the opportunity for oral argument on certain issues. Moreover, Defendants are sensitive to the Court's heavy caseload due in part from multiple vacancies and judges on senior status. The clarification Defendants respectfully seek, therefore, is what claims or conduct the Court believes are made under Title II and, if necessary, reconsideration of its ruling whether the OSU Defendants have sovereign immunity.

The Supreme Court has stated that Title I of the ADA does not abrogate sovereign immunity. *See Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001). And the Tenth Circuit has unequivocally ruled that ADA discrimination claims of employment discrimination must be made under Title I. *See Elwell v. Oklahoma ex rel. Board of Regents of University of Oklahoma*, 693 F.3d 1301 (10th Cir. 2012).

In *Elwell*, the plaintiff attempted to file an ADA discrimination claim under Title II of the ADA instead of Title I of the ADA. The Honorable Judge Cauthron granted defendant's motion to dismiss, holding that Title I was the proper vehicle for the claims, but the University of Oklahoma was entitled to Eleventh Amendment sovereign immunity. *See Elwell v. Oklahoma, ex rel. Bd. of Regents of Univ. of Oklahoma*, No.

CIV-10-1169-C, 2011 WL 560455, at *1 (W.D. Okla. Feb. 8, 2011), *aff'd*, 693 F.3d 1303 (10th Cir. 2012). The Tenth Circuit unanimously agreed.

Judge Gorsuch (or, now, Justice Gorsuch) wrote the unanimous opinion in *Elwell*. He painstakingly compared and contrasted Title I and Title II of the ADA, including their language, legislative history, purpose of the different titles, and larger statutory scheme of the ADA and similar statutes. The Tenth Circuit ultimately ruled that, "In this case, those traditional tools of statutory construction—including a close examination of the text together with a careful review of the larger statutory structure…persuade us that Congress has spoken and spoken clearly to the question of employment discrimination claims and placed them ***exclusively*** in Title I." *Elwell*, 693 F.3d at 1313 (emphasis added). In other words, Title I and Title II are mutually exclusive: *ergo* the conduct of which Plaintiff complains must fit under Title I or Title II, not both.

It is disingenuous to claim that Plaintiff does not allege *employment* discrimination against the OSU defendants. The claims purportedly against the Mercy Defendants under Title I are improperly based on the *identical* conduct for claims under Title II against the OSU Defendants. Nothing in the Second Amended Complaint demarcates which claims or alleged conduct is made under either Title I or Title II. *See*, *e.g.*, Pl.s' Second Am. Compl. ¶¶ 80-81, incorporating all allegations to make ADA Title II and Title V (retaliation) claim.

Indeed, Plaintiff filed an EEOC charge against the OSU Defendants (and other immune defendants) and alleged such acts exhausted his claims. *See* Ex. 1, Pl.'s Amended EEOC Charge (January 1, 2016); Pl.'s Second Am. Compl. ¶¶ 72-74. Plaintiff

repeatedly alleges *employment* discrimination and claims in his charge that "the following ***employers discriminated*** against me: OSU Medical Center…Oklahoma State Medical University Medical Trust; OSUMC Professional Services, LLC." *See, e.g.* Ex. 1 at 2 (emphasis added). Importantly, the Tenth Circuit in *Elwell* explained that Title II "lacks the requirement that an otherwise qualified individual exhaust EEOC administrative remedies before bringing suit. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a. And, regulatory authority is delegated not to the EEOC, but to the Attorney General. 42 U.S.C. § 12134(a)." *Elwell*, 693 F.3d at 1309. Thus the very fact that Plaintiff filed an EEOC charge against the OSU Defendants alleging employment discrimination shows he is making Title I claims against them.

Similarly, the irony should not be lost that the alleged ADA discrimination Plaintiff complains about includes requiring him to participate in an ***employee*** assistance program, specifically "as a condition ***of his employment***."[3]

Plaintiff's complaint is chocked full of other claims of an employment relationship or employment discrimination that includes the OSU Defendants (and other immune entities) upon which he purportedly bases his claims. For example, he claims:

> 3. Plaintiff's claims are for:…A. Discrimination and retaliation (including unpaid suspension and termination ***from employment*** and as a student of the Residency Program) in violation of the Federal Rehabilitation Act (29 U.S.C. § 794) and Titles I, II and V of the ADA.

