# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFREY SNYDER, D.O.,<br>an individual, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CIV-16-384-F |
| | ) | |
| BOARD OF REGENTS FOR THE | ) | |
| OKLAHOMA AGRICULTURAL & | ) | |
| MECHANICAL COLLEGES, *ex rel.*, | ) | |
| OKLAHOMA STATE UNIVERSITY | ) | |
| CENTER FOR HEALTH SCIENCES, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT OKLAHOMA STATE UNIVERSITY MEDICAL TRUST (OSUMT)

---

**RESPECTFULLY SUBMITTED THIS 20th DAY OF NOVEMBER, 2018.**

Mark Hammons, OBA #3784
Amber L. Hurst, OBA # 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
amber@hammonslaw.com
*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ....................................................................................................iii

PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM
DEFENDANT OKLAHOMA STATE UNIVERSITY MEDICAL
TRUST (OSUMT) ...................................................................................................... 1

ARGUMENT AND AUTHORITY ............................................................................. 1

I.     THE STANDARD FOR DISCOVERY ...................................................... 2

       A. The Scope of Discovery Remains Broad  ........................................ 3

II.    SPECIFIC DISCOVERY REQUESTS AT ISSUE ................................... 4

       A.     Documents Testing Veracity of Defendant's Claims

              Regarding Plaintiff (Req. Prod. No. 13) ........................................ 4

       B.     Documents Relevant to Comparing Plaintiff's Conduct and

              Treatment to Similarly Situated Residents (Req. Prod. Nos. 10-11) .......... 7

              i.     Comparative Information is Relevant  .................................... 9

              ii.    The Requests Are Appropriately Limited ............................ 13

C.     Joint Employer/Integrated Enterprise (Req. Prod. Nos. 20-21) ............................ 14

## TABLE OF AUTHORITIES

### UNITED STATES SUPREME COURT

*University of Pa. v. EEOC*, 493 U.S. 182, 193 (1990) ........................................................ 2

### UNITED STATES COURTS OF APPEAL

*Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1332 (10th Cir.1997) ............................. 10

*Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) ..................... 15

*Chicano Police Officer's Ass'n v. Stover*,
    526 F.2d 431, 438-39 & n. 6 (10th Cir.1975) ........................................................ 13

*Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir.1991) ..................................................... 11

*EEOC v. Roadway Express, Inc*., 261 F.3d 634, 642 (6th Cir. 2001) ............................. 10

*English v. Colo. Dept. Of Corr*., 248 F.3d 1002, 1011 (10th Cir.2001) ......................... 11

*Frank v. U.S. West, Inc*., 3 F.3d 1357, 1363 (10th Cir. Colo. 1993) ....................... 16, 17

*Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) ........... 16

*Knowlton v. Teltrust Phones, Inc*., 189 F.3d 1177, 1184 (10th Cir. 1999) .................... 16

*La Montagne v. American Convenience Products, Inc*.,
    750 F.2d 1405, 1410 (7th Cir. 1984) ...................................................................... 2

*Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160, 1169 (10th Cir.2000) ................. 11

*Weahkee v. Norton*, 621 F.2d 1080, 1082 (10th Cir.1980) ............................................ 11

### UNITED STATES DISTRICT COURTS

*Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*,
    277 F.3d 882, 895 (7th Cir. 2001) .......................................................................... 3

*Cory v. Aztec Steel Bldg., Inc*., 225 F.R.D. 667, 672-673 (D. Kan. 2005) ....................... 4

*Johnson v. Pinnacle Credit Servs., LLC*,
    2016 U.S. Dist. LEXIS 36887, *10 (D. Colo. Mar. 22, 2016) ................................ 3

*Krenning v. Hunter Health Clinic, Inc*., 166 F.R.D. 33, 35-36 (D.Kan.1996) .............. 12

*LeLouis v. Western Directory Co.*, 230 F. Supp. 2d 1214, 1222 (D. Or. 2001) ............... 3

*Manning v. GM*, 247 F.R.D. 646, 652-653 (D. Kan. 2007) ............................................ 13

*McCoo v. Denny's Inc*., 192 F.R.D. 675, 687 (D.Kan.2000) ........................................... 12

