## Dr. Jeffrey Snyder – Summary of Events

| Date | Event or Action |
|---|---|
| 04/23/14 | • Dr. Cotton notified (in writing) Dr. Snyder of terms of his academic probation<br>• Dr. Snyder acknowledged the terms of academic probation |
| 04/29/14 | • Dr. Cotton notified HR of concerns regarding Dr. Snyder's academic performance<br>• HR reviewed terms of academic probation and advised that the requirement to participate in neuropsychiatric testing would not be the best option. Recommended that Dr. Snyder instead, be required to participate in an EAP Supervisory Referral. |
| 04/30/14 | • Meeting in HR - Dr. Cotton, Dr. Snyder, Deby Nottingham<br>• Dr. Cotton advised Dr. Snyder that he would be required to attend EAP Referral as a condition of his continued participation in the Residency Program/employment as resident<br>• Dr. Snyder agreed to attend EAP- first session scheduled for later this same day |
| 05/06/14 | • Dr. Snyder attended a second session at the EAP<br>• EAP referred Dr. Snyder - Fitness for Duty eval. - Dr. Leslie Barnes, Psycholgist |
| 05/22/14 | • Dr. Snyder met with Dr. Barnes for initial assessment, and scheduled appointment for testing on 05/28/14 |
| 05/27/14 | • Dr. Snyder cancelled his appointment for testing with Dr. Barnes, stating he could not miss work to attend the session<br>• HR notified Dr. Cotton of Dr. Snyder cancelling his appointment. Dr. Cotton contacted Dr. Snyder to see why he cancelled. He told her he felt that his rotation was more important than the testing. Dr. Cotton advised him that participation was his number one priority. Dr. Snyder told Dr. Cotton that he had rescheduled the appointment for the following week. |
| 06/12/14 | • Dr. Snyder attended the testing session with Dr. Barnes |
| 06/20/14 | • EAP notified HR that Dr. Barnes had requested permission from Dr. Snyder to speak with Dr. Cotton so that she could get Dr. Cotton's version of the events – because the EAP had provided only a summary of Dr. Cotton's concerns, not specific instances. Dr. Snyder refused to give permission for Dr. Barnes to speak with Dr. Cotton. Dr. Barnes advised Dr. Snyder that if he would not allow her to speak with Dr. Cotton, she would forward the report as is.<br>• Dr. Cotton stated that Dr. Snyder told her that he had already given release for Dr. Barnes to contact her (which was not the case). |
| 06/24/14 | • Dr. Barnes notified the EAP that she had explained the need for release to Dr. Snyder on several occasions but that he still refused to allow her to discuss with Dr. Cotton<br>• EAP advised HR that we should go ahead and accept the report as written since Dr. Snyder would not allow Dr. Barnes to contact Dr. Cotton |
| 06/24/14 | • Dr. Snyder delivered a letter to HR, indicating that he has authorized Dr. Barnes to release information to the EAP and to HR only. He stated that he authorized HR to only provide Dr. Cotton with final status regarding being fit for duty, returning to work, and completion of the EAP requirements. |
| 06/25/14 | • HR received fax copy of report from Dr. Barnes. The recommendation from Dr. Barnes was that Dr. Snyder participate in counseling to address issues of defensiveness and difficulty in admitting to personal shortcomings, etc. Dr. Barnes indicated she would benefit from more specifics from Dr. Cotton |

