

**COLLEGE OF**
Osteopathic Medicine

CENTER
JR HEALTH
SCIENCES

**Department of Family Medicine**
**Family Medicine Residency**

OSU Health Care Center
2345 Southwest Boulevard
Tulsa, Oklahoma 74107-2705

(918) 561-8395
FAX (918) 561-8525

April 22, 2014

Jeffrey Snyder, D.O.
2345 Southwest Blvd.
Tulsa, OK 74107

Cc: Jenny Alexopulos, D.O, Joan Stewart, D.O.,

Jeffrey,

As per our recent conversation, this letter is formal notification that you will be placed on academic probation for a period of 3 months, beginning May 1, 2014 and ending July 31, 2014. This is an academic probation resulting from a failure to attain a proper level of scholarship and non-cognitive skills, including judgment, clinical abilities, maturity and professionalism. Promotion from OGME 1 status to OGME 2 status is based on achieving a level of competency such that you can safely have a state medical license, practice medicine without assigned back up by a licensed physician and provide backup to unlicensed first year residents. During your recent rotation on the Family Medicine Teaching Service, your clinical performance revealed deficiencies that show you have not achieved a level of competency that supports progression to OGME 2 level or approval for a state medical license. Specific examples of these deficiencies include:

1. On the night of 3/17/14, you admitted a 28 year old male brought in for altered mental status.  You ordered Ativan 2 mg IV later that night. No assessment or indication was documented for giving this medication.  When I did rounds on 3/18/14, the patient was heavily sedated and remained so throughout the day.  I met with you in person in the evening of 3/18/14 and spoke to you about this situation.  I provided education about not giving benzodiazepines or other sedating medications to patients with altered mental status.  I told you that you must assess the patient and document that assessment before giving any high-risk medications. I instructed you to not give this particular patient any further benzodiazepines.  That very night you ordered Restoril 15 mg PO without writing an assessment in the chart, which is directly contrary to the instructions and education that I had just provided.  I spoke to you again on 3/19/14 and discussed this situation.  You explained your actions by saying you thought I told you to give the patient benzodiazepines orally.  You didn't explain why you hadn't documented as assessment.

**EXHIBIT 1**

**THE STATE'S UNIVERSITY**

2. On the night of 3/17/14, you were called by a floor nurse about a patient on the general medical floor who was having bradycardia on telemetry.  You gave a verbal order "call if heart rate is less than 40."  No evaluation of the patient was documented.  No other orders were given.  You did not recognize the importance of this abnormal vital sign.  Further assessment was warranted and at this point in your training it is expected that you would recognize the importance of bradycardia and respond appropriately.

3. On 3/17/14, you were instructed by an OGME 2 resident on the team to dismiss a patient who was admitted and treated for pseudo-seizures.  The OGME 2 resident instructed you to call her if there were any problems with the dismissal.  You did not dismiss the patient and you did not call the OGME 2 resident regarding any issues with the dismissal.

  4. On the night of 3/18/14, you admitted a 54 year old female for a complaint of what appeared to be syncope or a seizure.  Her tilt vital signs in the ED were positive.  You ordered Ambien and opiate pain medication for this patient.  This was again contrary to education I had given you in our face to face meeting earlier in the evening of 3/18/14 – to not give sedating medications to people who are altered or unstable.

5. On 3/18/14 a patient was admitted by the day team for seizure.  The resident who admitted the patient gave you specific instructions to not give this patient any sedating medications due to altered mental status from a postictal state.  That evening you gave the patient Norco without documenting that you assessed the patient.  When the admitting resident asked about this decision the next day, you gave the reason that "the nurse said the patient was fine."

6. On 3/18/14 you admitted a patient for acute exacerbation of COPD.  She also had a diagnosis of diabetes which was treated with oral medications.  Her admission glucose was 174.  You put the patient on Lantus 40 units once daily.  When I asked you why you did this you said you weight-basing this medication, and stopped her oral medications.  This is a large dose of Lantus for a patient who has never been on insulin before.  She did not have an indication for insulin at the time of her admission.  At this point in your training, it is expected that you would have a better working knowledge of appropriate use of insulin and a respect for the dangers of hypoglycemia. The resident who took over the case in the morning noticed that this was an inappropriate medication and stopped it before a dose of Lantus was given.

7. On 3/20/14 a rapid response was called on a 79 year old female who had just been admitted for abdominal pain.  The rapid response was called for bradycardia.  You did assess the patient and you did write a note.  You did not call your backup resident or attending physician regarding this change in patient status.  At this point in your training, you should know to call your backup resident and the attending physician regarding sudden changes in status, especially  when these changes result in a rapid response.

