*CONFIDENTIAL*
*EXECUTION COPY*

## MANAGEMENT SERVICES AGREEMENT

THIS MANAGEMENT SERVICES AGREEMENT ("Agreement") is made and entered into as of the 1st day of May, 2014 ("Effective Date"), by and between MERCY HEALTH OKLAHOMA COMMUNITIES, INC. ("Mercy") and the OSU MEDICAL TRUST ("OSUMT"). Mercy and OSUMT may hereafter be referred to individually as a "Party" and collectively as the "Parties." The term "Affiliate" means, with respect to a Party, any other person or entity that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Party.

### RECITALS

WHEREAS, Mercy operates an integrated health delivery system that includes hospitals, physician clinics and other ancillary services providers throughout the State of Oklahoma;

WHEREAS, the Oklahoma State University Medical Authority ("OSUMA"), a state agency created pursuant to Title 63, Oklahoma Statutes, Sections 3271-3293 (the "OSUMA Act"), owns the real property and improvements comprising the hospital in Tulsa, Oklahoma, known as the OSU Medical Center (the "Medical Center"), which is an osteopathic teaching hospital affiliated with OSU Center for Health Sciences; and

WHEREAS, OSUMA leases the real property comprising the Medical Center to OSUMT, an Oklahoma public trust created pursuant to the OSUMA Act, and OSUMT operates the Medical Center; and

WHEREAS, the duly appointed members of OSUMA also serve as the Trustees of OSUMT, and as the Board of Trustees (the "Board") constitute the governing body of OSUMT with full power and authority to operate the Medical Center; and

WHEREAS, Mercy is experienced in various phases of hospital management and operation and maintains a skilled staff for the purpose of advising and managing hospitals; and

WHEREAS, the Medical Center has an immediate need for executive management officers and management services, and the Board has determined that it is in the public interest to obtain the managerial and operational expertise of Mercy as interim manager of the Medical Center, pending negotiation or consummation of further transactions contemplated by the Parties, on the terms and conditions set forth in this Agreement; and

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises, the representations, mutual covenants and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Parties hereto covenant and agree as follows:

**EXHIBIT 64**

1. Description of Services.

    (a) Authority; Services. The Board hereby grants to Mercy the sole and exclusive right to supervise and direct the management and operation of the Medical Center in the name, for the account, and on behalf of the Board pursuant to the terms and conditions set forth in this Agreement and subject to the oversight of the Board. Mercy accepts such grant, and Mercy will perform the responsibilities set forth in this Agreement. Except for matters expressly reserved to the Board in this Agreement or that remain the responsibility of the Board under applicable law, Mercy shall have full power and authority to administer, manage, control, and operate the business and affairs of the Medical Center in whatever reasonable manner Mercy deems appropriate to meet the day-to-day requirements of the Medical Center, in material accordance with this Agreement and consistent with the Approved Budgets (as defined in Section 2(a)(ii)) and subject in all respects to the policies and directives established from time to time by the Board. Subject to the terms and provisions of this Agreement, Mercy shall (or shall cause its Affiliates to) provide to Medical Center the services (the "Services") set forth on Exhibit A hereto, which may be amended by the mutual agreement of the Parties in writing from time to time as provided in Section 1(b) (the "Schedule of Services"). In performing the Services, Mercy will act in good faith and with commercially reasonable diligence.

    (b) Purchase of Additional or Modified Services. From time to time, the Board (or its Chair under authority granted by the Board) may request that Mercy provide additional or modified Services that are not described on the Schedule of Services or that the Schedule of Services be modified in other respects. Mercy shall use commercially reasonable efforts to accommodate any reasonable requests by the Board (or its Chair) to provide additional or modified Services. In order to initiate a request for additional or modified Services, the Board (or its Chair) shall submit a request in writing to Mercy specifying the nature of the additional or modified Services and requesting a cost estimate and time frame for completion. Mercy shall respond promptly to such written request. If the Board (or the Chair) accepts Mercy's offer to provide the additional or modified Services, the Parties shall document the terms in writing, signed by both Parties, and incorporate herein as an amendment to the Schedule of Services. Any additional or modified Services shall be provided according to the terms of this Agreement except as otherwise provided in the Schedule of Services and shall be or become a part of the Services hereunder.

