## ACADEMIC AFFILIATION AGREEMENT

THIS ACADEMIC AFFILIATION AGREEMENT (this "Agreement") with an effective date of May 1, 2009, is made and entered into by and between **OKLAHOMA STATE UNIVERSITY CENTER FOR HEALTH SCIENCES, COLLEGE OF OSTEOPATHIC MEDICINE**, an institution of higher education of the State of Oklahoma located in Tulsa, Oklahoma ("UNIVERSITY") and **OKLAHOMA STATE UNIVERSITY MEDICAL CENTER TRUST**, an Oklahoma public trust (the "TRUST").

WHEREAS, TRUST and UNIVERSITY operate residency programs accredited by the American Osteopathic Association ("AOA"); and

WHEREAS, TRUST was formed to own and operate a 310 bed acute care hospital located in Tulsa, Oklahoma commonly known as the Oklahoma State University Medical Center (the "Medical Center") that has historically served as a teaching hospital for residency programs and has provided care to medically indigent citizens of Tulsa; and

WHEREAS, it is the desire of UNIVERSITY and TRUST to enter into an affiliation agreement that sets forth each party's expectations with respect to the relationship between UNIVERSITY and TRUST; and

WHEREAS, it is the desire of TRUST to continue managing the day to day operations of the Medical Center through an agreement for management services with St. John Owasso, Inc. d/b/a St. John Health System Management Services, Inc. ("ST. JOHN"); and

WHEREAS, it is the desire of UNIVERSITY to gain additional clinical facilities for teaching purposes by affiliation with TRUST; and

WHEREAS, it is the desire of UNIVERSITY and TRUST to have residents, interns and students associated with UNIVERSITY participate in teaching programs at the Medical Center that are mutually coordinated and beneficial and will enhance the clinical education of residents, interns and students;

NOW THEREFORE, for and in consideration of the mutual covenants and agreements contained herein, it is agreed by and between the parties as follows:

1.0    DEFINITIONS

  1.1    General Contract Terms.

- 2 -

**EXHIBIT 65**

Snyder v. Board of Regents, et al.        WD of OK Case No. CIV-16-384-F        000170

1.3.4   **Interns:** First-year graduate physicians participating in the medical education programs at the Medical Center and acting as TRUST employees in accordance with this Agreement. This definition includes all AOA-approved OGME-1 positions (as defined by the Basic Document).

1.3.5   **Medical Center Department Chairs:** The Chairs, Chiefs or Directors of the Medical Center's clinical departments and/or sections.

1.3.6   **Medical Staff:** The Medical Staff of the Medical Center.

1.3.7   **OMECO:** The Osteopathic Medical Education Consortium of Oklahoma.

1.3.8   **OPTI:** An Osteopathic Postdoctoral Training Institution

1.3.9   **Program Director:** The person with overall responsibility for the direction of a particular residency Program per AOA guidelines.

1.3.10  **Residents:** Graduate physicians who have completed their first year of postgraduate training, are enrolled in Programs, and are employed by TRUST under the terms of this Agreement.

1.3.11  **Students:** Duly enrolled and eligible students of UNIVERSITY.

1.3.12  **UNIVERSITY-Affiliated Personnel:** Faculty, employees and students of UNIVERSITY other than Residents and Interns.

1.3.13  **UNIVERSITY Chairs:** The Chairs of UNIVERSITY'S academic clinical departments.

2.0   **AFFILIATION.** UNIVERSITY and TRUST hereby affiliated under the terms and conditions specified in this Agreement.

