

UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 24, 2015

Dear Colleague:

I write to remind you that all school districts, colleges, and universities receiving Federal financial assistance must designate at least one employee to coordinate their efforts to comply with and carry out their responsibilities under Title IX of the Education Amendments of 1972 (Title IX), which prohibits sex discrimination in education programs and activities.[1] These designated employees are generally referred to as Title IX coordinators.

Your Title IX coordinator plays an essential role in helping you ensure that every person affected by the operations of your educational institution—including students, their parents or guardians, employees, and applicants for admission and employment—is aware of the legal rights Title IX affords and that your institution and its officials comply with their legal obligations under Title IX. To be effective, a Title IX coordinator must have the full support of your institution.  It is therefore critical that all institutions provide their Title IX coordinators with the appropriate authority and support necessary for them to carry out their duties and use their expertise to help their institutions comply with Title IX.

The U.S. Department of Education's Office for Civil Rights (OCR) enforces Title IX for institutions that receive funds from the Department (recipients).[2]  In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX.  By contrast, OCR has found that an effective Title IX coordinator often helps a recipient provide equal educational opportunities to all students.

OCR has previously issued guidance documents that include discussions of the responsibilities of a Title IX coordinator, and those documents remain in full force.  This letter incorporates that existing OCR guidance on Title IX coordinators and provides additional clarification and recommendations

---

[1] 34 C.F.R. § 106.8(a).  Although Title IX applies to any recipient that offers education programs or activities, this letter focuses on Title IX coordinators designated by local educational agencies, schools, colleges, and universities.

[2] 20 U.S.C. §§ 1681–1688.  The Department of Justice shares enforcement authority over Title IX with OCR.

EXHIBIT
25

as appropriate.  This letter outlines the factors a recipient should consider when designating a Title IX coordinator, then describes the Title IX coordinator's responsibilities and authority.  Next, this letter reminds recipients of the importance of supporting Title IX coordinators by ensuring that the coordinators are visible in their school communities and have the appropriate training.

Also attached is a letter directed to Title IX coordinators that provides more information about their responsibilities and a Title IX resource guide.  The resource guide includes an overview of the scope of Title IX, a discussion about Title IX's administrative requirements, as well as a discussion of other key Title IX issues and references to Federal resources.  The discussion of each Title IX issue includes recommended best practices for the Title IX coordinator to help your institution meet its obligations under Title IX.  The resource guide also explains your institution's obligation to report information to the Department that could be relevant to Title IX.  The enclosed letter to Title IX coordinators and the resource guide may be useful for you to understand your institution's obligations under Title IX.

## Designation of a Title IX Coordinator

Educational institutions that receive Federal financial assistance are prohibited under Title IX from subjecting any person to discrimination on the basis of sex.  Title IX authorizes the Department of Education to issue regulations to effectuate Title IX.[3]  Under those regulations, a recipient must designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX and the Department's implementing regulations.[4]  This position may not be left vacant; a recipient must have at least one person designated and actually serving as the Title IX coordinator at all times.

In deciding to which senior school official the Title IX coordinator should report and what other functions (if any) that person should perform, recipients are urged to consider the following:[5]

### A. Independence

The Title IX coordinator's role should be independent to avoid any potential conflicts of interest and the Title IX coordinator should report directly to the recipient's senior leadership, such as the district superintendent or the college or university president.  Granting the Title IX coordinator this

---

[3] The Department's Title IX regulations, 34 C.F.R. Part 106, are available at http://www.ed.gov/policy/rights/reg/ocr/edlite-34cfr106.html.

[4] 34 C.F.R. § 106.8(a).

[5] Many of the principles in this document also apply generally to employees required to be designated to coordinate compliance with other civil rights laws enforced by OCR against educational institutions, such as Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 34 C.F.R. § 104.7(a), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134; 28 C.F.R. § 35.107(a).

independence also ensures that senior school officials are fully informed of any Title IX issues that arise and that the Title IX coordinator has the appropriate authority, both formal and informal, to effectively coordinate the recipient's compliance with Title IX.  Title IX does not categorically exclude particular employees from serving as Title IX coordinators.  However, when designating a Title IX coordinator, a recipient should be careful to avoid designating an employee whose other job responsibilities may create a conflict of interest.  For example, designating a disciplinary board member, general counsel, dean of students, superintendent, principal, or athletics director as the Title IX coordinator may pose a conflict of interest.

### B.  Full-Time Title IX Coordinator

Designating a full-time Title IX coordinator will minimize the risk of a conflict of interest and in many cases ensure sufficient time is available to perform all the role's responsibilities.  If a recipient designates one employee to coordinate the recipient's compliance with Title IX and other related laws, it is critical that the employee has the qualifications, training, authority, and time to address all complaints throughout the institution, including those raising Title IX issues.

