# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFREY SNYDER, D.O., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-384-F |
| | ) | |
| BOARD OF REGENTS FOR THE | ) | |
| OKLAHOMA AGRICULTURAL & | ) | |
| MECHANICAL COLLEGES, ex rel., | ) | |
| OKLAHOMA STATE UNIVERSITY | ) | |
| CENTER FOR HEALTH SCIENCES, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT HIS FINAL WITNESS LIST WITH CHRISTI AQUINO WITH BRIEF IN SUPPORT

---

Joshua Stockton, OBA #21833
Laura Talbert, OBA #32670
**STOCKTON TALBERT, PLLC**
1227 N.W. 14th Street
Oklahoma City, Oklahoma 73106
Telephone: (405) 225-1200
Email: jstockton@stocktontalbert.com
**ATTORNEYS FOR PLAINTIFF**
**JEFFREY SNYDER, D.O.**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................ 1

STATEMENT OF FACTS .................................................................. 3

    A.    Defendants Withheld Aquino's Identity and Communications in Response to Dr. Snyder's 2017 Discovery Requests and in their 2018 Initial Disclosures ........................................................ 3

    B.    Defendants Repeatedly Claimed Additional Evidence Did Not Exist During Discovery Conferences in 2018 ............................... 7

    C.    Defendants Withheld the Aquino Communications until after Dr. Snyder Filed his Final Witness and Exhibit Lists in June 2019 ............................................................................................ 9

ARGUMENTS & AUTHORITIES ................................................... 11

I.    THE COURT SHOULD GRANT DR. SNYDER LEAVE TO ADD AQUINO AS A WITNESS AT TRIAL BECAUSE DEFENDANTS WITHHELD HER IDENTITY AND COMMUNICATIONS ................. 11

II.    EXCLUDING AQUINO AS A WITNESS AT TRIAL WOULD BE A DRASTIC SANCTION THAT WOULD UNDULY PREJUDICE DR. SNYDER ........................................................................................ 15

III.    THE COURT SHOULD OVERRULE DEFENDANTS' OBJECTIONS TO DR. SNYDER'S REQUEST FOR LEAVE ....................... 17

CONCLUSION .................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Burks v. Oklahoma Publ'g Co.*,
  81 F.3d 975 (10th Cir. 1996) .................................................................. 15, 16

*Hull v. Chevron U.S.A., Inc.*,
  812 F.2d 584 (10th Cir.1987) ........................................................................ 15

*Lee v. Max Int'l, LLC*,
  638 F.3d 1318 (10th Cir. 2011) ..................................................................... 11

*Sender v. Mann*,
  225 F.R.D. 645 (D. Colo. 2004) .................................................................... 11

*Summers v. Missouri Pacific R.R. Sys.*,
  132 F.3d 599 (10th Cir. 1997) ................................................................ 15, 16

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*,
  170 F.3d 985 (10th Cir. 1999) ....................................................................... 16

## Rules

Fed. R. Civ. P. 1 ..................................................................................... 11-12

Fed. R. Civ. P. 16 .................................................................................. 15, 16

Fed. R. Civ. P. 26 ............................................................ 11, 12, 13, 14, 16, 18

Fed. R. Civ. P. 30 ........................................................................................ 18

Fed. R. Civ. P. 33 .............................................................................. 12-13, 19

Fed. R. Civ. P. 34 ....................................................................................... 13

Fed. R. Civ. P. 37 ................................................................................... 14-15

Oklahoma Rule of Professional Conduct 4.2 ................................................ 19