[3] Specifically, Plaintiff alleges, "29. Around April 30, 2014, Dr. Cotton instructed Plaintiff to "participate in [the] OSUMC ***Employee*** Assistance Program,"…. "45. C. Dr. Cotton, as a condition ***of Plaintiff's employment***, instructed Plaintiff to participate in counseling sessions as directed by the ***Employee*** Assistance Program."

5. Defendants Board of Regents, OSU Medical Trust, Oklahoma State University Medical Center and OSU Medical Authority are public entities subject to liability ***as employers*** under Title VII and ***the Americans with Disabilities Act***.

6. Plaintiff was ***employed*** by multiple entitles as either joint employers and/or an integrated enterprise(s)…A. Plaintiff's pay stubs identify him ***as an employee*** of OSU Medical Trust…. J. Sunny Benjamin, who acted as the HR Manager with respect to suspending and ***terminating Plaintiff's employment***, is identified in her emails as "Chief Human Resources Officer" of "OSU Medical Center – Managed by Mercy").

7. For reasons including those set out in para. 6, above, ***the following defendants employed the Plaintiff*** in a joint employer and/or integrated enterprise capacity: Defendant Board of Regents for the Oklahoma Agricultural & Mechanical Colleges, ex rel., Oklahoma State University Center for Health Sciences; Defendant Oklahoma State University Medical Trust; Defendant Oklahoma State University Medical Center; Defendant Mercy Health; Defendant Mercy Health Oklahoma Communities, Inc. d/b/a/ Mercy Health System; Oklahoma State University Medical Authority; and OSUMC Professional Services, LLC.

18. The Contract [with OSU Medical Center] ***prohibits termination of Plaintiff's employment/residency*** without cause unless Plaintiff is given at least sixty days prior written notice.[4]

[4] In Plaintiff's response to Defendants' Motion to Dismiss, he cited four cases to argue that courts have found medical residents are both employees and students. *See* ECF No. 111 citing *Ezekwo v. New York City Health & Hospitals Corporation*, 940 F .2d 775, 785 (2nd Cir.), cert. denied, 502 U.S. 1013 (1991); *Lipsett v. University of Puerto Rico*, 864 F .2d 881, 897 (1st Cir. 1988); *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 51 F. Supp. 3d 828, 843 (S.D. Ind. 2014) ("[A]s St. Vincent concedes, a medical resident is both an employee and a student."); *Youssef v. Jam. Hosp. Med. Ctr.*, No. 04 CV 3389,2006 U.S. Dist. LEXIS 80672, at *8 n.3 (E.D.N.Y. Nov. 5, 2006). Only *Lispett* involved sovereign immunity but there were no claims under the ADA. And only *Youssef* involved the ADA but did not involve immunity issues. In fact, they all generally all applied other *employment discrimination* statutes to medical residents, like Title VII. The effect of these cases is twofold: (1) they do not get around *Elwell*'s mandate that Title I is the *exclusive* and proper tool for pursing employment discrimination claims; and (2) they only support that Plaintiff is, in fact, making employment discrimination claims against the OSU Defendants for which they have absolute immunity.

> 68. Prior to his termination, the Plaintiff maintained a property interest through his ***employment contract*** and through the implied contract (***employee handbook***), both of which provided restrictions on disciplining and/or terminating the Plaintiff.
>
> 80. [Count II-Americans with Disabilities Act] applies only to the ***Employers***/School defendants.
>
> 82. Under [Count II-Americans with Disabilities Act] Plaintiff is entitled to his ***wages*** loss (***including back, present and front pay along with the value of benefits associated with such wages***) and emotional distress damages, and/or equitable relief such as reinstatement to the same or a comparable position.[5]

Based on these ubiquitous allegations of employment and employment discrimination, the OSU Defendants request clarification from the Court. For instance, it is unclear to the OSU Defendants if the Court determined (1) the claims identified above are not made against the OSU Defendants; (2) those claims are made against the OSU Defendants, but are not, in fact, alleging employment discrimination for purposes of Title I; (3) whether the Court determines that there are any claims or conduct that Plaintiffs makes under Title I ; and/or (4) whether there are other claims of alleged conduct (and, if so, which claims) Plaintiff made that are properly under Title II. Indeed, even clarification that the Court simply disagrees with the Defendants that *Elwell* applies here would be helpful for the parties as the case proceeds and at summary judgment.