*Raup v. Vail Summit Resorts, Inc*.,
    2015 U.S. Dist. LEXIS 164999, *5 (D. Colo. Dec. 9, 2015) .................................. 3

*Scott v. Leavenworth Unified Sch. Dist. No. 453*,
    190 F.R.D. 583, 585-86 (D.Kan.1999) ................................................................ 11

## <u>OKLAHOMA CASES</u>

*Brown, et al. v. POP Restaurants*, LLC, CIV-09-1069-HE ............................................ 9

*Jones v. Standard Consulting, et al*., CIV-16-1020-R .................................................... 10

*Morris v. Legend Senior Living, LLC, et al.*, CIV-11-302-M .......................................... 9

## <u>FEDERAL AUTHORITY</u>

Fed. R. Civ. P. 26(b)(1) ................................................................................................... 3
Fed. R. Civ. P. 26(b)(2)(C) .............................................................................................. 3
45 C.F.R. § 164.512 ..................................................................................................... 6, 7
45 C.F.R. § 164.512(e)(1)(i) ............................................................................................ 6
45 C.F.R. § 164.512(e)(1)(ii)(B) ...................................................................................... 6
45 C.F.R. § 164.512(e)(1)(v) ............................................................................................ 6
2015 Advisory Committee Notes to Rule 26 .................................................................... 4

## <u>OKLAHOMA AUTHORITY</u>

OAC § 240:10-5-91 ........................................................................................................ 16

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT OKLAHOMA STATE UNIVERSITY MEDICAL TRUST (OSUMT)

**COMES NOW** the Plaintiff and respectfully requests this Court compel Defendant, Oklahoma State University Medical Trust (OSUMT), to supplement its discovery responses and, in support, shows this Court as follows:

1.      Plaintiff issued discovery to the Defendant, OSUMT, and OSUMT responded.

2.      The responses were deficient and the parties held a good faith Rule 37.1 conference on September 21, 2018.

3.      Although the parties resolved some discovery issues, other discovery disputes remain.

4.      Specifically, Defendant refuses to produce documents necessary to test the veracity of the Defendant's statements as to the reasons for its actions against Plaintiff, to locate witnesses, and to establish an employment relationship between the  Employers/School Defendants and the Plaintiff.

5.      Because of OSUMT's refusal to provide this information it is interfering with Plaintiff's ability to prepare the case for trial and the Plaintiff respectfully requests this Court's assistance.

## ARGUMENT AND AUTHORITY

The Plaintiff, a former medical resident, alleges he was discriminated because of a disability and retaliated against after he complained of disability and gender discrimination.  As part of the discrimination and retaliation, the Plaintiff was placed on academic probation and, ultimately, removed from duties as a medical resident.

1

The purported basis for the probation and removal was Plaintiff's judgment, professionalism and clinical decision-making that Defendants alleges posed a risk to patients in Plaintiff's care.  Plaintiff issued discovery designed to test the veracity of Defendant's allegations, to locate potential witnesses, and to compare the Plaintiff's treatment with that of other residents in order to develop pretext.  Additionally, Plaintiff seeks documents necessary establish a joint employer and/or integrated enterprise relationship among the school/employer defendants.[1]

Defendant refuses to provide the information, necessitating this Court's assistance.

## I. THE STANDARD FOR DISCOVERY

In tailoring discovery, courts consistently recognize that "[w]hen evidence [of discrimination] is in existence, it is likely to be under the control of the employer, and the plaintiff may not succeed in turning it up."  *La Montagne v. American Convenience Products, Inc*., 750 F.2d 1405, 1410 (7th Cir. 1984).  Access to employer records may, therefore, be critical to proving discrimination.  *See University of Pa. v. EEOC*, 493 U.S. 182, 193 (1990) ("if there is a 'smoking gun' to be found that demonstrates discrimination in tenure decisions, it is likely to be tucked away in peer review files.").

Employees are unlikely to have been privy to the decision-making process that aggrieves them and they are also unlikely to know the particulars of how an employer organizes and maintains its information so that it can be asked for most directly.  Most of

---

[1] Plaintiff offered to stipulate to an employment relationship under seal, and for purposes of this case only, in order to avoid having to engage in discovery on this issue.  Defendants refused.  Accordingly, the discovery is necessary in order to establish that these school/defendants employed the Plaintiff.