1

| | |
|---|---|
| 06/30/14 | • EAP sent additional information to Dr. Barnes giving specific instances of Dr. Snyder's errors in patient care, which were provided by Dr. Cotton, since Dr. Snyder would not allow Dr. Barnes to contact Dr. Cotton directly. |
| 07/01/14 | • HR sent additional information about new instances of Dr. Snyder's patient care errors that had occurred since the first report to Dr. Barnes. |
| 07/02/14 | • Dr. Barnes sent fax to HR, stating that in her professional opinion, Dr. Snyder is not fit to provide medical treatment to patients at this time. |
| 07/03/14 | • Meeting in HR, attended by Dr. Cotton, Dr. Alexopulos, Dr. Snyder, Sunny Benjamin, and Deby Nottingham<br>• Dr. Cotton advised Dr. Snyder that based on Dr. Barnes' assessment that he is not "fit for duty", that Dr. Snyder would be granted a 3-month paid leave of absence in order for him to participate counseling as directed by the EAP. Participation was mandatory as a condition of employment. Dr. Snyder was given instruction to contact EAP to schedule the counseling sessions.<br>• Dr. Snyder requested a copy of the report provided by Dr. Barnes. Dr. Cotton stated that it would be inappropriate for HR to give him the medical records, and that he should contact Dr. Barnes for a copy.<br>• Dr. Snyder signed to acknowledge that he had read and understood the academic Probation letter.<br>• Approximately one hour after this meeting, Dr. Snyder returned to HR to speak with Deby Nottingham. He again requested a copy of the report from Dr. Barnes. Deby repeated the same information given to him by Dr. Cotton earlier – that it would be inappropriate for us to give him the report, as he would most likely have questions about Dr. Barnes' findings – that he should discuss with her.<br>• HR tried to reach Dr. Barnes by phone. Unable to reach her, HR left a message for Dr. Barnes asking her to provide a copy of the report to Dr. Snyder in her next appointment with him, which was scheduled for 07/09/14<br>• Later that afternoon, Dr. Snyder emailed HR to request a copy of the report once again. HR advised him to contact Dr. Barnes office for a copy of the report. |
| 07/10/14 | • EAP sent HR an email to let us know that they are still in the process of trying to arrange an in-network referral for counseling for Dr. Snyder. EAP also indicated that Dr. Snyder had asked the EAP for a copy of the report. The EAP did not feel comfortable releasing the report, and advised him to contact Dr. Barnes. The EAP did say that Dr. Barnes felt she could only release the report to OSUMC since she was working for us. (She apparently had not received the message from HR asking for her to release to report to Dr. Snyder.) HR requested that EAP confirm to Dr. Barnes that we would like for her to release and go over the report with Dr. Snyder. |
| 07/14/14 | • HR left another message for Dr. Barnes, asking her to please release the report to Dr. Snyder<br>• Dr. Barnes called HR. She stated that she no longer felt comfortable speaking with Dr. Snyder unless there was a representative from OSU in attendance. She asked that I contact EAP for information regarding her 07/10/14 appointment with Dr. Snyder. |
| 07/15/14 | • EAP shared Dr. Barnes concerns from her 07/10/14 meeting with Dr. Snyder. Dr. Barnes stated that Dr. Snyder had many pages of single lined paper which listed all of the reasons her report was wrong, he asked her to "un-do" the evaluation, he told her that he HAD given permission for her to speak with Dr. Cotton, but when |


Case 5:16-cv-00384-F   Document 341-60   Filed 10/05/19   Page 3 of 3

|  | |
|---|---|
|  | Dr. Barnes asked him to sign the Release of Information form, he refused to do so. She stated that Dr. Snyder's behavior was "argumentative". (These are some of the reasons Dr. Barnes states she is no longer comfortable meeting with Dr. Snyder alone.) |
| 07/16/14 | • Dr. Barnes faxed HR a letter stating she received a letter from Dr. Snyder's attorney, rescinding previous authorization for her to speak with HR. |
| 07/17/14 | • EAP notified HR that Dr. Snyder did attend his 07/16/14 appointment to establish his counseling referral. However, he stated that he had moved back to Edmond, and requested a new referral to an network provider in that area. |
| 07/25/14 | • EAP called HR to inform us that they received a document from Dr. Snyder's attorney. EAP would be putting the case for Dr. Snyder "on hold" until review from their own legal counsel. |
| 07/28/14 | • OSUMC received a copy of the letter Dr. Snyder's attorney sent to EAP requesting Copies of all documents related to Dr. Snyder and revoking authorization for disclosure of additional information from that point. |

CONFIDENTIAL          OSUMC_01344

EXHIBIT 60