These examples reveal patterns of behavior that place patients at risk.  You repeatedly make clinical decisions that are in direct opposition to education or instructions just provided to you

by supervising physicians.   You repeatedly give verbal orders without assessing the patient when nurses called with concerns about changes in patient status.  You do not seem to recognize the seriousness or acuity of a situation and do not call your backup resident, and you do not respond appropriately when patients are becoming unstable.   You display a deficit in knowledge and judgment related to prescribing high risk medication, such as benzodiazepines, opiates and insulin.  As Program Director, I have determined that these deficiencies are detrimental to patient care and so warrant immediate probation.

Specific requirements of your probation are listed under the separate document titled Academic Probation Requirements Plan.

During this probation, you will be classified as an OGME 1.  Near the end of the 3 month probationary period the faculty members of the Family Medicine Department will meet as a resident advisory council to determine your residency status based on your level of clinical performance and your participation in the specific requirements listed in the Academic Probation Requirements Plan.  At the conclusion of this 3 month probation, one of three actions will be taken based on your clinical performance during this probationary period.  These three actions include release from probation, continuation of probation or termination of your residency training contract. You will be notified of this action verbally and in writing.

This letter will be presented to the Graduate Medical Education office at OSU Medical Center. You have the right to appeal this probation decision as described in the Resident Handbook.  If you decide to appeal, please respond in writing to me and to the office of Graduate Medical Education at OSU-MC.

Respectfully,

4/23/14

Lora Cotton, D.O.
Vice Chair, Department of Family Medicine
Program Director, Family Medicine Residency Program
Associate Professor of Family Medicine
Oklahoma State University, Center for Health Sciences

4/23/14

the content but do not fully agree with the above information in this letter.

I have read and understand this academic probation letter. _Jeffrey Snyder, D.O._

Jeffrey Snyder, D.O.

CONFIDENTIAL          PLF SNYDER 00161



**COLLEGE OF**
Osteopathic Medicine

CENTER
JR HEALTH
SCIENCES

**Department of Family Medicine**
**Family Medicine Residency**

OSU Health Care Center
2345 Southwest Boulevard
Tulsa, Oklahoma 74107-2705

(918) 561-8395
FAX (918) 561-8525

April 22, 2014

Re:  Academic Probation Requirements Plan for probation period May 1, 2014 – July 31, 2014

Dr. Snyder,

Here are the specific requirements you must meet during this probationary period:

1. You will remain in OGME 1 status until you successfully complete the requirements of this academic probation.

2. Because clinical judgment in the hospital setting presents the greatest challenge for you, you will rotate on FM teaching service in June and July of 2014.

3. You will have in-house backup when you are on call in the hospital.  You are to perform all of the on call resident functions.  Your in-house backup resident is to review your work to assure safe patient care.  The backup resident will ensure that you make safe patient care decisions when patients become unstable.

4. You will carry out all instructions, directions and orders presented to you by supervising physicians, including residents and attending physicians.  If you feel that you cannot safely follow these directions, you will voice your concerns to the supervising physician immediately.

5. When a nurse calls you with a concern about the status of a patient, you will examine the patient and document your assessment and decision making in the medical record.

6. When there is a change in patient status, such as unstable vital signs or altered mentation, you will call your backup resident and attending physician to discuss your plan of treatment.

7. You will not prescribe sedating medications to patients who have altered mental status, low blood pressure or bradycardia.  When you are considering prescribing a sedating medication, you are to refer to prescribing guidelines to review side effects and contraindications.  You will then discuss your decision making process with a supervising physician before prescribing the medication.

# THE STATE'S UNIVERSITY

**CONFIDENTIAL**          **PLF SNYDER 00162**

8. You will schedule one hour academic discussions every other week with one of the following attending physicians: Dr. Cotton, Dr. Hall, Dr. Thurman, or Dr. McEachern. It is your responsibility to work with these attending physicians to schedule these academic discussions. You and the attending physician will agree on an assigned reading that addresses the selected subject. You will address the following subjects:

   a. Proper prescribing of high risk medications including benzodiazepines, opiate pain medications, and sleep medications
   b. Workup and treatment of acute altered mental status
   c. Workup and treatment of bradycardia
   d. Workup and treatment of hypotension
   e. Workup and treatment of seizure and postictal state
   f. Indications and proper prescribing of insulin

9. You will voluntarily undergo neuropsychiatric testing to assess for a component of a behavioral health, auditory processing or other neurologic disorder that could be impairing your ability to attain the level of competence required for progression in residency training. It is your responsibility to arrange for this assessment. You are required to provide documentation from the neuropsychiatric specialist that testing was completed.

10. You will meet once weekly with Dr. Cotton to discuss your progress in meeting these requirements.

Respectfully,

_Lora Cotton_ 4/23/14

Lora Cotton, DO
Program Director
OSU Family Medicine Residency Program

I have read and understand the academic probation requirements. _Jeffrey Snyder, D.O._ 4/23/14

Jeffrey Snyder, D.O.

CONFIDENTIAL