2. Responsibilities of the Board and Medical Center.

    (a) Board Approval and Oversight. The Board shall exercise, throughout the Term (defined below), legal authority, supervision, direction and control over the business, policies, operation, and assets of the Medical Center. The Board shall retain all authority and responsibility regarding the powers, duties, and responsibilities vested in OSUMT in its Declaration of Trust and applicable laws and regulations. Nothing in this Agreement is intended to alter, dilute, displace or modify the responsibility of the Board for direction and control of OSUMT's assets, including the Medical Center, as set forth in OSUMT's governance documents. Without limiting the generality of the foregoing, the Board shall retain responsibility for the following functions and duties:

MERCY_00002

(i) Conduct regular meetings for the purpose of oversight, at which time it will review the operations of the Medical Center and advise itself concerning the Medical Center's financial, legal and physical condition;

(ii) Approve the annual capital and operating budgets for the Medical Center (the "Approved Budgets");

(iii) Determine the general operating policies and major policy matters concerning the overall operation of the Medical Center;

(iv) Have oversight responsibility for the medical, professional and ethical affairs of the Medical Center;

(v) Be responsible for the signing and filing of all cost reports, tax returns and other corporate legal documents required to be filed by Medical Center;

(vi) Serving as the governing body that is legally responsible for the operations of the Medical Center and doing all things necessary for the Board to perform its obligations as required by applicable Legal Requirements, including, without limitation, exercising governance authority over the medical staff, medical staff bylaws, rules and regulations, quality of care, telemedicine services, contracted services, and other matters required by applicable Legal Requirements to be performed by the governing body of the Medical Center; and

(vii) Oversee maintenance of appropriate insurance coverages for the Medical Center, including those required by this Agreement.

(b) Financial Responsibility. All expenses required for the operation of the Medical Center shall be paid with Medical Center funds. Mercy shall have no responsibility to provide any funding for Medical Center. As part of the Services, Mercy will assist in the development of capital and operating budgets for the Medical Center for consideration and approval by the Board. Mercy will operate the Medical Center in accordance with the Approved Budgets, but Mercy shall have no obligation to provide funds or otherwise pay for any goods, services, equipment, facilities, audits, personnel, or other liabilities of the Medical Center. Mercy will not, by entering into and performing this Agreement, become liable for any current, present or future obligations, liabilities, or debts of OSUMT or the Medical Center. Mercy will apply the general revenues of the Medical Center to the operation and management of the Medical Center in accordance with the Approved Budgets. To the extent of available funds, OSUMT will timely provide all funds necessary for the ongoing operation of the Medical Center, including all operating expenses, capital expenditures, and maintenance and repair of facilities and equipment necessary for the operation of the Medical Center, including those items contemplated in the Approved Budgets and emergency expenditures that are necessary for the continued operation of the business. If the general revenues of and/or other funds available and specifically earmarked for the Medical Center are insufficient to meet the operating costs of the Medical Center, to include the purchase of medical and other equipment deemed necessary for the efficient operation of the Medical Center, Mercy may request that the Board provide adequate working capital necessary for the successful operation

MERCY_00003

of the Medical Center and the Board will use its best efforts to fund such requests to the extent funds are available.

(c) <u>Compliance with Law</u>. Notwithstanding any Services provided by Mercy or its officers, employees and agents on behalf of Medical Center, the Medical Center and its Board shall remain legally liable and responsible for the accuracy of all claims, filings, reports, and other submissions made to Governmental Authorities and third party payers and for the resolution of all issues involving the Medical Center's compliance with Legal Requirements, including, without limitation, the filing and resolution of all cost reports and all losses or liabilities arising out of compliance with Legal Requirements (including attorneys' fees and consultant, audit or investigation fees). Mercy will promptly report to Board any known instances of noncompliance with applicable Legal Requirements. In providing services, Medical Center and the Board acknowledge and agree that Mercy has no duty to review all aspects of the Medical Center's operation to determine compliance with applicable Legal Requirements, but Mercy will assist the Medical Center and the Board with reviewing instances of potential noncompliance of which Mercy becomes aware. For purposes of this Agreement: (i) "Legal Requirements" means all statutes, ordinances, bylaws, codes, rules, regulations, policies, manuals, advisory opinions, official guidance and interpretations, local coverage determinations and national coverage determinations of any Governmental Authority, and any restrictions, judgments, orders, writs, injunctions, decrees, determinations, or awards of any Governmental Authority, having jurisdiction over a Party or its assets or businesses; and (ii) "Governmental Authority" means all agencies, authorities, bodies, boards, commissions, courts, instrumentalities, legislatures, and offices of any nature whatsoever of any federal, state, county, district, municipal, city, or other government or quasi-government unit or political subdivision.