2.1   Cooperation by TRUST. The Medical Center shall be the primary teaching hospital for the UNIVERSITY. In accepting this designation, TRUST acknowledges its role in advancing UNIVERSITY'S educational mission and agrees to work actively with UNIVERSITY to develop educational goals of the Programs and a training environment dedicated to education excellence. TRUST, in fulfilling one of the purposes for which it was created, will undertake every reasonable effort to make the Medical Center's facilities and programs available for UNIVERSITY educational activities, within TRUST's normal operating capacities and the Final Contract Budget then in effect.

operating expenses of the Medical Center for 2009-10 pursuant to the Final Contract Budget and as provided in the Interlocal Agreement between OSUMA and TRUST of even date herewith and (2) to contribute the additional annual appropriations from the Oklahoma Legislature for operations support for each of the Contract Years following the effective date of this Agreement. Such funds shall be used to assist OSUMA in fulfilling its statutory purposes as set for the in Title 63 Section 3273 of the Oklahoma Statutes that will be accomplished upon the execution of this Agreement through the formation and organization of the Medical Center, the development of a staff of physicians, nurses and other professionals to for the Medical Center, the recruiting and development of a management team, the development of a system of transition and management services for the operation of the Medical Center, the continued viability of the graduate medical education program and the teaching and training of students enrolled at the UNIVERSITY.

2.10    UNIVERSITY-funded capital expenditures. The Parties shall enter into a separate agreement to memorialize the obligation of UNIVERSITY to provide $25 million to TRUST for capital expenditures at the Medical Center.

3.0    MEDICAL EDUCATION PROGRAM ADMINISTRATION AND OVERSIGHT

3.1    Director of Medical Education. The DME shall be a physician who possesses the qualifications of a DME as set forth in Section II.E.2.2 of the Basic Document, as amended from time-to-time. The DME shall have the specific responsibilities of a DME as set forth in Section II.E.2.2 of the Basic Document, as amended from time-to-time The specific responsibilities and any additional responsibilities shall be detailed in a job description among UNIVERSITY, TRUST and the DME.

3.1.1    Employment Status and Location. TRUST shall reimburse UNIVERSITY for fifty percent (50%) of the costs of the DME's compensation package including salary, fringe benefits, professional liability insurance coverage and applicable taxes Said costs for each Contract Term shall be determined annually and memorialized in the Final Contract Budget. The DME shall maintain his or her principal Office at the Medical Center.

3.1.2    Appointment. The Dean, in consultation with the DME, will nominate a person for appointment as the DME. The nomination will be sent to TRUST for approval, which will not be unreasonably withheld. The nomination and acceptance of the DME during each Contract Term shall occur annually and shall be determined no later than March 1 for the Contract Year which

- 8 -

begins the following July 1, provided, however, that the nomination and acceptance for the first Contract Year shall be made by May 1, 2009.

    3.1.3  **Evaluation and Removal.** The DME shall be evaluated annually by the Dean and the CEO. The DME serves at the pleasure of the UNIVERSITY; provided that TRUST may request UNIVERSITY to replace the DME, which request shall not be unreasonably denied.

3.2    **Medical Center Department Chairs.** Medical Center Department Chairs are responsible for the general supervision of the clinical work falling within their respective departments at the Medical Center, referenced in the Bylaws. To the extent that their departments participate in UNIVERSITY educational activities, they shall be responsible for working with the DME and UNIVERSITY chairs of the corresponding academic departments at UNIVERSITY to develop and implement educational curricula.

3.3    **UNIVERSITY Department Chairs.** UNIVERSITY Chairs are responsible for the supervision of the academic and clinical activities of their respective departments at UNIVERSITY. To the extent that their departments participate in educational and research activities at Medical Center, they shall work with the DME, with Program Directors, and the corresponding Medical Center Department Chairs to develop and implement educational curricula.

3.4    **Program Directors of Service and Education.** The Program Directors shall meet the requirements for a Program Director established by the Basic Document and shall be responsible for supervising and coordinating all educational activities for Students, Interns and Residents in their respective Medical Center departments, including carrying out departmental missions and other responsibilities prescribed for Program Directors by the Basic Document. The Program Directors shall coordinate all educational activities with the DME and shall report as needed on their non-educational service activities as Program Directors to the Medical Director.

    3.4.1  **Appointment.** Program Directors shall be appointed by the DME.