### C.  Multiple Coordinators

Although not required by Title IX, it may be a good practice for some recipients, particularly larger school districts, colleges, and universities, to designate multiple Title IX coordinators.  For example, some recipients have found that designating a Title IX coordinator for each building, school, or campus provides students and staff with more familiarity with the Title IX coordinator.  This familiarity may result in more effective training of the school community on their rights and obligations under Title IX and improved reporting of incidents under Title IX.  A recipient that designates multiple coordinators should designate one lead Title IX coordinator who has ultimate oversight responsibility.  A recipient should encourage all of its Title IX coordinators to work together to ensure consistent enforcement of its policies and Title IX.

### Responsibilities and Authority of a Title IX Coordinator

The Title IX coordinator's primary responsibility is to coordinate the recipient's compliance with Title IX, including the recipient's grievance procedures for resolving Title IX complaints.  Therefore, the Title IX coordinator must have the authority necessary to fulfill this coordination responsibility. The recipient must inform the Title IX coordinator of all reports and complaints raising Title IX issues, even if the complaint was initially filed with another individual or office or the investigation will be conducted by another individual or office.  The Title IX coordinator is responsible for coordinating the recipient's responses to all complaints involving possible sex discrimination.  This responsibility includes monitoring outcomes, identifying and addressing any patterns, and assessing effects on the campus climate.  Such coordination can help the recipient avoid Title IX violations, particularly violations involving sexual harassment and violence, by preventing incidents

from recurring or becoming systemic problems that affect the wider school community.  Title IX does not specify who should determine the outcome of Title IX complaints or the actions the school will take in response to such complaints.  The Title IX coordinator could play this role, provided there are no conflicts of interest, but does not have to.

The Title IX coordinator must have knowledge of the recipient's policies and procedures on sex discrimination and should be involved in the drafting and revision of such policies and procedures to help ensure that they comply with the requirements of Title IX.  The Title IX coordinator should also coordinate the collection and analysis of information from an annual climate survey if, as OCR recommends, the school conducts such a survey.  In addition, a recipient should provide Title IX coordinators with access to information regarding enrollment in particular subject areas, participation in athletics, administration of school discipline, and incidents of sex-based harassment.  Granting Title IX coordinators the appropriate authority will allow them to identify and proactively address issues related to possible sex discrimination as they arise.

Title IX makes it unlawful to retaliate against individuals—including Title IX coordinators—not just when they file a complaint alleging a violation of Title IX, but also when they participate in a Title IX investigation, hearing, or proceeding, or advocate for others' Title IX rights.[6]  Title IX's broad anti-retaliation provision protects Title IX coordinators from discrimination, intimidation, threats, and coercion for the purpose of interfering with the performance of their job responsibilities.  A recipient, therefore, must not interfere with the Title IX coordinator's participation in complaint investigations and monitoring of the recipient's efforts to comply with and carry out its responsibilities under Title IX.  Rather, a recipient should encourage its Title IX coordinator to help it comply with Title IX and promote gender equity in education.

<u>Support for Title IX Coordinators</u>

Title IX coordinators must have the full support of their institutions to be able to effectively coordinate the recipient's compliance with Title IX.  Such support includes making the role of the Title IX coordinator visible in the school community and ensuring that the Title IX coordinator is sufficiently knowledgeable about Title IX and the recipient's policies and procedures.  Because educational institutions vary in size and educational level, there are a variety of ways in which recipients can ensure that their Title IX coordinators have community-wide visibility and comprehensive knowledge and training.

---

[6] 34 C.F.R. § 106.71 (incorporating by reference 34 C.F.R. § 100.7(e)).

**A.  Visibility of Title IX Coordinators**

Under the Department's Title IX regulations, a recipient has specific obligations to make the role of its Title IX coordinator visible to the school community.  A recipient must post a notice of nondiscrimination stating that it does not discriminate on the basis of sex and that questions regarding Title IX may be referred to the recipient's Title IX coordinator or to OCR.  The notice must be included in any bulletins, announcements, publications, catalogs, application forms, or recruitment materials distributed to the school community, including all applicants for admission and employment, students and parents or guardians of elementary and secondary school students, employees, sources of referral of applicants for admission and employment, and all unions or professional organizations holding collective bargaining or professional agreements with the recipient.[7]

In addition, the recipient must always notify students and employees of the name, office address, telephone number, and email address of the Title IX coordinator, including in its notice of nondiscrimination.[8]  Because it may be unduly burdensome for a recipient to republish printed materials that include the Title IX coordinator's name and individual information each time a person leaves the Title IX coordinator position, a recipient may identify its coordinator only through a position title in printed materials and may provide an email address established for the position of the Title IX coordinator, such as TitleIXCoordinator@school.edu, so long as the email is immediately redirected to the employee serving as the Title IX coordinator.  However, the recipient's website must reflect complete and current information about the Title IX coordinator.

Recipients with more than one Title IX coordinator must notify students and employees of the lead Title IX coordinator's contact information in its notice of nondiscrimination, and should make available the contact information for its other Title IX coordinators as well.  In doing so, recipients should include any additional information that would help students and employees identify which Title IX coordinator to contact, such as each Title IX coordinator's specific geographic region (*e.g.*, a particular elementary school or part of a college campus) or Title IX area of specialization (*e.g.*, gender equity in academic programs or athletics, harassment, or complaints from employees).