## LIST OF EXHIBITS

Ex. 1          Emails re Aquino

Ex. 2          Email Producing New Evidence

Ex. 3          Cotton Transcript

Ex. 4          Partial List of New Evidence

Ex. 5          January 20, 2020 Email from Whatley

Ex. 6          Board Answers to Interrogatory

Ex. 7          Board Response to Requests for Production

Ex. 8          OSUMC Answer to Interrogatory

Ex. 9          OSUMC Responses to Requests for Production

Ex. 10         Cotton Answers to Interrogatory

Ex. 11         Alexopulos Answers to Interrogatory

Ex. 12         Cotton Response to Requests for Production

Ex. 13         Alexopulos Response to Requests for Production

Ex. 14         August 3, 2017 Letter from Hurst

Ex. 15         September 14, 2017 Letter from Hurst

Ex. 16         OSUMC Production Correspondence

Ex. 17         October 11, 2017 Letter from Stephens

Ex. 18         November 2019 Privilege Log

Ex. 19         Board, Cotton, and Alexopulos Initial Disclosures

Ex. 20         OSUMC Initial Disclosures

Ex. 21        August 20, 2018 Fax from Hurst

Ex. 22        August 20, 2018 Email from Pratt

Ex. 23        August 27, 2018 Letter from Hurst

Ex. 24        October 2, 2018 Letter from Hurst

Ex. 25        October 12, 2018 Letter from Stephens

Ex. 26        October 12, 2018 Letter from Childers

Ex. 27        Board's Responses to 4th Discovery Requests

Ex. 28        August 26, 2019 Email from Garrett

Ex. 29        Email from Stephens

Ex. 30        Licensure Packet

Plaintiff Jeffrey Snyder, D.O. ("**Plaintiff**" or "**Dr. Snyder**"), through his counsel of record, Stockton Talbert, respectfully moves the Court to grant Dr. Snyder leave to supplement his final witness list (ECF # 243) to add Christi Aquino ("**Aquino**") of the Oklahoma State Board of Osteopathic Examiners ("**Oklahoma State Board**") as a witness at trial. Dr. Snyder offers the following brief in support of this motion.

## **INTRODUCTION**

During the first 3 years of this case, defendants failed to disclose that, in 2016, they communicated with Christi Aquino, a Licensure Specialist with the Oklahoma State Board, after she contacted them to discuss Dr. Snyder's missing post-graduate training verification form. Ex. 1, Emails re Aquino. Those communications concern a central dispute in this case: whether defendants' decision to withhold Dr. Snyder's training verification from the Oklahoma State Board, which prevented his licensure application from being completed, was a violation of Dr. Snyder's rights or is otherwise evidence of defendants' intentional discrimination or retaliation.[1]

Defendants did not produce their communications with Aquino until August 5, 2019, at the very moment Dr. Cotton's deposition ended, more than

---

[1] *See* Dr. Snyder's Response to the Board, Dr. Cotton, and Dr. Alexopulos' Motion for Summary Judgment (ECF # 376) at 6-22 (due process); Dr. Snyder's Response to OSUMC Motion for Summary Judgment (ECF # 371) at 31 (Fact Nos. 37-38); at 41-42 (evidence of disability discrimination); at 52 (evidence of retaliation).

2 years after Dr. Snyder first requested defendants' communications about him and more than 2 months after Dr. Snyder's deadline to file his final witness and exhibit lists. Ex. 2, Email Producing New Evidence; Ex. 3, Cotton Transcript, 324:20.

Even though defendants communicated with Aquino in 2016, they failed to identify Aquino the next year, in 2017, when they provided verified answers to Dr. Snyder's interrogatories asking for the identity of all persons with material information about the case. Defendants again failed to identify Aquino the year after that, in 2018, when they provided their Rule 26 initial disclosures without identifying Aquino or producing their communications with her.

Throughout 2017 and 2018, when questioned during discovery conferences about Dr. Snyder's concerns that defendants had failed to produce communications (among other evidence), defendants repeatedly promised Dr. Snyder they were *not* withholding any documents. Those promises, Dr. Snyder would learn, were not true. During the closing months of discovery (and after), defendants produced more than 1,600 pages of additional evidence, including hundreds of pages responsive to Dr. Snyder's original 2017 discovery requests, starting with the Aquino communications. Ex. 4, Partial List of New Evidence.

Defendants' failure to identify Aquino or produce her communications was part of a much broader pattern of withholding critical evidence from Dr.

Snyder while claiming it did not exist, which began in 2017 and continued through last week.[2] Because defendants failed to identify Aquino or disclose their communications with her until after Dr. Snyder's final witness list deadline, the Court should allow Dr. Snyder to list her as a witness at trial.

## STATEMENT OF FACTS

A.  **Defendants Withheld Aquino's Identity and Communications in Response to Dr. Snyder's 2017 Discovery Requests and in their 2018 Initial Disclosures**

1.  In 2017, Dr. Snyder issued written discovery requests to the defendants affiliated with OSU, including the Board, OSUMC, Dr. Cotton, and Dr. Alexopulos, to which defendants responded in July, August, and September 2017. Ex. 6, Board Answers to Interrogatories; Ex. 7, Board Responses to Requests for Production; Ex. 8, OSUMC Answers to Interrogatories; Ex. 9, OSUMC Responses to Requests for Production; Ex. 10, Cotton Answers to Interrogatories; Ex. 11, Alexopulos Answers to Interrogatories; Ex. 12, Cotton Response to Requests for Production; Ex. 13, Alexopulos Response to Requests for Production.