To the extent the Court clarifies that these claims are allegations are made against OSU Defendants and are claims of employment discrimination, the Defendants would respectfully request: (1) that the Court reconsider its determination and partially grant the

[5] These provisions seeking "wages" are obviously seeking damages from an employment relationship. Thus, the OSU Defendants request that the Court clarify or reconsider whether Plaintiff is entitled to the alleged damages against the OSU Defendants under Title II, which cannot be based on employment.

motion to dismiss, determining that the OSU Defendants have immunity under any of these employment discrimination allegations under the ADA; (2) that the Court revisit its determination that the Mercy Defendants should not be dismissed from theses ADA claims for Plaintiff's failure to join a party under Rule 12(b)(7) or, alternatively, if the Court clarifies none of these allegations are properly made under Title I then it dismiss the ADA count against Mercy; and (3) that the Court revisits the determination that there is no immunity for Plaintiff's Title V retaliation claims, to the extent they are based on alleged employment conduct by the OSU Defendants under Title I.[6]

### 3. Plaintiff alleges a right to a medical license through the residency program from which the OSU Defendants have immunity even under Title II of the ADA.

At the hearing, the Court ruled that it determined the OSU Defendants (and others), did not have immunity under Title II of the ADA. The Court was persuaded by *Bearden*, *supra*. Notably, Plaintiff provided the *Bearden* case to the Court after Defendants filed their reply and thus they did not have an opportunity to respond. *See* ECF No. 122. Again, due to the importance of determining the OSU Defendant's constitutional right to absolute immunity, Defendants respectfully request clarification

[6] The Court denied the motions to dismiss the Title V retaliation claims, stating there was no sovereign immunity under Title V. The Court cited *Bylsma v. Hawaii Public Housing Authority* and *Gizewski v. New York State Department of Corrections and Community Supervision*. These cases point out that whether there is sovereign immunity for retaliation depends on whether the underlying type of protected conduct is predicated on Title I or Title II. *See Gizewski*, No. 914CV0124GTSDJS, 2016 WL 3661434, at *15 (N.D.N.Y. July 5, 2016); *Bylsma*, 951 F. Supp. 2d 1116, 1121 (D. Haw. 2013).Thus, if the Court clarifies or determines that parts of Plaintiff's claims against the OSU Defendants are under Title I, then it should similarly dismiss any retaliation claims based on the same conduct.

from the Court on its ruling. In particular, Defendants' request clarification on what specific conduct and scope of alleged constitutional rights at issue *in this case* abrogates Defendants' immunity.

The Tenth Circuit has emphasized that in an as applied challenge, like here, "The Supreme Court has instructed us to assess Eleventh Amendment abrogation on a case-by-case basis—"[w]ith respect to the particular [governmental] services at issue in [the] case." *Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012).

As Defendants read Plaintiff's complaint, Plaintiff repeatedly alleges the specific conduct and rights at issue are Plaintiff's employment and alleged right to a medical license. For example, he alleges, "Plaintiff enjoyed a liberty interest in pursuing his ***medical license***, his good name and reputation, in pursuing his ***employment opportunities*** and/or in accessing his personal health information…" Pl.'s Second Am. Compl. ¶ 99 (emphasis added).[7] As noted above, claims of employment discrimination

[7] S*ee also* Pl.'s Second Am. Compl. ¶¶ 90, 91, 91.B, 100, 101 (respectively, "Plaintiff had a ***property interest in receiving his medical license***….;Drs. Cotton and/or Alexopulos improperly interfered with Dr. Snyder ***obtaining his medical license*** and additionally denied Plaintiff's procedural rights and ***right to obtain his medical license*** for the following (non-exhaustive) list of reasons:…denying Plaintiff his ***right to obtain his medical license*** through the refusal of Drs. Cotton and Alexopulos to provide the required paperwork to the Oklahoma Board charged with granting such license; Defendants Cotton and Alexopulos deprived Plaintiff of his liberty interests by refusing to complete and submit the proper documentation necessary for Plaintiff to ***obtain his medical license***, by improperly placing him on probation and refusing to allow him to advance his medical training and ***obtain his license***, by removing him from his duties and terminating him from the Residency Program, among other actions;. Such deprivations are continuing and have resulted in ongoing violations of federal law and have foreclosed other ***employment, licensing*** and educational opportunities.") (emphasis added).

must be made under Title I, which does not abrogate immunity. *See Board of Trustees of the Univ. of Alabama*, 531 U.S. at 360; *Elwell*, 693 F.3d at 1306.