2

the information the employee needs, especially for the usual circumstantial case, is under the control of the employer and any fair system must "realize that an employee can be at a disadvantage when it comes to the collection of information, insofar as the relevant data is in the hands of the employer." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001). Thus, "adequate discovery is indispensable for the vindication of civil rights claims". *LeLouis v. Western Directory Co.*, 230 F. Supp. 2d 1214, 1222 (D. Or. 2001) (quotation omitted).

## A. The Scope of Discovery Remains Broad

The Federal Rules counsel in favor of broad discovery and the candid exchange of information. Defendant may attempt to argue that the scope of discovery has been limited by recent amendments to the Federal Rules of Civil Procedure, specifically Rule 26. This is not so. Although the proportionality factors have been moved and are explicitly set out in Rule 26(b), the scope of discovery remains the same as it was prior to the 2015 amendments. *See Raup v. Vail Summit Resorts, Inc*., 2015 U.S. Dist. LEXIS 164999, *5 (D. Colo. Dec. 9, 2015)("proper scope of discovery has long been bounded by the principles of proportionality. Fed. R. Civ. P. 26(b)(2)(C) (superseded effective Dec. 1, 2015)"); *Johnson v. Pinnacle Credit Servs., LLC*, 2016 U.S. Dist. LEXIS 36887, *10 (D. Colo. Mar. 22, 2016)("Although this case was initiated prior to December 1, 2015, this court applies the principles of proportionality as discussed above because they are the same principles that would have applied through the former Fed. R. Civ. P. 26(b)(2)(C)(iii)"). *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015

amendment ("Most of what now appears in Rule 26(b)(2)(C)(iii) was first adopted in 1983.").

It remains a rule of thumb that relevancy is broadly construed, and discovery should be allowed, if there is "any possibility" that discovery may be relevant to a claim or defense. *See Cory v. Aztec Steel Bldg., Inc*., 225 F.R.D. 667, 672-673 (D. Kan. 2005) (footnotes and punctuation omitted)("A request for discovery should be considered relevant 'if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."). This is particularly true, in employment discrimination cases, where litigants represent not just themselves but act as private attorney generals to vindicate the rights secured by the Americans with Disabilities Act. *See* 2015 Advisory Committee Notes to Rule 26 ("[T]he rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved.").

## II. SPECIFIC DISCOVERY REQUESTS AT ISSUE

### A. Documents Testing Veracity of Defendant's Claims Regarding Plaintiff (Req. Prod. No. 13)

Defendant claims the Plaintiff engaged in conduct that posed a risk to patients, including in the manner in which Plaintiff prescribed medication and documented medical conditions and treatment. To test the veracity of Defendants' claim, Plaintiff issued the following discovery request:

**REQ PROD NO 13:[2]** For any errors and/or conduct you claim was made by Plaintiff (including any conduct you claim jeopardized patient safety), produce:

        A.     All documents materially related to such errors;

* * *

Ex 1 Def. Resp., p. 10.  OSUMT responded, stating "Defendant agrees to produce all presently identified responsive documents".  ***Id***.

Although Defendant did not object, it refuses to produce the medical records that purport to show the errors made by Plaintiff.  The only records Defendant has produced are the notes of the alleged discriminators (Defendant Dr. Cotton, e.g.) *alleging* these errors occurred.  Specifically, Defendant claims Plaintiff made medical errors including incorrectly prescribing specific medications and treatments for patients, as well as failing to communicate to others certain information contained in a patient's medical records.  Defendant claims these errors occurred on March 17, 18 and 20, 2014 and June 24 and 28, 2014.

The medical records related to these patients are relevant to test whether the Defendants' allegations against the Plaintiff are false or exaggerated.  If the medical records are not consistent with the accusations against the Plaintiff, then the information is relevant to challenge the Defendant's truthfulness.  If the medical records are consistent with Defendant's claims about Plaintiff's clinical decisions, then they bolster Defendant's claims.  Either way, the medical records are relevant.