3. <u>Term</u>. The term of this Agreement shall commence on the Effective Date and, unless terminated earlier in accordance with this Agreement, shall terminate on April 30, 2015 (the "Term").

4. <u>Termination</u>.

(a) <u>Events of Termination</u>. This Agreement may be terminated prior to expiration of the Term in accordance with the following:

(i) upon the mutual written agreement of the Parties;

(ii) by either Party, upon written notice to the other Party, if such other Party materially breaches the Agreement and such breach remains uncured for a period of ten (10) days (with respect to payment defaults) or thirty (30) days (with respect to non-payment defaults) following receipt of written notice from the non-breaching Party specifying the beach in reasonable detail. The cure period for non-payment defaults shall be extended up to a total cure period of ninety (90) days if the breaching Party has commenced a cure within the initial thirty (30)-day period and is working in good faith to cure the material breach as promptly as possible;

MERCY_00004

invoice pursuant to the terms of this Agreement. Except to the extent disputed in good faith in accordance with the further terms of this Section, Medical Center shall remit payment in full to Mercy no later than thirty (30) days from its receipt of the applicable invoice. If Medical Center in good faith disputes that all or any portion of a Mercy invoice is due and owing, on or before the applicable invoice due date, Medical Center shall: (i) pay the portion of the invoice that is not subject to such good faith dispute, (ii) notify Mercy in writing of the existence and basis for the dispute, and (iii) work with Mercy promptly and in good faith in an effort to resolve the dispute. Undisputed invoices unpaid by Medical Center forty-five (45) days after Medical Center' receipt of such invoice shall be subject to interest at the rate of one percent (1%) per month, or the maximum amount permitted by law, whichever is less.

        (c)    No Set Off. The obligations under this Agreement shall not be subject to set-off for non-performance or any monetary or non-monetary claim by any Party or any of their respective Affiliates under this or any other agreement between the Parties or any of their respective Affiliates.

        (d)    Periodic Review. Since the Services Fee is a cost-based fee, Mercy and OSUMT will meet periodically to review the Services Fee and determine if the scope of Services and allocation of resources is meeting the needs of OSUMT. The Parties will collaborate and use commercially reasonable efforts to control costs and the allocation of resources to best meet the needs of the Medical Center.

    7.    Access to Records. Mercy shall be responsible for maintaining accounts and records of all Services rendered by it pursuant to this Agreement, substantially consistent with the accounts and records maintained by Mercy in the ordinary course of its business (the "Services Information"). Mercy will, to the extent allowable under applicable Legal Requirements or required by any Governmental Authority having jurisdiction over Medical Center, afford to the representatives of OSUMT and the Medical Center and their Affiliates, legal counsel, accountants, agents and representatives, full and complete access to the Services Information and employees of Mercy and its Affiliates to the extent reasonably related to Medical Center' rights or obligations under this Agreement. Such access shall be accomplished in such a manner as to not interfere unreasonably with Mercy's business, and any copies made will be accomplished at Medical Center' expense (based on actual, out-of-pocket costs). All Mercy information to which Medical Center or their Affiliates, legal counsel, accountants, agents or representatives gain access pursuant to this Section shall be subject to the terms of the confidentiality provisions of this Agreement.

    8.    Status of Employees and Facilities; Data Access and Security.

        (a)    Employees; Status of Parties.

        (i)    Mercy will provide a Chief Executive Officer and Chief Financial Officer, reasonably acceptable to and approved by the Board, who will be employees of Mercy and accountable to Mercy, but who will provide services on a dedicated, full-time basis to Medical Center. The Board will appoint the Chief Executive Officer as the executive officer responsible for managing the entire Medical Center. Mercy may also utilize its (or its Affiliates') employees to perform Services pursuant to this Agreement. Whenever Mercy utilizes its (or its

6

Affiliates') employees to perform Services pursuant to this Agreement, such employees shall at all times remain subject to the direction and control of Mercy or such Affiliate, and OSUMT shall have no liability to such persons for their welfare, salaries, fringe benefits, legally required employer contributions and tax obligations by virtue of the relationships established under this Agreement.