    3.4.2  **Compensation and Status.** Program Directors shall be paid a stipend by TRUST. Said stipends for each Contract Term shall be established annually, determined no later than March 1 for the Contract Year which begins July 1 of the following year and memorialized in the Final Contract Budget. Program Directors shall report to the DME.

- 9 -

3.4.3   Evaluation and Removal. Program Directors shall be evaluated annually by the DME. Program Directors serve at the pleasure of the DME and may be removed by the DME.

## 4.0   MEDICAL EDUCATION PROGRAM

4.1   **Residents and Interns.**  TRUST agrees to employ Residents and Interns in accordance with the staffing levels and departmental distribution as mutually agreed upon each Contract Year. In the first year of this Agreement employment shall be effective on the Employment Effective Date; provided, however, that TRUST shall reimburse UNIVERSITY for employment expenses of the Residents and Interns from the Effective Date within 10 days from the receipt of UNIVERSITY's monthly invoice. The DME shall be responsible for recruiting, designating and assigning Residents and Interns at the Medical Center.  The number of Residents and Interns which TRUST employs during each Contract Year shall be annually recommended by the DME no later than January 15 for the Contract Year which begins July 1 the following year.

4.1.1   **Service Assignment.**   Service assignments of Residents and Interns shall be made by the DME after consultation with the appropriate Program Director.

4.1.2   **Supervision.**  All Residents and Interns who participate at the Medical

Bylaws,

time-to-time,                          egal        regulatory

4.1.3   **Compensation.** TRUST shall pay all Resident and Intern salaries, health insurance, workers' compensation insurance, professional liability insurance as set out in Section 4.1.4 below, disability insurance, applicable taxes, licensing fees and resident course costs required by the AOA and other appropriate costs and fringe benefits including a continuing medical education expense allocation. TRUST shall consult with the DME before setting such salaries and for each Contract Year. TRUST and the DME shall consider the recommendations of the OMECO Board in establishing salaries and benefits for Interns and Residents.

4.1.4   **Insurance.**  TRUST shall provide Residents and Interns with adequate health, professional liability, and workers' compensation insurance with professional liability limits of not less than the requirements of the facilities through which the residents rotate. Unless otherwise provided for in subsequent agreements between

- 10 -

the Parties, in addition to covering acts at TRUST, such insurance shall cover acts which occur during training scheduled and approved by the DME which take place at institutions other than the Medical Center, provided the Residents and Interns are acting within the scope of their employment. Such insurance shall not cover acts that occur at institutions other than Medical Center resulting from the provision of medical care by the Residents and/or Interns which is not approved by the DME as an official part of the residency/intern program. Unless otherwise provided for in subsequent agreements, approved off-site training shall not affect the employment status, payment or insurance coverage of the Residents and Interns as set forth herein. If any professional liability insurance is obtained under a "claims-made" basis, TRUST shall, upon termination or expiration of such insurance coverage, obtain tail coverage or "prior acts" coverage of no less than the same coverage amounts for the longest available time period. TRUST shall provide UNIVERSITY a copy of all such insurance policies upon request. All of such insurance policies shall name UNIVERSITY as an additional insured, but only to the extent that UNIVERSITY is sued solely due to the acts or omissions of a TRUST Resident or Intern.

4.2   **Students.** UNIVERSITY shall provide and TRUST agrees to accept Students in accordance with the departmental distribution as mutually agreed upon each Contract Year. TRUST agrees to accept Students for in-hospital and/or ambulatory training. UNIVERSITY shall be responsible for designating and assigning Students to the Medical Center. UNIVERSITY shall furnish TRUST with a list of, and other relevant information concerning, Students to be provided under this Agreement. The number of Students that TRUST accepts during each Contract Year shall be determined annually by TRUST no later than January 1 for the Contract Year which begins on July 1 thereafter.

4.2.1   **Service Assignment.** Service assignments of Students shall be made by the DME after consultation with the appropriate Program Director.