The Title IX coordinator's contact information must be widely distributed and should be easily found on the recipient's website and in various publications.[9]  By publicizing the functions and responsibilities of the Title IX coordinator, the recipient demonstrates to the school community its commitment to complying with Title IX and its support of the Title IX coordinator's efforts.

---

[7] 34 C.F.R. § 106.9.

[8] 34 C.F.R. § 106.8(a).

[9] 34 C.F.R. § 106.9.

Supporting the Title IX coordinator in the establishment and maintenance of a strong and visible role in the community helps to ensure that members of the school community know and trust that they can reach out to the Title IX coordinator for assistance.  OCR encourages recipients to create a page on the recipient's website that includes the name and contact information of its Title IX coordinator(s), relevant Title IX policies and grievance procedures, and other resources related to Title IX compliance and gender equity.  A link to this page should be prominently displayed on the recipient's homepage.

To supplement the recipient's notification obligations, the Department collects and publishes information from educational institutions about the employees they designate as Title IX coordinators.  OCR's Civil Rights Data Collection (CRDC) collects information from the nation's public school districts and elementary and secondary schools, including whether they have civil rights coordinators for discrimination on the basis of sex, race, and disability, and the coordinators' contact information.[10]  The Department's Office of Postsecondary Education collects information about Title IX coordinators from postsecondary institutions in reports required under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act and the Higher Education Opportunity Act.[11]

### B.  Training of Title IX Coordinators

Recipients must ensure that their Title IX coordinators are appropriately trained and possess comprehensive knowledge in all areas over which they have responsibility in order to effectively carry out those responsibilities, including the recipients' policies and procedures on sex discrimination and all complaints raising Title IX issues throughout the institution.  The resource guide accompanying this letter outlines some of the key issues covered by Title IX and provides references to Federal resources related to those issues.  In addition, the coordinators should be knowledgeable about other applicable Federal and State laws, regulations, and policies that overlap with Title IX.[12]  In most cases, the recipient will need to provide an employee with training to act as its Title IX coordinator.  The training should explain the different facets of Title IX, including regulatory provisions, applicable OCR guidance, and the recipient's Title IX policies and grievance procedures.  Because these laws, regulations, and OCR guidance may be updated, and

---

[10] OCR began collecting this information through the CRDC for the 2013-2014 school year.  More information about the CRDC is available at http://www.ed.gov/ocr/data.html.

[11] The Department will begin collecting this information in 2015.  More information about the Clery Act data collection is available at http://www.ed.gov/admins/lead/safety/campus.html.

[12] *See, e.g.*, the Family Educational Rights and Privacy Act, 20 U.S.C. §1232g, and its implementing regulations, 34 C.F.R. Part 99; and the Clery Act, 20 U.S.C. § 1092(f), and its implementing regulations, 34 C.F.R. Part 668.  These documents only address an institution's compliance with Title IX and do not address its obligations under other Federal laws, such as the Clery Act.

Page 7—Dear Colleague Letter: Title IX Coordinators

recipient policies and procedures may be revised, the best way to ensure Title IX coordinators have the most current knowledge of Federal and State laws, regulations, and policies relating to Title IX and gender equity is for a recipient to provide regular training to the Title IX coordinator, as well as to all employees whose responsibilities may relate to the recipient's obligations under Title IX. OCR's regional offices can provide technical assistance, and opportunities for training may be available through Equity Assistance Centers, State educational agencies, private organizations, advocacy groups, and community colleges.  A Title IX coordinator may also find it helpful to seek mentorship from a more experienced Title IX coordinator and to collaborate with other Title IX coordinators in the region (or who serve similar institutions) to share information, knowledge, and expertise.

In rare circumstances, an employee's prior training and experience may sufficiently prepare that employee to act as the recipient's Title IX coordinator.  For example, the combination of effective prior training and experience investigating complaints of sex discrimination, together with training on current Title IX regulations, OCR guidance, and the recipient institution's policies and grievance procedures may be sufficient preparation for that employee to effectively carry out the responsibilities of the Title IX coordinator.

## Conclusion

Title IX coordinators are invaluable resources to recipients and students at all educational levels. OCR is committed to helping recipients and Title IX coordinators understand and comply with their legal obligations under Title IX.  If you need technical assistance, please contact the OCR regional office serving your State or territory by visiting http://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm or call OCR's Customer Service Team at 1-800-421-3481; TDD 1-800-877-8339.

Thank you for supporting your Title IX coordinators to help ensure that all students have equal access to educational opportunities, regardless of sex.  I look forward to continuing to work with recipients nationwide to help ensure that each and every recipient has at least one knowledgeable Title IX coordinator with the authority and support needed to prevent and address sex discrimination in our nation's schools.

Sincerely,

/s/
Catherine E. Lhamon
Assistant Secretary for Civil Rights