---

[2] On Monday, January 20, 2020, while producing, *for the very first time*, Dr. Snyder's August 10, 2015 OSUMC termination letter and termination payroll action form, OSUMC admitted that it never produced Dr. Snyder's full personnel file during discovery, instead producing a "copy" that was created in June 2015, 2 months before Dr. Snyder's August 2015 dismissal. Ex. 5, January 20, 2020 Email from Whatley with New Evidence.

2.     On July 31, 2017, the Board and OSUMC failed to identify Aquino as a person who may have discoverable information about the case in verified interrogatory answers. Ex. 6, Board Answer to Interrogatory No. 5 (verified by Dr. Cotton); Ex. 8, OSUMC Answer to Interrogatory No. 5.

3.     On August 3, 2017, Dr. Snyder requested a discovery conference with the Board to discuss "whether (and what) information is being withheld under the objections propounded in the discovery responses." Ex. 14, August 3, 2017 Letter from Hurst.

4.     On August 14, 2017, the Board and OSUMC promised to produce all communications discussing Dr. Snyder sent to, from, or between any person who participated in the final decision to terminate Dr. Snyder, which included Dr. Cotton, Dr. Alexopulos, Brenda Davidson, and others. Ex. 7, Board Response to Request for Production No. 2; Ex. 9, OSUMC Response to Request for Production No. 2. *See also* Ex. 6, Board Answer to Interrogatory No. 3 (Dr. Cotton verifying participants in Dr. Snyder's termination).[3]

5.     On September 8, 2017, Dr. Cotton and Dr. Alexopulos failed to identify Aquino as a person with discoverable information about the case in

---

[3] Defendants also promised (falsely) they would produce all documents regarding any investigation into Dr. Snyder's discrimination complaints along with all handbooks, rules, guidelines, or policies that applied to Dr. Snyder during his residency. Ex. 7, Board Response to Request for Production Nos. 4, 6-8; Ex. 9, OSUMC Response to Request for Production Nos. 4, 6-8; Ex. 12, Cotton Response to Request for Production No. 5; Ex. 13, Alexopulos Response to Request for Production No. 5.

verified interrogatory answers. Ex. 10, Cotton Answer to Interrogatory No. 4; Ex. 11, Alexopulos Answer to Interrogatory No. 4.

6.     On September 8, 2017, Dr. Cotton also omitted her communications with Aquino when describing her involvement in Dr. Snyder's probation, suspension, leave of absence, and dismissal, though both she and Dr. Alexopulos promised to produce documents evidencing their involvement. Ex. 10, Cotton Answer to Interrogatory Nos. 2-4; Ex. 11, Alexopulos Answer to Interrogatory Nos. 2-4 (same).

7.     During a discovery conference in September 2017, Dr. Cotton and Dr. Alexopulos represented they were "**not withholding information**" regarding Interrogatory Nos. 2 and 3 about their involvement regarding Dr. Snyder's residency. Ex. 15, September 14, 2017 Letter from Hurst (emphasis added).

8.     On September 15, 2017, Dr. Cotton and Dr. Alexopulos also promised to produce "**all responsive documents**" of their communications regarding Dr. Snyder and represented that the Board would also produce responsive documents. Ex. 12, Cotton Response to Request for Production No. 18 (emphasis added); Ex. 13, Alexopulos Response to Request for Production No. 2 (emphasis added).

9.     Despite their promises, Defendants did not independently produce the documents in their respective control - instead, they unilaterally decided

5

to "combine" their document production through OSUMC, which was the only party who produced any documents to Dr. Snyder in 2017 when it produced 718 pages on behalf of itself and the Board. Ex. 16, OSUMC Production Correspondence.[4]

10.     At the time of their 2017 document production, defendants did not produce the Aquino communications, along with hundreds of other pages they withheld that were responsive to Dr. Snyder's 2017 discovery requests. Ex. 4, Partial List of New Evidence.