Similarly, the Tenth Circuit affirmed the granting of a motion to dismiss of a doctor's Title II claim against the New Mexico's medical licensing board. *See Guttman*, 669 F.3d at 1106-07. The court held that a state's sovereign immunity was not abrogated for claims of professional licensing. *Id.* at 1125. Indeed, the Tenth Circuit focused on, like here, medical licensing, stating, "we emphasize the state's strong interest in crafting reasonable, cost-effective medical licensing procedures. In contrast to many other public services, states have strong, historical interests in medical licensing, which touches on the core governmental function of promoting and protecting the general public welfare." *Id.* at 1124.

The type of conduct and constitutional rights that Plaintiff alleges abrogate the OSU Defendants' sovereign immunity are key. The Supreme Court has laid out the three part test to determine whether certain alleged conduct abrogates immunity: (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159 (2006).

**i. The Conduct that Allegedly Violates Title II.**

The court in *Bearden* applied this same test, but the conduct and the right at issue was a "disabled individual's right to receive an undergraduate degree." *Bearden*, 2017

WL 564112, at *3. It is unclear what conduct or right at issue the Court was analyzing in the present case, but the allegations from Plaintiff, as noted above, include much more than the right to an undergraduate degree. Thus, under the first prong (identifying the conduct) is either unclear, or involves conduct of which courts have already ruled do *not* abrogate sovereign immunity under the ADA (i.e. employment discrimination and professional medical licensing).

**ii. The Basis of Plaintiff's Constitutional Claims and Alleged Violations.**

Next, Plaintiff alleges procedural due process and equal protection claims against Doctors Cotton and Alexopulos. Again, the claims, as specifically stated in the Second Amended Complaint, are based on employment and medical licensing. *See* Pl.'s Second Am. Compl. ¶¶ 90, 91, 91.B, 99, 100, 101. To the extent Plaintiff is seeking to challenge the OSU Defendants right to limit or deny his right to any medical licensing, the Tenth Circuit has already ruled such claims do not violate due process or equal protection. *Guttman*, 669 F.3d at 1114, 1116 ("The discovery that a physician constitutes an imminent danger to public safety is precisely the kind of circumstance where the government must act quickly…The district court dismissed [plaintiff's] equal protection claim after concluding 'a legitimate public safety concern—**the protection of patients from a mentally unstable physician—is an abundantly rational basis for treating Plaintiff differently from other similarly situated physicians**.'") (emphasis added).

**iii. The Sovereign Immunity Analysis.**

The third factor is the sovereign immunity analysis. This includes two questions; (1) whether Congress intended to abrogate sovereign immunity; and (2) if so, whether it

acted pursuant to a valid grant of constitutional authority. *Id.* at 1117. The Tenth Circuit affirmatively answered the first part. *Id.* The remaining question then, is whether Congress intended to abrogate sovereign immunity for the conduct and constitutional issues in this case. Specifically, there are three factors to consider: "(1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations." *Id.* Again, this Title II analysis must be on a case-by-case basis and clarification on how (or if) the claims here are different that *Bearden* is critical. *Id.* ("The Court underscored the as-applied focus in *Georgia*, 546 U.S. at 159…, where it directed lower courts to consider each state sovereign immunity case on a 'claim-by-claim basis.'").

**a. The Nature of the Constitutional Rights at Issue.**

Here, the scope of the constitutional right does not indicate abrogation of immunity. As Plaintiff describes the right, it is the right to pursue his medical license, his good name and reputation, and his employment opportunities and/or in accessing his personal health information. *See* Pl.'s Second Am. Compl. ¶ 99. The primary alleged bad conduct of the state for purposes of the ADA claims, as best as Defendants can tell, is requesting (or requiring) EAP counseling and fitness-for-duty exam. *See id.* ¶¶ 29, 45. These alleged rights and conduct are not entitled to any heightened judicial scrutiny and are based on reasonable acts. Thus, there is no indication that sovereign immunity is

waived. *See* ECF No. 94-2 and 94-3 (discussing reasons for request for EAP testing); *Guttman*, 669 F.3d at 1118 ("Here, the right at issue is a disabled individual's right to practice in his chosen profession; this right, unlike the one at issue in [*Tennessee v. Lane*, 541 U.S. 509 (2004)], does not invoke heightened scrutiny. Indeed, although 'the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment,' this right is 'subject to reasonable government regulation.'").