---

[2] Subparts (B)-(D) relate to Defendant's notification to patients and third parties of Plaintiff's errors.  These subparts are not at issue as Defendant represented that no such notifications were made.

Plaintiff recognizes that the patients have a legitimate privacy interest in their medical records.  In this regard, Plaintiff has offered (and still offers) to allow Defendant to substitute patient names with agreed-upon identifiers that allow identification of the patient, without disclosure of the patient's identity.

HIPAA allows disclosure of patient records in response to a discovery request, so long as there is an adequate protective order in place:

> (e) Standard: Disclosures for judicial and administrative proceedings.
>
> > (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
> >
> > > * * *
> >
> > > (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> > >
> > > > * * *
> > >
> > > > (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512.

Accordingly, the production of medical records is permitted under § 164.512(e)(1)(i) in response to a court order granting Plaintiff's motion to compel or §164.512(e)(1)(ii)(B) in response to Plaintiff's discovery request, even without a court order, provided there exists a qualified protective order that complies with § 164.512(e)(1)(v), which provides that:

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512.

On October 25, 2017, this Court granted the parties' Joint Motion for Protective Order and entered an Agreed Protective Order (Dkt. 159) which complies with paragraph (e)(1)(5). Para. 4(A) prohibits the use or disclosure of the medical information "for any purpose of than the litigation or proceedings for which such information was requested". Dkt. 159, p. 4. Para. 4(B) requires that the requesting party must "return such information to either the entity from which it was received, or the attorney of the party to whom it pertains or destroy the protected health information (including all copies made)" upon the end of litigation. *Id*., pgs. 4-5.

**WHEREFORE**, the Defendant should be compelled to produce the requested medical records and other documents supporting its claim of improper patient care.

### B. Documents Relevant to Comparing Plaintiff's Conduct and Treatment to Similarly Situated Residents (Req. Prod. Nos. 10-11)

Defendants claim Plaintiff's performance as a resident, including errors made in patient care, justified placing him on probation and removing him from patient care and his duties as a resident. Plaintiff seeks documents that would show the performance and

standard of patient care of other residents.   The requests and Defendant's responses are

set out below:

**REQ PROD NO. 10:**[3] Produce the "personnel documents" for the following persons:
   A.      All persons who, from January 1, 2014, through the present, occupied the same and/or similar position as the Plaintiff and/or performed the same and/or similar job duties as the Plaintiff and/or were medical residents in the same residency program as the Plaintiff;
   B.      All persons who, from January1, 2014, through the present, were supervised (either directly and/or indirectly) by any person who participated in the decision to terminate the Plaintiff;
   C.      All persons who, from January 1, 2014, through the present, were supervised (either directly and/or indirectly) by the person(s) who made the final decision to terminate the Plaintiff;
                                        * * *
**RESPONSE TO NO. 10:** Defendant objects to this request because it is overbroad and not proportional to the needs of the case, and because it seeks the private personal information of third parties, and seeks information which is not relevant.   Without waiving these objections, Defendant states that there have been no such claims other than those alleged by plaintiff.

**REQ PROD NO. 11:** For all persons employed in the same residency program as the Plaintiff, produce:
   A.      All documents (including correspondence) materially related to any mistake and/or error made in evaluating and/or treating a patient; and
   B.      All documents (including correspondence materially related to the performance of his/her duties as resident.
   This request is limited to the period of January 1, 2013, through the present.

**RESPONSE TO NO. 11:** Defendant objects to this request because it is overbroad and not proportional to the needs of the case, and because it seeks the private personal information of third parties, and seeks information which is not relevant.

Ex 1, Def Resp, pgs. 8-10.

---

[3] Plaintiff omitted a footnote and those portions of Req. Prod. No. 10 that are not at issue in this case.

With respect to Req. Prod. No. 10, Plaintiff does not seek entire personnel files.

Rather, the request included a footnote *limiting* the request to the following information:

> "Personnel documents" unless defined otherwise means documents, emails or electronically stored information containing the following information regardless of where these documents may be located: (A) last known home addresses, date of birth, gender, last known phone number; (B) job titles; job duties and dates of employment; (C) complaints concerning gender and/or age discrimination and/or retaliation; (D) formal and/or informal disciplinary and coaching actions; (E) disciplinary and/or counseling records; (G) training related to enforcement of disciplinary and discrimination policies and rules regarding discrimination and/or retaliation; (G) complaints of gender and /or disability type discrimination and/or retaliation.