(ii) Other than the Chief Executive Officer and Chief Financial Officer and any employees of Mercy that Mercy utilizes to perform the Services (collectively, "Mercy Personnel"), OSUMT shall employ all other personnel as are required for the Medical Center's operation and maintenance. OSUMT employees shall at all times remain subject to the direction and control of OSUMT, and Mercy shall have no liability to such persons for their welfare, salaries, fringe benefits, legally required employer contributions and tax obligations by virtue of the relationships established under this Agreement.

(iii) Mercy shall have sole responsibility for determining the compensatory benefits (i.e., salaries and fringe benefits) for and paying the same to Mercy Personnel, and for withholding from the compensatory benefits the income tax, unemployment insurance, social security or any other withholding as may be required by applicable law. OSUMT shall have the discretion, acting reasonably and in good faith, to request that Mercy remove, after appropriate instruction and counseling, any employee providing Services to Medical Center pursuant to this Agreement (i) whose conduct, demeanor or cooperation with co-workers is unsatisfactory to OSUMT, or (ii) whose performance continues to fall below the level required to maintain professional standards established by the Medical Center. Notwithstanding the foregoing, any removal of the Chief Executive Officer or Chief Financial Officer shall require a thirty (30) day notice and cure period.

(iv) Nothing contained in this Agreement shall create or be deemed to create an employment, agency, joint venture or partnership relationship between Mercy and OSUMT. The terms of this Agreement are not intended to cause either Party or any of its Affiliates to become a joint employer for any purpose. Each Party agrees that the provisions of this Agreement as a whole are not intended to, and do not, constitute control of the other Party (or any Affiliates thereof) or provide it with the ability to control such other Party (or any Affiliates thereof), and each Party expressly disclaims any right or power under this Agreement to exercise any power whatsoever over the management or policies of the other Party (or any Affiliates thereof), including, without limitation, with respect to employees.

(b) Equipment and Facilities. Medical Center shall provide Mercy and its Affiliates, and their respective employees, independent contractors, third-party suppliers and agents, access to Medical Center's facilities, equipment and other resources as reasonably necessary or appropriate for the performance of the Services or Mercy's other obligations under the Agreement. Medical Center shall keep its facilities and equipment in good condition and repair. Medical Center shall be responsible for any privacy or security breaches with respect to data arising out of or resulting from inadequate security measures on equipment used by Mercy and its Affiliates to provide the Services.

(c) Disaster Recovery. Medical Center agrees and acknowledges that it is solely responsible for disaster recovery arrangements for its own business operations. Mercy

MERCY_00007

shall be solely responsible for disaster recovery arrangements for Mercy's business operations, including Mercy's infrastructure and equipment used to provide the Services.

9. Indemnity.

(a) OSUMT to Indemnify Mercy. OSUMT shall indemnify and hold harmless Mercy and its Affiliates and their respective officers, directors, employees, contractors and agents (collectively, the "Mercy Indemnified Parties") from and against any and all liabilities, claims, losses, costs, judgments, and expenses (including attorneys' fees, expert fees, and other defense costs) (collectively, "Losses"), incurred by, or asserted or rendered against, a Mercy Indemnified Party and that arise out of or relate to Medical Center or the Services provided by Mercy pursuant to this Agreement, unless such Losses are caused by the gross negligence or willful misconduct of Mercy.

(b) Mercy to Indemnify Board. Mercy shall indemnify and hold harmless OSUMT and its Affiliates and their respective officers, directors, employees, contractors and agents (collectively, the "Medical Center Indemnified Parties") from and against any and all Losses incurred by, or asserted or rendered against, a Medical Center Indemnified Party as a result of the gross negligence or willful misconduct of Mercy in the provision of Services pursuant to this Agreement.

(c) Notice of Claim. In the event that any claim is made which may result in the right of indemnity hereunder, the party against whom the claim is made (the indemnified party) will promptly give notice to the other party (the indemnifying party) and give the indemnifying party the opportunity to defend the claim with counsel reasonably satisfactory to the indemnified party. The indemnifying party will pay all costs of such defense, including reasonable attorneys' fees, whether or not such claim is successful. The indemnifying party shall not settle any claim without the prior written consent of the indemnified party.