4.2.2   **Supervision.** All Students who participate at the Medical Center in activities arising under this Agreement will be supervised by a member of the Medical Staff. Said supervision shall be coordinated by the DME in cooperation with the appropriate Program Director. To the greatest extent possible, said supervision of students shall follow the UNIVERSITY's Student Protocol for Clinical Clerkships, as the same may be amended from time to time by UNIVERSITY (a copy of the present version of which is

- 11 -

      4.3.5   Identification.   TRUST shall provide appropriate identification badges for Residents, Interns and Students.

      4.3.6   Other Costs.   TRUST shall provide pagers and funding for resident graduation ceremonies.

4.4     Teaching and Training Information.  The Medical Center shall maintain a list of all Residents, Interns and Students rotating through the Medical Center which shall be available to the CEO and CMO, upon request.  For each department, a monthly schedule showing the name, location, and assignment (hours or shift assignments, where relevant) of all Residents, Interns and Students shall be provided to the DME and CEO prior to the start of the rotation.  DME shall notify TRUST of all changes in its medical teaching or training programs which affect the Medical Center including changes in the number of Residents, Interns and Students assigned to or rotating through the Medical Center, and changes in the scope, organization or length of such education or training programs.

4.5     Certification of the Residents.  UNIVERSITY shall provide Residents and Interns with a certificate of completion of training at the successful completion of their training program.  UNIVERSITY agrees that the certificate shall state that the training was completed at the Medical Center as applicable.

4.6     Drug Free Work Place.  Residents, Interns and Students providing services at the Medical Center are required to comply with the Drug Free Work Place Act of 1988 (as the same may be modified from time to time) and to TRUST's then current drug-free work place policy. Residents, Interns and Students shall be required to participate in TRUST's drug screening program as requested by TRUST.

4.7     Discipline Involving Students, Residents and Interns.  If, in the sole opinion of TRUST, any Student, Resident and/or Intern fails to act in accordance with the Bylaws, rules and regulations of the Medical Center or its Medical Staff, Student Protocol as it applies to Students, or policies of the UNIVERSITY or any of the provisions of this Agreement, the CEO, or his designee, shall, in writing, notify the Dean, or his designee, and the DME.  Upon receipt of said notice, the DME shall immediately initiate proceedings under either the UNIVERSITY House Staff Policies and Non-Cognitive Academic Standards for Residents, Interns and Fellows, or the UNIVERSITY Non-Cognitive Policy for Students.

4.8     High-Risk Exposures.  An occurrence report is to be completed by TRUST if a Student, Resident and/or Intern are exposed to blood or body fluids during a rotation at the Medical Center through a needle stick, splash, laceration and/or other high-risk exposure. TRUST will send a

- 13 -

copy of the occurrence report to UNIVERSITY'S Office of Clinical Education. TRUST will provide immediate evaluation and treatment for such exposure as recommended in accordance with Center for Disease Control guidelines. TRUST and/or applicable health insurance, will be responsible for the cost of treatment and follow-up testing involving Residents and Interns. Students, and/or applicable health insurance, shall be responsible for the cost of treatment and follow-up testing involving Students.

5.0   GENERAL RESPONSIBILITIES OF UNIVERSITY

   5.1   **Compliance with Laws and Accreditation Standards.** UNIVERSITY shall: (1) maintain any legal, licensing, or accreditation standards within its control; (2) cooperate with TRUST to maintain legal, licensing, or accreditation standards within the joint control of TRUST and UNIVERSITY; and (3) notify TRUST within 30 days of such time as UNIVERSITY has knowledge of matters which may compromise UNIVERSITY'S legal, licensing, or accreditation compliance. In such notice, UNIVERSITY shall identify the issues which need to be addressed, suggest means to resolve them, and estimate the time necessary to achieve resolution.

   5.2   **Compliance with TRUST Policies.** UNIVERSITY-affiliated personnel shall be subject to applicable TRUST policies, including the Bylaws of Trust for the Medical Center and the Final Contract Budget, while operating at the Medical Center to the same extent as are TRUST-affiliated personnel and UNIVERSITY shall cooperate with TRUST in ensuring compliance with such policies. UNIVERSITY-affiliated personnel shall attend training programs regarding such policies to the extent requested by TRUST.