11.     On October 11, 2017, following a discovery conference requested by Dr. Snyder, the Board represented that it was **not withholding evidence** because of its general objections or based on privilege. Ex. 17, October 11, 2017 Letter from Stephens.[5]

12.     On April 16, 2018, defendants again failed to identify Aquino in their Rule 26 disclosures or produce evidence of their communications with her. Ex. 19, Board, Cotton, and Alexopulos Initial Disclosures; Ex. 20, OSUMC Initial Disclosures.

---

[4] Defendants would ultimately produce more than 12,000 pages of evidence.

[5] The Board would later implicitly concede this was not true. Ex. 18, November 2019 Privilege Log from the Board (identifying documents regarding Dr. Snyder's discrimination complaints responsive to Request for Production No. 4).

**B.     Defendants Repeatedly Claimed Additional Evidence Did Not Exist During Discovery Conferences in 2018**

13.     On August 20, 2018, Dr. Snyder again requested a discovery conference with the Board to discuss its discovery responses and noted that the Board "has not provided a single document responsive to the discovery requests." Ex. 21, August 20, 2018 Fax from Hurst.

14.     The same day, the Board responded by noting the parties' prior discovery conference, confirming that defendants combined their document production instead of producing their evidence independently, then asserting:

> Therefore, **all documents** responsive to Plaintiff's Discovery Requests were provided via the previous combined production of documents. **The Board is not in possession of any additional documents responsive to those requests**.

Ex. 22, August 20, 2018 Email from Pratt (emphasis added).

15.     On August 27, 2018, Dr. Snyder again requested discovery conferences with defendants regarding their missing document production, expressly requesting a conference regarding defendants' promises they would produce evidence responsive to Dr. Snyder's request for production nos. 2 (communications), 4 (discrimination complaints), and 6-8 (policies/procedures), among others, by noting that "it does not appear that all responsive documents have been produced." Ex. 23, August 27, 2018 Letter from Hurst at 2, 4.[6]

---

[6] Dr. Snyder's request for defendants to produce and identify their own documents went unheeded. Ex. 23, August 27, 2018 Letter from Hurst at 6.

16.     On September 21, 2018, the parties held a discovery conference in which OSUMC claimed it was **not withholding** the identity of any witness, OSUMC agreed to investigate and supplement its production with additional communications about Dr. Snyder and his complaints of discrimination, and the Board deferred to OSUMC's agreements while again representing that it was **not withholding** any documents. Ex. 24, October 2, 2018 Letter from Hurst.

17.     On October 12, 2018, the Board responded to Dr. Snyder's counsel's letter and, again, represented that it was "**not withholding any documents** based on any objection." Ex. 25, October 12, 2018 Letter from Stephens (emphasis added).

18.     The Board then purported to "clarify" its position regarding its document production by claiming the Board's documents were "the exact same as Drs. Alexopulos and Cotton" and thus had "no documents to produce independently of" Dr. Cotton and Dr. Alexopulos – even though Dr. Cotton and Dr. Alexopulos had *not* independently produced any documents to Dr. Snyder. Ex. 25, October 12, 2018 Letter from Stephens; *but see* Ex. 16, OSUMC Document Production Correspondence (enclosing documents on behalf of OSUMC *and the Board*).

19.     Instead of producing their own documents (or identifying Aquino), on October 12, 2018, Dr. Cotton and Dr. Alexopulos supplemented their

8

answers to Interrogatory No. 2 by identifying documents previously produced by OSUMC as those that "may have been relied upon by Dr. Cotton and/or Dr. Alexopulos respectively in deciding to place the plaintiff on a paid leave of absence and/or to dismiss the plaintiff from the residency program based on his abandonment of his position." Ex. 26, October 12, 2018 Letter from Childers.

C.   **Defendants Withheld the Aquino Communications until after Dr. Snyder Filed his Final Witness and Exhibit Lists in June 2019**

20.   Despite their prior representations, defendants *did* possess hundreds of pages of additional evidence responsive to Dr. Snyder's original discovery requests, including the Aquino communications, which they did not produce until after Dr. Snyder's deadline to file his final witness and exhibit lists (ECF # 243, 244) in June 2019. Ex. 4, Partial List of New Evidence.