**b. The (Lack of) a Documented History.**

Second, there is no historical record (and certainly no record that Plaintiff points to) of similar constitutional violations. Specifically, there is no historical record that Congress intended to prevent a (non-existent) pattern of discrimination in the highly competitive field of medical residencies. More generally, "the problem for [plaintiff] is that Congress did not identify a history of irrational discrimination in professional licensing when enacting Title II." Nor is there any record that Congress identified a pattern of disability discrimination in *public* employment. *See Board of Trustees of the Univ. of Alabama*, 531 U.S. at 368-374.

Finally, there is no evidence that Congress identified a pattern of discriminatory medical exams by the public. Congress addressed medical examinations in Section I. *See* 42 U.S.C. § 12112(d). In Section III of the ADA (42 U.S.C. § 12181 *et seq.*, titled Public Accommodations and Services Operated by Private Entities), Congress again addressed examinations (although not medical) and stated, "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or

post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. Title II contains no prohibition or description of examinations, medical or otherwise. Thus, this further supports that Congress did not identify any pattern or history of discriminatory medical exams/ fitness-for-duty exams in access to public accommodations, particularly in the case of medical residents treating patients or in order to receive a medical license. *Elwell*, 693 F.3d at 1312 (analyzing structural differences of the ADA and stating "'[c]ommon sense, reflected in the canon *expressio unius est exclusio alterius*, suggests that the specification of [one provision] implies' the exclusion of others"") (citations omitted).

**c. The (Lack of) Congruence and Proportionality.**

For the final factor, there is no congruence or proportionality. "In this third prong, the question is whether Title II is congruent and proportional to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations." *Guttman,* 669 F.3d at 1119-20. Courts have used a narrow focus in defining the scope of the alleged state action. *Id.* at 1120. And in determining whether the congressional remedy (i.e. the ADA) is congruent and proportional to the alleged constitutional violations or rights (i.e. Plaintiff's continued employment in the residency program, obtaining his medical license, and being free from EAP counseling) depends on how well-tailored the remedy is to the "nature of the right and the history of the violations" and how "costly it is for the state to comply." *See id.* at 1122, 23.

Addressing this factor is specifically where Defendants seek clarification and potential reconsideration. The scope in *Bearden* and other cases cited in footnote four in *Guttman* all involved access to public education. *See Guttman*, 669 F.3d 1101 at 1123 n. 4; *Bearden*, 2017 WL 564112, at *3. Those courts noted that there was a trend to find that immunity under Title II is abrogated for access to public education because the "courts have been persuaded by (1) the persistent pattern of exclusion and irrational treatment of disabled students in public education, (2) the gravity of the harm worked by such discrimination, and (3) the limited nature of the compliance costs imposed on states." *Id.*

Those factors are not applicable to the claims in this specific case. First, as noted above, there is no historical pattern of irrational treatment identified by Congress in the mistreatment or requiring fitness-for-duty exams of medical residents or in order to otherwise obtain a medical license. Indeed, medical residents must be highly competent individuals. Their primary job is to treat patients and it involves the public safety significantly more than the undergrad student in *Bearden*. Second, there is no gravity of harm. That is, the EAP counseling/ fitness-for-duty test was for the purpose of trying to provide Plaintiff with the means to help him succeed as a doctor; it was an opportunity to identify the reasons and correct his mistakes. *See* ECF No. 94-2 and 94-3; *Lanman v. Johnson Cty., Kansas*, 393 F.3d 1151, 1157 (10th Cir. 2004) ("'Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims....' This is especially true in professions like law enforcement where employees are responsible for the care and safety of others.").