> The request for "personnel documents does **not** include information related to tax withholding, social security numbers, designation of beneficiaries for benefits, benefits for beneficiaries, medical records and identification of spouses and children.

*Id*. at p. 8.

### i. Comparative Information is Relevant

Allowing production of comparative information for persons supervised by the decisionmaker[4] is routinely allowed.  Indeed, courts in this district have previously allowed discovery of personnel documents of comparators for all locations supervised by the decisionmaker.  ***See Brown, et al. v. POP Restaurants***, LLC, CIV-09-1069-HE (Dkt. 49, attached hereto as Ex 2)(compelling production of personnel documents for "restaurants in which [the decsionmakers] worked".); ***Morris v. Legend Senior Living, LLC, et al.***, CIV-11-302-M (Dkt. 34, attached hereto as Ex 3)("[D]ocuments of other

---

[4] Defendants Cotton and Alexopulos were the decisionmakers in Plaintiff's case and supervised the residency program.  Dr. Cotton supervised the Family Medicine Program. Dr. Alexopulos supervised all residency programs, to Plaintiff's understanding, at OSU.

employees in various locations who were allegedly subjected to discrimination by Mr. Thornton [the decisionmaker] or complained of discrimination are relevant and/or reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's claims of discrimination by Mr. Thornton in this case."); ***Jones v. Standard Consulting, et al***., CIV-16-1020-R, Order, (Dkt. 60, attached hereto as Ex 4) at pgs. 3-4.

As part of proving discrimination, it is important that plaintiffs are allowed to compare their treatment to that of their peers.  "[C]omparative information is absolutely essential. . . to a determination of discrimination."  ***EEOC v. Roadway Express, Inc***., 261 F.3d 634, 642 (6th Cir. 2001) (quoting ***EEOC v. Ford Motor Credit Co.***, 26 F.3d 44, 47 (6th Cir. 1994)).

For instance, in this case, comparator information may show that others were not terminated for engaging in conduct of similar seriousness or that there is a pattern of terminating those who, like Plaintiff, engaged in protected conduct.  Both differential and similar treatment would be relevant to the issue of whether Plaintiff suffered discrimination.

Similarly, Plaintiff requested personnel documents of persons who occupied the same position, performed the same job duties, were disciplined for the same reason and/or terminated for the same reason as the Plaintiff and who made a complaint of discrimination and/or retaliation.  Each request is designed to develop pretext.

"In Title VII litigation, in which plaintiffs are required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files."  ***Aramburu v. The Boeing Co.***, 112 F.3d 1398, 1332 (10th Cir.1997) (quoting from ***Coughlin v. Lee***, 946

10

F.2d 1152, 1159 (5th Cir.1991).  For this reason, "the Tenth Circuit ha[s] permitted discovery of personnel files and work records, even of other employees in discrimination actions." ***Id***.  And courts in this circuit "ha[ve] routinely held that personnel files, where relevant or reasonably calculated to lead to the discovery of relevant evidence, are discoverable." ***Scott v. Leavenworth Unified Sch. Dist. No. 453***, 190 F.R.D. 583, 585-86 (D.Kan.1999). There are a number of circumstances in which personnel records are considered relevant.  "[P]ersonnel files of. . . employees who plaintiff claims were hired or promoted in discriminatory preference over him" are discoverable because "[t]he qualifications and job performance of these employees in comparison with the plaintiff's qualifications and performance is at the heart of this controversy." ***Weahkee v. Norton***, 621 F.2d 1080, 1082 (10th Cir.1980) (reversing denial of such discovery as prejudicial).