10. Work Product and Confidential Information.

(a) Work Product. All programs, documentation, policies and designs or other materials developed or assembled by Mercy pursuant to this Agreement, including but not limited to pursuant to Mercy's provision of Services and its business administration, utilization management and quality improvement systems, programs, plans or procedures (collectively, the "Work Product") shall be owned exclusively by Mercy, and the Work Product shall be deemed a work made for hire for purposes of the U.S. Copyright Act. If the Work Product is determined not to be a work made for hire by Mercy for Medical Center or if ownership of all rights, title and interest of the copyrights therein is deemed not to vest exclusively in Mercy, Medical Center, without additional compensation, shall assign, and upon creation thereof hereby automatically assigns, to Mercy the ownership of the copyrights in the Work Product, together with all rights arising from such copyright ownership, and Mercy shall have the right to register in its own name such copyrights.

(b) Confidential Information.

MERCY_00008

## EXHIBIT A – SCHEDULE OF SERVICES

Services

1. Oversee the daily operation and management of the Medical Center;

2. Commit monies derived from the operation of the Medical Center to the purchase and lease of supplies, goods, services and all other expenditures reasonably necessary to the operation of the Medical Center as needed within the Approved Budgets;

3. Negotiate, enter into, supervise and terminate contracts relating to the operation and management of the Medical Center (consistent with the delegated contracting authority from time to time designated by the Board);

4. Supervise the business affairs and financial management of the Medical Center;

5. Submit to the Board not less than monthly periodic reports showing the professional services and financial activities of the Medical Center, and prepare and submit special reports as may be required by the Board;

6. Attend meetings of the Board and its committees relating to the management and operation of the Medical Center upon request of the Board, and assist in the preparation of those meetings;

7. Review the operations of the Medical Center not less than monthly in accordance with its regular management practice, and advise and report accordingly to the Board upon the status of the Medical Center's property and operation;

8. Maintain the books and records of Medical Center and prepare monthly financial statements in conformity with GAAP;

9. Prepare monthly reports for cost centers within the Medical Center, comparing actual financial performance to budget; including benchmarking information for labor productivity and supply cost;

10. Provide information for, and coordinate with Medical Center's outside resources and consultants with respect to, the preparation of applicable regulatory filings, including tax returns and cost reports;

11. Provide support for Medical Center's accounting functions;

MERCY_00017

12. Oversee and make recommendations regarding the operational management system, including policies, procedures, processes, staffing, activities, competencies;

13. Participate in the planning, review, analysis and development of Medical Center strategic plans for consideration and approval by the Board;

14. Oversee the preparation of annual operating and capital budgets (and any material changes to Approved Budgets) for consideration and approval by the Board;

15. Assistance with physician and medical staff relations and recruitment, including medical staff development and medical staff communications plans;

16. Assistance with human resources consultation, including wage and salary market analyses, benefit design/cost analysis, employee relations strategies, policy review/design, recruitment strategies and assistance, and organization development;

17. Assistance with purchasing-inventory management, including purchasing, distribution of medical supplies and pharmaceuticals and reduction of inventory at Medical Center through utilization of ROi services;

18. Managed care consultation, including development of preferred provider networks, shared appeals, consultation on contracts;

19. Review and consultation regarding current and proposed management information systems, including assessment of current information systems for potential conversion to Mercy's electronic health record (Epic); provided that any conversion or implementation of Epic or other information systems will be pursuant to a separate agreement and fee structure;

20. Quality and safety, including CMS consultation, process improvement consultation, safety benchmarking reports;

21. Assistance with preparation of Board reports;

22. As requested, assistance with healthcare and legislative advocacy;

MERCY_00018

23. Leadership development, including training for Board leaders and physician leaders, succession planning and talent management; and

24. Mercy Senior Leadership Support, including on-site availability of members of the Mercy Senior Leadership Team as reasonably requested by the Board.

25. Performance of the duties and exercise of the prerogatives delegated to the CEO under the Academic Affiliation Agreement dated as of April 30, 2009, with the Oklahoma State University Center For Health Sciences, College of Osteopathic Medicine.

### Services Fee

The Services Fee will be the sum of the following:

1. Salary of the Chief Executive Officer and Chief Financial Officer, plus 28% (for benefits);
2. Mercy's actual costs and expenses of providing the Services, including benefits and overhead, plus 6%; and
3. Travel-related expenses incurred by Mercy in the provision of the Services to the extent such expenses are reimbursable under Mercy's travel expense policy.

*[Remainder of Page Intentionally Blank]*

MERCY_00019