      5.2.1   All UNIVERSITY physicians holding membership on the Medical Staff are subject to the Bylaws and applicable administrative policies and procedures of the Medical Center.

   5.3   Patient Complaint. The UMB shall address patient complaints arising from the activities of the Residents, Interns and Students and shall cooperate with TRUST efforts to address any such patient complaints.

   5.4   **Insurance.** In addition to the insurance provided in Section 4.2.4 of this Agreement, UNIVERSITY shall provide professional liability, general liability, workers' compensation coverage and health insurance, either through self-insurance or the purchase of insurance policies, for its employees providing services at the Medical Center pursuant to this Agreement. This requirement shall not, however, apply to insurance for UNIVERSITY's part time adjunct faculty members, which shall supply

- 14 -

documents, and records of this account to verify the cost of the services and goods provided.

10.13 **Books and Records.** Upon the written request of the Secretary of the U.S. Department of Health and Human Services (the "Secretary") or the Comptroller General or any of their duly authorized representatives, the parties and any of their Affiliates providing services with a value or cost of $10,000 or more over a twelve (12) month period shall make available to the Secretary the contracts, books, documents and records that are necessary to verify the nature and extent of the cost of providing such services. Such inspection shall be available up to four (4) years after the rendering of such services. The Parties agree that any applicable attorney-client, accountant-client, or other legal privilege shall not be deemed waived by virtue of this Agreement.

10.14 **Oklahoma Open Records Act.** Medical Center shall maintain its books and records in compliance with the Oklahoma Open Records Act.

10.15 **Participation in Federal Programs.** Both as a material condition to this Agreement and as a continuing representation and warranty for the duration of this Agreement, each Party represents and warrants to the other Party that neither it nor any of its owners, officers, directors, employees, agents, subcontractors, etc. have been suspended, excluded, or debarred from any government payer program, including without limitation the federal Medicare or any state Medicaid program.

10.16 **Compliance with Law.** The Parties intend that the terms of this Agreement and the Parties' conduct hereunder shall at all times comply with the provisions of applicable law, including the Anti-kickback law, 42 U.S.C. §1320a-7b, the Stark Law, 42 U.S.C. §1395nn, the Health Insurance Portability and Accountability Act of 1996, and the regulations of Health and Human Services and the Centers for Medicare and Medicaid Services. Each Party hereto shall at all times comply with the provisions of such laws.

10.17 **Business Associate Agreement.** UNIVERSITY acknowledges that it meets the definition of a "business associate" and TRUST acknowledges that it meets the definition of a "covered entity" set forth in the regulations adopted pursuant to the Health Insurance Portability and Accountability Act (hereinafter, the Health Insurance Portability and Accountability Act and its implementing regulations (including, without limitation, the privacy regulations adopted at 45 C.F.R. Parts 160 and 164, the code set regulations adopted at 45 C.F.R. Parts 160 and 162 and the security standards adopted at 45 C.F.R. Parts 160, 162 and 164 for the protection of electronic protected health information, as they may be amended from time to time, collectively referred to as "HIPAA"), and that the

- 23 -

Agreement is subject to the requirements for business associate contracts with covered entities which involve the use of individually identifiable health information ("Protected Health Information," as that term is defined by HIPAA). UNIVERSITY may use the Protected Health Information only for the purpose of carrying out its obligations under this Agreement and may not utilize or disclose this information for any other purpose. UNIVERSITY covenants and agrees not to use Protected Health Information in any manner that would constitute a violation of HIPAA. In addition, UNIVERSITY agrees to enter into any further agreements, including without limitation a Business Associate Agreement, as necessary to facilitate compliance with HIPAA. This section shall survive termination of this Agreement.

SIGNATURE PAGE FOLLOWS

- 24 -