21.   While on a break during Dr. Cotton's deposition in August 2019, the Board confirmed it had additional evidence to produce to Dr. Snyder - and then produced an additional 826 pages of evidence at its conclusion, including: (a) the Aquino communications; (b) Dr. Cotton's text messages to several former residents about their upcoming depositions; (c) the OSU-CHS

Department Meeting Minutes; and (d) other policies and procedures. Ex. 4, Partial List of New Evidence.[7]

22.     While the Board purportedly produced this evidence in response to Dr. Snyder's fourth discovery requests, most of it was responsive to Dr. Snyder's original 2017 discovery requests. Ex. 27, Board's Responses to 4th Discovery Requests; Ex. 7, Board's Responses to Requests for Production Nos. 2 (communications), 4 (discrimination complaints), 6-8 (handbooks, policies, procedures, and standards).

23.     After defendants' delayed production, Dr. Snyder again requested defendants produce all missing evidence Dr. Snyder had repeatedly requested, including emails and other communications. Ex. 28, August 26, 2019 Email from Garrett.

24.     Defendants did not immediately produce the remaining withheld evidence but continued to slowly produce additional evidence from August 2019 to January 2020, after Dr. Snyder engaged in costly and time-consuming discovery that proved that defendants' prior representations were false. Ex. 4, Partial List of New Evidence.

---

[7] Prior to Dr. Cotton's deposition, defendants did not attempt to correct their prior misrepresentations or tell Dr. Snyder they did, in fact, have additional evidence to produce.

<u>**ARGUMENTS & AUTHORITIES**</u>

**I.    THE COURT SHOULD GRANT DR. SNYDER LEAVE TO ADD AQUINO AS A WITNESS AT TRIAL BECAUSE DEFENDANTS WITHHELD HER IDENTITY AND COMMUNICATIONS**

Defendants' failure to disclose (or apparently look for) critical evidence for years while representing to Dr. Snyder it did not exist was not a technical violation or an isolated incident easily remedied, but part of a pattern of conduct that severely prejudiced Dr. Snyder's efforts to prove his case. The Court should not allow defendants' refusal to abide their discovery obligations impair Dr. Snyder's ability to prosecute his case. Thus, the Court should grant Dr. Snyder leave to supplement his final witness list by adding Aquino as a witness in the Final Pretrial Report.

For whatever reason, defendants failed to ensure the timely production of critical evidence for more than 2 years while telling Dr. Snyder they had produced all responsive evidence. Defendants' conduct violated both the letter and spirit of the Federal Rules. The Tenth Circuit has reminded parties of their discovery obligations to one another despite the system's adversarial nature:

> Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered.

*Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). The rules are not a "technical formality" defendants can ignore at their leisure. *Sender v. Mann*, 225 F.R.D. 645, 650 (D. Colo. 2004). Instead, they were designed to protect both

Dr. Snyder's *and* defendants' ability "to secure the just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1.

To effectuate that goal, Rule 26 required defendants to identify all persons with discoverable information about Dr. Snyder's case and produce or identify relevant documents. Fed. R. Civ. P. 26(a)(1)(A)(i). The drafters of Rule 26 note that the rule's mandatory disclosure obligations require a party to identify "all persons who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties." Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). The drafters of the rule continue:

> As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties.

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a).

The same obligation applied to defendants' initial disclosure of documents:

> As with potential witnesses, the requirement for disclosure of documents applies to all potentially relevant items then known to the party, whether or not supportive of its contentions in the case.

Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a).

Defendants' obligation to produce "all potentially relevant" evidence to Dr. Snyder extended beyond their initial disclosure requirements. Under Rule 33, defendants were obligated to answer, under oath, Dr. Snyder's interrogatories about material witnesses truthfully. Fed. R. Civ. P. 33(b)(3)-(4). Under Rule 33(d), defendants were required to not only produce responsive evidence, but also to specify *which* documents were responsive to Dr. Snyder's requests. Fed. R. Civ. P. 33(d).

In addition, Rule 34 required defendants to either: (1) produce all evidence in its possession within a reasonable time; or (2) object with specificity to portions of Dr. Snyder's requests and state whether they were withholding responsive evidence based on the objections. Fed. R. Civ. P. 34(b)(2)(B)-(C). In 2015, Rule 34 was amended to require a party to state whether it was withholding evidence to "end the confusion" caused by the very conduct defendants are guilty of in this case: objecting to a request while producing documents, leaving Dr. Snyder "uncertain whether any relevant and responsive information has been withheld on the basis of the objections." Advisory Committee Notes to 2015 Amendments to Fed. R. Civ. P. 34.