Further, the nature of compliance is costly. The alleged compliance here would be *not* requesting or requiring a fitness-for-duty test or EAP counseling. Not putting a dangerous doctor on probation and assessing his competency is incredibly costly—it puts patients' health at risk and could subject the hospital to medical malpractice or negligent supervision claims. Thus, it is not the same as minor compliance efforts such as providing an opportunity to gain an undergraduate degree, allowing more testing time, or providing an interpreter. *See, e.g., Bearden*, 2017 WL 564112, at *3 (unspecified access to undergraduate degree); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 478 (4th Cir. 2005) (seeking additional test time because of migraines); *Ass'n for Disabled Americans, Inc. v. Florida Int'l Univ.*, 405 F.3d 954, 956 (11th Cir. 2005) (seeking accommodation of providing sign language interpreters and other assistance for hearing-impaired students).

Conversely, abrogation of immunity here would have a significant cost and overly broad effect on the entities' ability to justify a range of rational patient treatment decisions and protections to ensure residents are fit for duty. This is why *Guttman* emphasized the states strong interest in crafting reasonable medical licensing procedures. *Guttman*, 669 F.3d at 1124.

Finally, it is illogical to argue that merely because the alleged wrongful acts (i.e. requesting or requiring EAP counseling that prevented plaintiff from obtaining his medical license and treating patients) occurred in an educational setting then immunity is abrogated, but as soon as he graduates, the Oklahoma Board of Medical Licensure and Supervision could do the same exact thing and have immunity. *See id.* (ruling New

Mexico's board of medical examiners had sovereign immunity). Thus, the OSU Defendants assert that immunity is not abrogated under the claims in this specific case.

## II. CONCLUSION

Given the importance of whether the OSU Defendants' absolute immunity applies, and the nature of these claims involving the public welfare, Defendants therefore respectfully request that the Court clarify what claims are properly under Title II or Title I and, relatedly, the scope or nature of the alleged state actions and constitutional violations. Such clarification will be materially helpful to the parties as they proceed with this case. And, based on any clarification and analysis above, the Defendants respectfully request that the Court reconsider its decision that Plaintiff's claims are made under Title II, that Plaintiff's Title V ADA retaliation claim is proper, that the Mercy Defendants should not be dismissed for Plaintiff's failure to add a necessary party, and, to the extent any claims are made under Title II, there is no sovereign immunity.

Respectfully submitted,

*s/ Nathan L. Whatley*

Nathan L. Whatley, OBA No. 14601
Michael F. Lauderdale, OBA No. 14265
Philip R. Bruce, OBA No. 30504
McAFEE & TAFT
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
nwhatley@mcafeetaft.com

mikelauderdale@mcafeetaft.com
philipbruce@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS**
Oklahoma State University Medical Center, Health Oklahoma Communities, Inc., Mercy Health, Oklahoma State University Medical Trust and OSUMC Professional Services, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2017 I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Filing to the following ECF registrants:

Mark E. Hammons
Amber L. Hurst
HAMMONS GOWENS HURST & ASSOCIATES
325 Dean A. McGee Ave
Oklahoma City, OK 73102
**ATTORNEYS FOR PLAINTIFF**

M. Daniel Weitman
Lauren J. Ray
Attorney General's Office
313 NE 21s Street
Oklahoma City, OK 73105
**ATTORNEYS FOR OKLAHOMA STATE UNIVERSITY MEDICAL AUTHORITY**

W. Kirk Turner
Jacob S. Crawford
Rachel B. Crawford
NEWTON O'CONNOR TURNER & KETCHUM
15 West Sixth Street, Suite 2700
Tulsa, OK 73102
**ATTORNEYS FOR COMMUNITYCARE HMO**

Adam W. Childers
Allen Hutson
Crowe & Dunlevy
Braniff Building
324 N. Robinson Ave., Ste. 100
Oklahoma City, OK 73102
**ATTORNEYS FOR JENNY ALEXOPULOS AND LORA COTTON**

Edward J. Main
James K. Secrest, II
Secrest Hill & Butler
7134 S. Yale Ave., Ste. 900
Tulsa, OK 74136-6342
**ATTORNEYS FOR LESLIE BARNES**

Stephen R. Stephens
Board of Regents for the Oklahoma A&M Colleges
Student Union, 5th Floor
Stillwater, OK 74078
**ATTORNEY FOR BOARD OF REGENTS FOR THE OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES**

*s/ Nathan L. Whatley*
Nathan L. Whatley