When there is an issue of disparate discipline arising from violation of a work-rule or policy, discovery will usually be allowed as to any other disciplinary records of persons holding the same job title, or as persons in different job titles, committing the same offense.  ***Cf. English v. Colo. Dept. Of Corr***., 248 F.3d 1002, 1011 (10th Cir.2001) ("When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; however, the violations must be of comparable seriousness."); ***Munoz v. St. Mary-Corwin Hospital***, 221 F.3d 1160, 1169 (10th Cir.2000) (intern terminated for misconduct, discovery allowed as to all disciplinary records of other interns). ***See also Coughlin v. Lee***, 946 F.2d 1152, 1158 (5th Cir.1991) ("The plaintiffs sought discovery of the personnel files of. . . employees who had arguably been guilty of a variety of infractions more serious

11

than those committed by plaintiffs, but who nevertheless were not discharged by Lee. [This] is clearly relevant in considering pretext [and] the district court's limitation of discovery constituted an abuse of discretion.").

Similarly, personnel documents of decisionmakers are relevant.  "If. . . the individual is alleged to have engaged in the discrimination or harassment at issue or played an important role in the employment decision or incident that gives rise to the lawsuit, the personnel file will be considered relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable."  *McCoo v. Denny's Inc*., 192 F.R.D. 675, 687 (D.Kan.2000) (collecting cases and noting that production is required when the individual is an of "key witnesses", persons who "played important roles in the employment decisions affecting plaintiff", were of the "alleged harasser", the "employer's chief executive officer", or persons "involved in, witnessed, or failed to report" the harassment (from 192 F.R.D. 687-88)).  While such discovery is limited by normal considerations of burdensomeness and relevancy, such files are not subject to any privilege.  *Krenning v. Hunter Health Clinic, Inc*., 166 F.R.D. 33, 35-36 (D.Kan.1996) ("defendants have failed to demonstrate that personnel files, in general, are protected by any federal or state privilege [and] [i]n the absence of a recognized privilege, the personnel files must be produced.").

## ii. The Requests Are Appropriately Limited

Both requests are appropriately limited in both temporal and geographic scope.

As to temporal scope, Req. Prod. No. 10 is limited to persons who were part of a residency program between January 1, 2014 and the present.  Req. Prod. No. 11 is similarly limited to residents in a residency program between January 1, 2013 and the present.  Here, the alleged discrimination occurred over a period of more than a year, beginning (to Plaintiff's knowledge) around early 2014 when Dr. Cotton began musing about Plaintiff having a mental disability and extending to September 2016 when Dr. Cotton refused to credit Plaintiff with having successfully completed twelve monthly rotations.  *See* Third Amended Complaint, Dkt. 197, paras. 25-85.  Even if the discrimination consisted of a single, discrete act, such as a termination (rather than ongoing discrimination over years), courts generally allow discovery of a five-year period. ***See Manning v. GM***, 247 F.R.D. 646, 652-653 (D. Kan. 2007):

> "With regard to temporal scope, discovery of information both before and after the liability period within [an employment discrimination] lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period." Here, the Court finds information from the three years prior and two years after the October 2005 liability period is relevant to Plaintiff's claims in that such information may also lead to the discovery of admissible evidence regarding similarly situated employees."

Footnotes omitted.  ***See also Chicano Police Officer's Ass'n v. Stover***, 526 F.2d 431, 438-39 & n. 6 (10th Cir.1975) (compiling cases indicating a five-year period was generally reasonable and proper).

Accordingly, the temporal scope is reasonable.

13

The requests are also reasonably limited in geographic scope.   Req. Prod. No. 10(A) and 11 are limited to those in the same residency program as the Plaintiff, which was supervised by Drs. Cotton and Alexopulos (the alleged decisionmakers).  Req. Prod. No. 10(B) and (C) are limited to residents supervised by the decisionmakers (also Cotton and Alexopulos).  This is well within the temporal scope of discovery adopted by courts in this district.

**WHEREFORE**, Defendant should be compelled to supplement its response to Req. Prod. Nos. 10-11.

### C. Joint Employer/Integrated Enterprise (Req. Prod. Nos. 20-21)

Plaintiff seeks documents relevant to determining whether this Defendant is a joint employer and/or integrated enterprise with one or more of the other Employer/School defendants.  The requests at issue, and Defendant's responses thereto, are set out below:

> **REQ PROD NO. 20:**[5] Produce the W-2 forms and pay stubs for:
> A.  All persons who made the final decision to terminate the Plaintiff;
> B.  Al persons who participated in the final decision to terminate the Plaintiff;
> C.  Dr. Lora Cotton;
> D.  Dr. Jenny Alexopulos; and
> E.  Sunny Benjamin.
>
> **RESPONSE TO NO. 20:** Defendant objects to this request because it is overbroad and not proportional to the needs of the cases, and because it seeks the private personal information of third parties and seeks information which is not relevant.
>
> **REQ PROD NO. 21:** Produce:

---

[5] Plaintiff offered (and still agrees) to allow Defendant to redact all portions of the W-2 forms and pay stubs except for the names of the employee and employer.