Defendants failed to follow the Federal Rules. Defendants never disclosed Aquino as a potential witness in violation of Rules 26 and 33 and never stated they were withholding responsive evidence to Dr. Snyder's original requests for production under Rule 34, all while claiming no other

communications existed.[8] This failure was pervasive throughout defendants'
responses,[9] violations that defendants compounded by withholding hundreds
of pages of critical evidence to Dr. Snyder's prejudice.[10] Even if the Court
forgives defendants' initial failure to identify Aquino or produce their
communications with her, the Court should not ignore that defendants were
under a continuing obligation to supplement their deficient disclosures "in a
timely manner" once they learned their prior disclosures were false. Fed. R.
Civ. P. 26(e)(1)(A). Defendants' disclosure in August 2019 was neither timely
nor explained.

For more than 2 years, defendants consistently withheld critical
evidence from Dr. Snyder until it was (nearly) too late for him to use it, or after
its utility had passed because depositions were over. Ex. 4, Partial List of New

---

[8] *See* Ex. 6, Board Answers to Interrogatories; Ex. 7, Board Responses to
Requests for Production; Ex. 8, OSUMC Answers to Interrogatories; Ex. 9, OSUMC
Responses to Requests for Production; Ex. 10, Cotton Answers to Interrogatories; Ex.
11, Alexopulos Answers to Interrogatories; Ex. 12, Cotton Response to Requests for
Production; Ex. 13, Alexopulos Response to Requests for Production; Ex. 19, Cotton
and Alexopulos Initial Disclosures; Ex. 20, OSUMC Initial Disclosures.

[9] *See, e.g.*, Ex. 7, Board Response to Request for Production Nos. 9-14, 17-18,
21, 25-26, 27, and 29; Ex. 9, OSUMC's Response to Request for Production Nos. 2-8.

[10] Defendants also refused to produce emails that proved Dr. Hall was involved
in Dr. Snyder's probation, emails that proved they failed to investigate Dr. Snyder's
discrimination complaints, and the hospital's patient safety policies and procedures
(among other evidence). Ex. 4, Partial List of New Evidence; Ex. 7, Board Response
to Request for Production Nos. 2 (communications), 3 (termination), 4 (discrimination
complaint), 6-8 (Dr. Snyder's residency file and applicable handbooks, policies,
procedures, and standards).

Evidence. While Dr. Snyder will address specific instances of how defendants' conduct prejudiced him separately, the Court should consider defendants' refusal to produce their communications with Aquino in its proper context. *See* Fed. R. Civ. P. 37(C)(1), Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii). Because Dr. Snyder can show good cause for not listing Aquino as a witness on his final witness list, the Court should allow him to call Aquino at trial.

## II.    EXCLUDING AQUINO AS A WITNESS AT TRIAL WOULD BE A DRASTIC SANCTION THAT WOULD UNDULY PREJUDICE DR. SNYDER

The Court should allow Dr. Snyder to call Aquino as a witness even though he did not list her on his final witness list. "Federal Rule of Civil Procedure 16(b) gives district courts wide latitude in entering scheduling orders. Rule 16(b) also provides that such orders shall not be modified 'except upon a showing of good cause and by leave of the district judge.'" *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir. 1996). While the Court has discretion to decide whether to allow a party to supplement its witness list, the Tenth Circuit has held that excluding critical evidence under Rule 16(b) is a "drastic sanction." *Summers v. Missouri Pacific R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (reversing district court's refusal to enter a new scheduling order). The Court should decline to enter a drastic sanction against Dr. Snyder and allow him to add Aquino as a trial witness. *See also Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir.1987).

15

The Tenth Circuit has identified 4 factors the Court should consider in determining whether defendants' discovery violations constitute good cause for Dr. Snyder supplementing his final witness list:

(1)     the prejudice or surprise to the party against whom the testimony is offered;

(2)     the ability of the party to cure the prejudice;

(3)     the extent to which introducing such testimony would disrupt the trial; and

(4)     the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (for Rule 26 violations). *See also Burks*, 81 F.3d at 979 (under Rule 16(b)); *Summers*, 132 F.3d at 604.