    A.      Defendant's OESC Quarterly Reports for the years 2013 through the present;

                              \* \* \*

    C.      Any contracts/agreements for services related to the Residency Program between you and:

        a.      Defendant Board of Regents for the Oklahoma Agricultural & Mechanical Colleges, *ex rel*., Oklahoma State University Center for Health Sciences;

        b.      Mercy Health;

        c.      Mercy Health Oklahoma Communities, Inc., d/b/a Mercy Health System;

        d.      Oklahoma State University Medical Authority; and/or

        e.      OSUMC Professional Services;

                              \* \* \*

**RESPONSE TO NO. 21:** Defendant objects to this request because it is overbroad and not proportional to the needs of the case, and because it seeks information which is not relevant.

Ex 1 Def Resp, pgs. 13-14.

The requested information is relevant to determine whether this Defendant is an integrated enterprise or joint employer with the one or more of the other Employer/School defendants.

The Tenth Circuit uses two separate tests to determine joint employer and integrated enterprise status. ***See Bristol v. Bd. of County Comm'rs***, 312 F.3d 1213, 1218 (10th Cir. 2002)(discussing two tests). In determining whether two entities constitute a single employer, the Tenth Circuit analyzes the following factors:

The single-employer test rests on four factors: (1) interrelation of operations; (2) centralized control over labor relations; (3) common management; and (4) common ownership or financial control. ***See*** [***Frank v. West, 3 F.3d***] at 1362. All four factors, however, are not necessary for single-employer status. Rather, the heart of the inquiry is whether there is an absence of an arm's-length relationship among the companies. ***See, e.g., Swallows v. Barnes & Noble Book Stores, Inc***., 128 F.3d 990, 996 (6th Cir. 1997); ***Lihli Fashions Corp. v. NLRB***, 80 F.3d 743, 747 (2d Cir. 1996).

***Knowlton v. Teltrust Phones, Inc***., 189 F.3d 1177, 1184 (10th Cir. 1999).

> Under the joint employer test:

> two entities are considered joint employers if they "share or co-determine those matters governing the essential terms and conditions of employment." [***Bristol v. Bd. of Cty. Comm'rs***, 312 F.3d 1213, 1215 (10th Cir. 2002)] (quotations omitted). Both entities are employers if they both "exercise significant control over the same employees." ***Id***. (quotations omitted). "An independent entity with sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer within the scope of Title VII." ***Sizova***, 282 F.3d at 1330 (quotations omitted).

***Knitter v. Corvias Military Living, LLC***, 758 F.3d 1214, 1226 (10th Cir. 2014).

The issuer of paychecks and W-2 forms, and the entity holding itself out as Plaintiff's employer on paychecks and W-2 forms, is relevant to the interrelation of operations under the single employer test. ***Frank v. U.S. West, Inc***., 3 F.3d 1357, 1363 (10th Cir. Colo. 1993)("***See McKenzie***, 834 F.2d at 933-34 (parent's operations were interrelated with those of subsidiary when parent kept subsidiary's books, issued its paychecks, and paid its bills).

Similarly, OESC Quarterly Reports identify the employer and those employees employed by the employer during the relevant three-month period (quarter). Accordingly, they are relevant to determining which Defendant holds itself out to the State of Oklahoma as being the Plaintiff's employer. OAC § 240:10-5-91 ("Each employer shall report both contributions and "wages paid" (as defined in OAC 240:10-1-2) on Form OES-3, Employer's Quarterly Contribution and Wage Report, for each quarterly period in which said employer is subject to the Employment Security Act of 1980 on or before the last day of the month following the calendar quarter to be reported.").