Each factor favors Dr. Snyder, not defendants. Defendants cannot demonstrate prejudice or surprise about Aquino given they withheld their communications with her for years. Thus, defendants do not need an ability to cure any prejudice given their years-long refusal to identify her while claiming this evidence did not exist; Snyder does.

In addition, granting Dr. Snyder leave to call Aquino as a witness would not disrupt an orderly or efficient trial, it would promote it. Dr. Snyder sought defendants' communications about him for years, only to be told additional communications did not exist. Dr. Snyder continued to seek those communications despite defendants' misrepresentations, all while defendants

16

suggested he was engaged in unnecessary or overly aggressive discovery. He continued to seek it while incurring thousands of dollars in attorneys' fees, to say nothing of his lost opportunity to question witnesses about this evidence. The trial of this case will be strengthened, not lessened, by allowing a full and fair airing of the evidence, including Aquino's testimony.

Finally, Dr. Snyder did not fail to identify Aquino in bad faith. Dr. Snyder could not list what defendants did not disclose, and he has consistently sought proof of defendants' unlawful treatment through written discovery, discovery conferences, and depositions. Thus, whatever bad faith exists does not reside with Dr. Snyder. The Court should grant Dr. Snyder leave to add Aquino as a witness for trial.

## III. THE COURT SHOULD OVERRULE DEFENDANTS' OBJECTIONS TO DR. SNYDER'S REQUEST FOR LEAVE

Defendants offer two objections to Dr. Snyder's request to add Aquino as a witness in the Final Pretrial Report, both of which the Court should reject. Ex. 29, Email from Stephens. First, defendants claim Dr. Snyder *should have known* Aquino was a critical witness despite their failure to produce their communications with her because she authored a form letter included in the licensure packet provided to all residents seeking licensure with the Oklahoma State Board, which Dr. Snyder produced in discovery. Ex. 30, Licensure Packet. Aquino's form letter (which she co-authored), however, did not place

17

Dr. Snyder on notice that defendants communicated with her about his missing training verification form. Ex. 1, Emails re Aquino. Instead, Dr. Snyder only learned of defendants' communications with her in August 2019, 2 months after he filed his final witness list. The Court should overrule the first objection.

Second, defendants object because Dr. Snyder did not tell them the Oklahoma State Board agreed to allow Aquino to appear for a voluntary witness interview in lieu of a subpoenaed deposition to their organization. Ex. 29, Email from Stephens. After receiving defendants' late disclosure of the Aquino communications, Dr. Snyder originally subpoenaed the Oklahoma State Board of Osteopathic Examiners to provide deposition testimony as an organization under Federal Rule of Civil Procedure 30(b)(6). *See* Notice of Deposition (ECF # 296). Dr. Snyder later withdrew the subpoena instead of taking the deposition after the Oklahoma State Board's counsel agreed to allow Aquino to voluntarily sit for a transcribed witness interview *instead of* sitting for a formal deposition. Dr. Snyder notified defendants the subpoena was withdrawn, interviewed Aquino, then included portions of Aquino's transcribed statement as evidence in dispositive motion briefing a month and a half later.

The Oklahoma State Board is an independent body that is not a party to this case; thus, Dr. Snyder was free to communicate with it without inviting

defendants to participate. *See, e.g.,* Fed. R. Civ. P. 26(b)(3)(C) (defining "prior statement" to include a person's transcribed oral statement); Fed. R. Civ. P. 33; Oklahoma Rule of Professional Conduct 4.2 (prohibiting communication with a person the lawyer knows to be represented by another lawyer). Had defendants desired to question Aquino or the Oklahoma State Board during discovery, they could have issued their own subpoena or contacted them for an interview. The Court should reject defendants' second objection.

## CONCLUSION

The Court should grant Dr. Snyder leave to list Christi Aquino as a witness in the Final Pretrial Report.

Respectfully submitted,

**JEFFREY SNYDER, D.O.**,
Plaintiff, by and through:

Joshua Stockton, OBA # 21823
Laura Talbert, OBA # 32670
**STOCKTON TALBERT, PLLC**
1127 NW 14th Street
Oklahoma City, OK 73106
Phone: (405) 225.1200
Email: jstockton@stocktontalbert.com
**ATTORNEYS FOR PLAINTIFF**

19

## CERTIFICATE OF SERVICE

I certify that on January 31, 2020, I filed the attached document with the Clerk of Court. Based on the records currently on file, in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

JOSHUA STOCKTON