16

Finally, documents related to services performed by, or on behalf of, each Defendant are relevant to both the joint employer and integrated enterprise tests. Factors showing an integrated enterprise include whether the "parent corporation pays subsidiary's salaries, expenses or losses", *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1364 (10th Cir. Colo. 1993), when the entities had "common employees . . . common advertising" and "shared services, equipment, employees and office space". *Id*.

**WHERFORE**, Defendant, OSUMT, should be compelled to supplement its responses to Req. Prod. Nos. 20 and 21.

**RESPECTFULLY SUBMITTED THIS 20<u>th</u> DAY OF NOVEMBER, 2018**.

HAMMONS, GOWENS, HURST
& ASSOCIATES

s/ Amber L. Hurst
Mark Hammons, OBA #3784
Amber L. Hurst, OBA # 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
amber@hammonslaw.com
*Counsel for Plaintiff*

17

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 20th day of November, 2018.

Lauren J. Ray, OBA # 22694
Kari Hawkins, OBA # 19824
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-4274
Facsimile: (405) 521-4518
Email: lauren.ray@oag.ok.gov
        kari.hawkins@oag.ok.gov
*ATTORNEY FOR DEFENDANT,*
Oklahoma State University
Medical Authority

Mitchell D. Blackburn, OBA #12217
Connor & Winters, LLP
119 N. Robinson, Suite 1700
Oklahoma City, OK 73102
(405) 272-5711 (telephone)
(405) 232-2695 (facsimile)
mblackburn@cwlaw.com

and

Hilary L. Velandia, OBA #21854
Connor & Winters, LLP
mailto:mblackburn@cwlaw.com4000 One
Williams Center
Tulsa, OK 74172
(918) 586-5693 (telephone)
(918) 586-8649 (facsimile)
hvelandia@cwlaw.com
*ATTORNEYS FOR DEFENDANT,*
CommunityCare HMO, Inc.

James K. Secrest III, OBA No. 8049
Edward J. Main, OBA No. 11912
Secrest Hill Butler & Secrest
7134 S. Yale Ave., Suite 900
Tulsa, Oklahoma 74136
Email:
mailto:jsecrest@secresthill.comjsecrest3
@secresthill.com
emain@secresthill.com
Telephone: (918) 494-5905
Facsimile: (918) 494-2847
*ATTORNEYS FOR DEFENDANT,*
Leslie Barnes, PhD.

Adam W. Childers, OBA No. 18673
Allen Hutson, OBA No. 30118
Crowe & Dunlevy
Braniff Building
324 N. Robinson Ave., Ste. 100
Oklahoma City, OK 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
Email: adam.childers@crowedunlevy.com
        allen.hutson@crowedunlevy.com
*ATTORNEYS FOR DEFENDANTS*
JENNY ALEXOPULOS AND LORA
COTTON

Nathan Whatley, OBA No. 14601
Philip R. Bruce, OBA No. 30504
Mike Lauderdale, OBA No. 14265
Kristin M. Simpsen, OBA No. 22302
McAFEE & TAFT
A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
Email: Nathan.whatley@mcafeetaft.com
Philip.bruce@mcafeetaft.com
Mike.lauderdale@mcafeetaft.com
kristin.simpsen@mcafeetaft.com
*ATTORNEYS FOR DEFENDANTS,*
Oklahoma State University Medical
Center, Deborah Nottingham, Sunny
Benjamin, Mercy Health Oklahoma
Communities, Inc., Mercy Health,
Oklahoma State University Medical
Trust and OSUMC Professional
Services, LLC

Stephen R. Stephens, OBA # 10479
Michael Scott Fern
Clinton W. Pratt
Board of Regents for the Oklahoma
Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Oklahoma State University
Stillwater, OK 74078-7044
(405) 744-6494; Fax: (405) 744-7998
steve.stephens@okstate.edu
msfern@okstate.edu
clint.pratt@okstate.edu
*ATTORNEYS FOR DEFENDANTS*
Board of Regents for the Oklahoma
Agricultural & Mechanical Colleges, *ex rel.,*Oklahoma State University Center
for Health Sciences, Lora Cotton, D.O.,
and Jenny Alexopulos, D.O.

s/Amber L. Hurst